1   WRIGHT, FINLAY & ZAK, LLP
    Edgar C. Smith, Esq.
2   Nevada Bar No. 5506
    Victoria L. Hightower, Esq.
3   Nevada Bar No. 10897
    7785 W. Sahara Ave., Suite 200
4   Las Vegas, NV 89117
    (702) 475-7964; Fax: (702) 946-1345
5   esmith@wrightlegal.net
    vhightower@wrightlegal.net
6   *Attorneys for Defendants, BAC Home Loans
    Servicing, LP fka Countrywide Home Loans
7   Servicing, LP and Carrington Mortgage
    Services*

8

# UNITED STATES DISTRICT COURT

9

## DISTRICT OF NEVADA

·10

| | |
|---|---|
| RJRN HOLDINGS LLC, | Case No.: 2:15-cv-01257-JCM-NJK |
| Plaintiff, | **BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP AND CARRINGTON MORTGAGE SERVICES' MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S COMPLAINT** |
| vs. | |
| RHONDA DAVIS; BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIAITON; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive, | |
| Defendants. | |

Defendants, BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP ("BAC") and Carrington Mortgage Services ("Carrington")(collectively "Defendants"), by and through its attorneys of record, Edgar C. Smith, Esq., and Victoria L. Hightower, Esq., of the law firm of Wright, Finlay & Zak, LLP, hereby respectfully submit their Motion to Dismiss with Prejudice Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

/ / /

/ / /

/ / /

/ / /

1    on the attached Memorandum of Points and Authorities, all papers and pleadings, all facts

2    judicially noticed, and on any oral or documentary evidence that may be presented at a hearing on

3    this matter.

4        DATED this 2nd day of September, 2015.

5

6                                        WRIGHT, FINLAY & ZAK, LLP

7

8                                        _____
                                         Edgar C. Smith, Esq.

9                                        Nevada Bar No. 5506
                                         Victoria L. Hightower, Esq.

10                                       Nevada Bar No. 10897
                                         7785 W. Sahara Ave., Suite 200

11                                       Las Vegas, NV, 89117
                                         *Attorneys for Defendants, BAC Home Loans*

12                                       *Servicing, LP fka Countrywide Home Loans*
                                         *Servicing, LP and Carrington Mortgage Services*

13

14               **MEMORANDUM OF POINTS AND AUTHORITIES**

15                            **I.   INTRODUCTION**

16        Defendants seek dismissal of Plaintiff's Complaint for failure to state a claim upon which

17    relief can be granted. Plaintiff's Complaint fails to state a claim for the following reasons:

18        First, federal preemption precludes extinguishment of this FHA loan. As expressed in

19    Washington & Sandhill Homeowners Ass'n v. Bank of Am., N.A., No 2:13-cv-01845-GMN-GWF,

20    2012 WL 4798565 (D. Nev. Sept. 25, 2014), under the Property Clause and Supremacy Clause,

21    there is Federal preemption precluding extinguishment of FHA's interest upon application of the

22    State Foreclosure Statute to FHA's interest in the Property, precluding foreclosure upon and

23    extinguishment of the interest without its consent. The Property was at all relevant times and

24    remains now, subject to BAC's lien.

25        Second, the HOA Sale was not commercially reasonable.  A comparison of the purchase

26    price with the fair market value of the Property and the unpaid balance of the loan, evidences

27    commercial unreasonableness as a matter of law and violates public policy.

28        Third, the HOA Sale violated NRS § 116.311635.

1    Fourth, Plaintiff's allegations regarding the validity of the HOA Sale are conclusory and

2  Plaintiff fails to provide any evidence that proper notice was received by BAC.

3    Fifth, the CC&Rs attest to the preservation of BAC's deed of trust after the foreclosure sale

4  by the HOA.

5    Sixth, the Nevada foreclosure statute violates BAC's due process rights under the Fifth and

6  Fourteenth Amendments.

7    Finally, BAC respectfully requests that this Court determine whether SFR can be applied

8  retroactively, rather than prospectively only.

9                        **II.   STATEMENT OF FACTS**

10  *Davis Loan Documents*

11    1.    On or about January 6, 2009, Rhonda M. Davis (hereinafter "Davis") purchased the

12  real property located at 5234 Fire Night Ave., Las Vegas, Nevada 89122; APN: 161-28-316-025

13  (hereinafter "Property").[1]

14    2.    The Deed of Trust executed by Davis identified Pulte Mortgage, LLC as the Lender,

15  LandAmerica as the Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as

16  beneficiary acting solely as a nominee for Lender and Lender's successors and assigns, and secured

17  a loan in the amount of $157,528.00 (hereinafter the "Davis Loan").[2]

18    3.    The Davis Loan is a Federal Housing Administration ("FHA") insured loan.

19    4.    On August 11, 2010, an Assignment was recorded identifying BAC as the holder of

20  the beneficial interest under the Deed of Trust.[3]

21  *The HOA Sale, Buyer's and Plaintiff's Acquisition of the Property*

22    5.    On April 12, 2011, a Notice of Delinquent Assessment Lien was recorded against the

23  Property by Absolute Collection Services, LLC (hereinafter "HOA Trustee"), as agent for Hacienda

24  North Homeowners Association (hereinafter "HOA").[4]

25

26  [1] A true and correct copy of the Grant, Bargain, Sale Deed recorded in the Clark County Recorder's Office as Book and Instrument Number 20090106-0000997 is attached to Defendant's RJN as **Exhibit A**. All other recordings stated hereafter are recorded in the same manner.

27  [2] A true and correct copy of the Deed of Trust recorded as Book and Instrument Number 20090106-0000999 on January 6, 2009, is attached to Defendant's RJN as **Exhibit B.**

28  [3] A true and correct copy of the Assignment of Deed of Trust recorded as Book and Instrument Number 20100811-0002623 is attached to Defendant's RJN as **Exhibit C.**
    [4] A true and correct copy of the Notice of Delinquent Assessment Lien recorded as Book and

1    6.    On July 18, 2011, a Notice of Default and Election to Sell under Homeowners

2  Association Lien was recorded against the Property by the HOA Trustee on behalf of the HOA.[5]

3    7.    On November 10, 2011, a Notice of Trustee's Sale was recorded against the Property

4  by the HOA Trustee.[6]

5    8.    On April 18, 2012, a Trustee's Deed Upon Sale was recorded.

6    9.    Upon information and belief, pursuant to the Trustee's Deed Upon Sale, a non-

7  judicial foreclosure sale occurred on April 17, 2012 (hereinafter the "HOA Sale"), whereby Rex

8  Archambault (hereinafter "Buyer") acquired its interest in the Property, if any, for $5,000.00.[7]

9    10.    On February 10, 2014, a Quitclaim Deed was recorded whereby Buyer purportedly

10  transferred his interest in the Property, if any, to Plaintiff.[8]

11    11.    None of the aforementioned notices – the Notice of Lien, the Notice of Default and

12  the Notice of Sale – specified what proportion of the lien, if any, that the HOA claimed constituted a

13  "super-priority" lien.

14    12.    None of the aforementioned notices identified above specified whether the HOA was

15  foreclosing on the "super-priority" portion of its lien, if any, or under the non-super-priority portion

16  of the lien.

17    13.    None of the aforementioned notices provided any notice of a right to cure.

18              **III.   LEGAL ARGUMENTS**

19  A.    **LEGAL STANDARD.**

20    FRCP Rule 12(b)(6) provides in pertinent part:

21    > Every defense to a claim for relief in any pleading must be asserted in the
22    > responsive pleading if one is required. But a party may assert the following
        > defenses by motion: ... (6) failure to state a claim upon which relief can be
23    > granted...

24  ─────────────────────────────────────────────

   Instrument Number 20110412-0001764 is attached to Defendant's RJN as **Exhibit D.**
25  [5] A true and correct copy of the Notice of Default and Election to Sell Under Homeowners
   Association Lien recorded as Book and Instrument Number 20110718-0000857 is attached to
26  Defendant's RJN as **Exhibit E.**
   [6] A true and correct copy of the Notice of Trustee's Sale recorded as Book and Instrument Number
27  2011111-00002405 is attached to Defendant's RJN as **Exhibit F.**
   [7] A true and correct copy of the Trustee's Deed Upon Sale recorded as Book and Instrument
28  Number 20120418-0001665 is attached to Defendant's RJN as **Exhibit G.**
   [8] A true and correct copy of the Quitclaim Deed recorded as Book and Instrument Number
   20140210-0001086 is attached to Defendant's RJN as **Exhibit H.**

1       This rule mandates that a court dismiss a cause of action that fails to state a claim upon
2  which relief can be granted. <u>Sullivan v. Wells Fargo Bank, N.A.</u>, 3:13-CV-00055-RCJ, 2013 WL
3  4711381, at \*1 (D. Nev. Aug. 30, 2013). When considering a motion to dismiss under Rule 12(b)(6)
4  for failure to state a claim, dismissal is appropriate only when the complaint does not give the
5  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See* <u>Bell Atl.</u>
6  <u>Corp. v. Twombly,</u> 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to
7  state a claim, the court will take all material allegations as true and construe them in the light most
8  favorable to the plaintiff. *See* <u>NL Indus., Inc. v. Kaplan,</u> 792 F.2d 896, 898 (9th Cir.1986). The
9  court, however, is not required to accept as true allegations that are merely conclusory, unwarranted
10  deductions of fact, or unreasonable inferences. *See* <u>Sprewell v. Golden State Warriors,</u> 266 F.3d
11  979, 988 (9th Cir.2001).
12       "Generally, a district court may not consider any material beyond the pleadings in ruling on
13  a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint
14  may be considered on a motion to dismiss." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.,</u> 896
15  F.2d 1542, 1555 n. 19 (9th Cir.1990) (citation omitted). Similarly, "documents whose contents are
16  alleged in a complaint and whose authenticity no party questions, but which are not physically
17  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without
18  converting the motion to dismiss into a motion for summary judgment. <u>Branch v. Tunnell,</u> 14 F.3d
19  449, 454 (9th Cir.1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial
20  notice of "matters of public record." <u>Mack v. S. Bay Beer Distribs., Inc.,</u> 798 F.2d 1279, 1282 (9th
21  Cir.1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to
22  dismiss is converted into a motion for summary judgment. *See* <u>Arpin v. Santa Clara Valley Transp.</u>
23  <u>Agency,</u> 261 F.3d 912, 925 (9th Cir.2001). Accordingly, this Court may consider the recorded
24  documents attached to the Request for Judicial Notice filed simultaneously herewith without the
25  Motion to Dismiss being converted into a motion for summary judgment.
26  **B.**     **THE NEVADA HOA FORECLOSURE STATUTE IS PREEMPTED BY THE**
        **SUPREMACY CLAUSE.**
27
28       The Supremacy Clause prohibits Nevada law from allowing a HOA foreclosure to

1   extinguish a federally insured security interest. <u>Washington & Sandhill Homeowners Ass'n v. Bank</u>

2   <u>of Am., N.A.</u>, No 2:13-cv-01845-GMN-GWF, 2012 WL 4798565 (D. Nev. Sept. 25, 2014).  Seven

3   days after the Nevada Supreme Court ruled in <u>SFR</u>, Judge Navarro in <u>Washington</u> held that the

4   decision in <u>SFR</u> does not apply to FHA loans, and that a deed of trust insured by the FHA cannot be

5   extinguished by a Chapter 116 HOA foreclosure sale.  <u>Id.</u>

6         HUD insures mortgages originated by private lenders – commonly known as FHA insurance

7   – on single family residences under a federal congressional mandate to make housing available to

8   all citizens.  12 U.S.C. § 1709.  This insurance encourages private lenders, like BAC, to originate

9   loans to individuals who would not otherwise qualify for a home loan.  <u>Secretary of Housing &</u>

10   <u>Urban Dev. v.  Sky Meadows Assoc.</u>, 117 F. Supp. 2d 970, 973-74 (C.D. Cal. 2000).  Private

11   lenders are induced to make essentially risk-free mortgages by being guaranteed against loss in the

12   event of default by the borrower. <u>Pfeifer v. Countrywide Home Loans, Inc.</u>, 211 Cal. App. 4th 1250,

13   1265 (Cal. App., 2013).  Without such insurance, private lenders would be reluctant to lend without

14   demanding higher interest rates and substantial down payments, which many low income families

15   cannot afford.  See <u>FNMA v. Ricks</u>, 372 N.Y.S. 2d 485, 490 (N.Y. Sup. 1975).  Thus, FHA

16   insurance is necessary to assist with the national goal of providing decent homes for low income

17   families. See <u>Anderson v. U.S. Dept. of Housing & Urban Dev.</u> 701 F.2d 112, 113-114 (10th Cir.

18   1983).

19         Under the FHA program, the private lender may foreclose if the borrower defaults and, if the

20   successful bidder at the foreclosure sale, the lender may convey title to the property to HUD.  24

21   C.F.R. §§ 203.355(a); 203.359(a).  The lender then submits an insurance claim for payment of its

22   losses. 24 C.F.R. § 203.65.  HUD then sells the property to help replenish the funds to sustain the

23   FHA program. <u>Sky Meadows,</u> 117 F. Supp. 2d at 973-74.

24         Federal law, rather than state law, applies in cases involving FHA insured mortgages "to

25   assure the protection of the federal program against loss, state law to the contrary notwithstanding."

26   <u>United States v. Stadium Apartments, Inc.</u>, 425 F.2d 358, 362 (9th Cir. 1970).  Under the

27   Supremacy Clause, "[t]his Constitution, and the Laws of the United States, which shall be made in

28   Pursuance thereof . . . shall be the supreme Law of the Land."  U.S. Const. Art. VI, cl. 2.  The

1    Supremacy Clause overrides state law that nullifies the effectiveness of federal law.  See <u>Stadium</u>

2    <u>Apartments</u>, 425 F.2d 358, 362 (9th Cir. 1970) (applying federal law to override state law right of

3    redemption to insure that FHA was reimbursed on its guarantee of a mortgage).

4         NRS Chapter 116 impairs or undermines federal law on FHA loans in at least two critical

5    ways.   First, it creates a nominal super-priority lien over the federally insured loan, which

6    discourages private lenders from issuing loans to low income citizens under the FHA program out

7    of fear the security interest would be lost before the private lender could convey the property to

8    HUD for insurance reimbursement.

9         Second, NRS Chapter 116 encourages HOAs and even first mortgages to foreclose, while

10   FHA or HUD regulations strongly encourage foreclosure alternatives.   Until recent legislative

11   changes in October 2013,[9] associations had unobstructed access to foreclosure with no mediation

12   requirement and fast and loose noticing requirements unlike the foreclosure mediation requirements

13   and mandatory notice requirements under NRS 107.   HUD regulations require at least three full

14   monthly payments in default.   See 24 C.F.R. §203.606(a).   NRS 116.31162 does not have a

15   limitation on the amount of payments that must be past due prior to initiating foreclosure.   Also,

16   HUD requests that mortgagees meet face to face with the borrower, or at least use reasonable efforts

17   to arrange for such a meeting, prior to three full monthly payments going into default.   See 24

18   C.F.R. § 203.604(b).  NRS Chapter 116 contains no such requirement.   Ultimately, the HUD/FHA

19   goal is to bring the delinquent mortgage current to avoid foreclosures to the extent possible and

20   HUD does not expect to see foreclosure if there is a reasonable chance of saving the mortgage.   See

21   HUD Handbook Section 4330.1 at 7-1 (REV. 5).[10]   Meanwhile, NRS Chapter 116's goal is to

22   expedite association foreclosures with little interaction with the homeowner/borrower outside of

23   mailing foreclosure notices[11]. By divesting the homeowner of title without the protections otherwise

24   —————————————————

25   [9] Effective October 1, 2013, NRS 116.31162(6) currently prohibits association foreclosures when the unit is owner occupied, the beneficiary under a deed of trust has recorded a notice of default after October 1, 2013, and no foreclosure certificate has been recorded under NRS 107.086. Even

26   this new statute encourages first mortgagees to record a notice of default to stop any association foreclosure sale. Still, the HOA sale in this case occurred prior to the enactment of this statute so

27   the amended statute has no application to the HOA in this case.
     [10] Available at http://portal.hud.gov/hudportal/documents/huddoc?id=43301c7HSGH.pdf (last

28   visited March 8, 2015).
     [11] Effective October 1, 2013, NRS 116.31162(4) currently requires the association to provide the homeowner/borrower with a proposed repayment plan and a notice of right to contest the past due

1   envisioned by HUD as it relates to FHA-insured mortgage loans, the association's actions were in

2   direct opposition to the public policy articulated by HUD throughout the entirety of the mortgage

3   foreclosure crises. These actions rendered moot any attempt by the loan servicer to comply with

4   HUD's loss mitigation requirements that seek to keep the homeowner in the home.

5          Therefore, as ruled in the Washington & Sandhill case, foreclosures under NRS Chapter 116

6   operates to impede the implementation of federal policies and programs and must yield under the

7   Supremacy Clause of the Constitution to the interests of the federal government.  No 2:13-cv-

8   01845-GMN-GWF, 2012 WL 4798565 at 6, citing Rust v. Johnson, 597 F.2d 174, 179 (9th Cir.

9   1979).    Therefore, Plaintiff's Motion for Summary should be denied and Defendants'

10  Countermotion should be granted because the Davis Loan is an FHA Loan.

11  **C.     FHA INSURANCE EXISTS TO PROMOTE HOMEOWNERSHIP FOR LOWER-**
        **INCOME BORROWERS AND FORECLOSURE AVOIDANCE IS AN ESSENTIAL**
12      **PART OF THAT PROGRAM.**

13         The FHA's mission is as broad as it is essential: "the Federal Government expands

14  homeownership 'opportunities for first time homebuyers and other borrowers who would not

15  otherwise qualify for conventional mortgages on affordable terms, as well as for those who live in

16  underserved areas where mortgages may be harder to get."[12]  "[FHA] is the largest insurer of

17  mortgages in the world, insuring over 34 million properties since its inception in 1934."[13]  "FHA

18  provides a huge economic stimulation to the country in the form of home and community

19  development, which trickles down to local communities in the form of jobs, building suppliers, tax

20  bases, schools, and other forms of revenue."[14]  "Section 203(b) is the centerpiece of FHA's single

21  family mortgage insurance programs, the successor of the program that helped save homeowners

22  from default in the 1930s, that helped open the suburbs for returning veterans in the 1940s and

23  1950s, and that helped shape the modern mortgage finance system."[15]  *See also* Saticoy Bay LLC,

24  ─────────────────────────────────────────
    obligation at a hearing.  However, and again, the HOA sale in this case occurred prior to the
25  enactment of this statute so it has no application in this case.
    [12]  Mortgage Insurance for One to Four Family Homes Section 203(b), HUD.gov,
26  http://portal.hud.gov/hudportal/HUD?src=/program _offices/housing/ s:th/ins/203 b--df (last visited
    Jan. 5, 2015).
27  [13]    The    Federal    Housing    Administration    (FHA),    HUD.gov,
    http://portal.hud.gov/hudportal/HUD?src=/program _ offices/housing/fhahistory (last visited Jan. 5,
28  2015).
    [14] Id.
    [15] Mortgage Insurance for One to Four Family Homes Section 203(b), HUD.gov,

1    Series 7342 Tanglewood Park, Case no. 2:13-cv-01199-JCM-VCF, Order, at 5-6 ("Allowing an

2    HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with

3    the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds

4    from insured properties.").

5            Courts recognize that administration of FHA insurance involves "economic and managerial

6    decisions" about which "courts are ill-equipped to superintend," Hahn v. Gottlieb, 430 F.2d 1243,

7    1249-51 (1st Cir. 1970).  Day-to-day decisions concerning, for instance, whether and when to

8    foreclose or forbear from foreclosing "involve[ ] a balancing of factors and a consideration of

9    complex financial data." Falzarano v. United States, 607 F.2d 506, 512 (1st Cir. 1979).  Under the

10   FHA Programs at issue, the federal government insures certain residential mortgage loans originated

11   by private lenders for at-risk borrowers who qualify for assistance under FHA criteria.  See, e.g., 12

12   U.S.C. § 1701t ("[T]here should be the fullest practicable utilization of the resources and

13   capabilities of private enterprise and of individual self-help techniques. ").[16]  These loans are issued

14   to borrowers who might otherwise not qualify for conventional mortgages due, for example, to their

15   inability to make more than a minimal down payment or their having significantly lower credit

16   scores than banks would otherwise approve.[17]

17           FHA is not analogous to a private insurer.  As a federal agency, "FHA insures mortgages so

18   that lenders will be encouraged to make more mortgages available for people."[18]  And HUD, which

19   oversees FHA, has a significant interest in promoting and ensuring housing for all, including low

20

21   http://portal.hud.gov/hudportal/HUD?src=/program _offices/housing/ sfh/ins/203 b--df (last visited
     Jan. 5, 2015).
22   [16] See also Housing Act of 1949, § 2, 42 U.S.C. § 1441 (policy of Housing Act of 1949 is to
     encourage private enterprise "to serve as large a part of the total need as it can"); Department of
     Housing and Urban Development Act of 1965, §§ 2, 3(a), 42 U.S.C. §§ 3531 (HUD to "encourage
23   the maximum contributions that may be made by vigorous private home-building and mortgage
     lending institutions to housing, urban development, and the national economy"), 3532(b) (Secretary
24   of HUD to do the same).
     [17] See supra note X and accompanying test; Mortgage Credit Analysis for Mortgage Insurance on
25   One- to Four-Unit Mortgage Loans (4155.1), ch. 4, § 2.A.2.a, available at
     http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4155.1/4155 lHSGH.pdf (last visited
26   Jan. 5, 2015) ("In order for FHA to insure this maximum loan amount, the borrower must make a
     required investment of at least 3.5% of the lesser of the appraised value or the sales price of the
27   property."). Id. § 4.A.1.c (showing that borrowers with credit scores between 500 and 579 are
     eligible for a maximum Loan-To-Value ratio of 90%).
28   [18] Discontinuing Monthly Mortgage Insurance Premium Payments, HUD.gov,
     http://portal.hud.gov/hudportal/HUD?src=/program _ offices/housing/comp/premiums/prem2001
     (last visited Jan. 5, 2015).

1  income families.[19] This strong federal interest encompasses keeping borrowers in their homes for

2  some period of time during default as lender and borrower try to resolve the delinquency.[20]  Thus, in

3  managing the FHA Programs, HUD has enacted a comprehensive set of servicing guidelines that are

4  aimed at keeping at-risk borrowers in their homes to the extent possible, including in circumstances

5  where the borrowers are in financial distress.  For example, before claiming a default and initiating

6  foreclosure proceedings, the FHA Programs' regulations require that mortgagees consider

7  forbearance and pre-foreclosure counseling[21]-which can take six months or more[22]-and provide that

8  noncompliance may result in a civil monetary penalty and withdrawal of HUD's approval of the

9  mortgagee as a program participant, 24 C.F.R. § 203.500.  In addition to forbearance,[23] FHA

10  regulations require that mortgagees consider or attempt other forms of relief short of foreclosure,

11  including modifications to the terms of the loan to make the loan more affordable, Id. §§ 203.357,

12  203.370, 203.608, 203.616.  Moreover, even where  foreclosure is inevitable, FHA regulations

13  identify a lengthy and exhaustive process that details the level and form of borrower

14  communications required before foreclosure may begin.[24]  In sum, federal regulators have

15

16  [19] See HUD's Mission Statement, available at
   http://portal.hud.gov/hudportal/HUD?src=/about/mission (last visited, Jan. 5, 2015) ("HUD's
17  mission is to create strong, sustainable, inclusive communities and quality affordable homes for
   all.").
18  [20] See HUD Mortgagee Letter 2010-04, at 1 (Jan. 22, 2010),
   http://portal.hud.gov/hudportal/ documents/huddoc?id= 10-04 ml. pdf (last visited Jan. 5,
19  2015)("Loss
   Mitigation is critical to both borrowers and FHA because it works to fulfill the goal of helping
20  borrowers retain homeownership while protecting the FHA Insurance Fund from unnecessary
   losses.").
21  [21] See 24 C.F.R. § 203.501 (requiring that mortgagees "must consider" actions such as "special
   forbearance," meaning in cases where the mortgagor does not own other FHA-insured property and
22  the default was caused by circumstances beyond the mortgagor's control, the forbearance agreement
   will not require increased payments before the original maturity date of the mortgage); HUD
23  Administration of Insured Home Mortgages Handbook 4330.1, ch. 7, § 7-3, available at
   http://portal.hud.gov/hudportal/documents/huddoc?id=43301c7HSGH.pdf (last visited Jan. 5, 2015)
24  (requiring that servicers "make a concerted effort to help the mortgagor resolve his/her financial
   problems," specifically addressing that a mortgage servicer should endeavor to be aware of marital
25  difficulties, substance abuse, excessive gambling, loss of income, loss of employment, illness, and
   other factors, and then refer borrowers to counseling before initiating foreclosure).
26  [22] HUD Administration of Insured Home Mortgages Handbook 4330.1 app. 18, at 2, available at
   http://portal.hud.gov/hudpmial/ documents/huddoc?id=43301xl8HSGH.pdf (last visited Jan. 5,
27  2015).
   [23] See 24 C.F.R. §§ 203.471, 203.614.
28  [24] See generally HUD Administration of Insured Home Mortgages Handbook 4330.1, ch. 7, § 7-7,
   available at http://portal.hud.gov/hudportal/documents/huddoc?id=43301 c7HSGH.pdf (last visited
   Jan. 5, 2015).

marshalled many decades of expertise to enact a comprehensive and detailed approach to foreclosure and foreclosure forbearance on FHA-insured mortgages, the goal of which is to expand the housing market for those who would otherwise not be able to purchase a home.

**D.     NRS 116.3116 IS PREEMPTED BECAUSE IT FRUSTRATES FHA'S FORECLOSURE-AVOIDANCE EFFORTS.**

By allowing HOAs to foreclose on distressed borrowers, Nevada law conflicts with FHA regulations specifying foreclosure as a "last resort" for this potentially vulnerable category of borrowers.[25] As Chief Judge Navarro found in Washington, "a homeowner[] association's foreclosure under Nevada Revised Statutes § 116.3116 on a Property with a mortgage insured under the FHA insurance program would have the effect of limiting the effectiveness of the remedies available to the United States," and, thus, "the Supremacy Clause bars such foreclosure sales." 2014 WL 4798565, at *7. After all, whereas the policy of federal law as administered by HUD is to keep borrowers in their homes as long as possible-as evidenced by the numerous guidelines and regulations that require servicers to explore alternatives to foreclosure[26]-Nevada Revised Statute § 116.3116 obstructs that policy by permitting HOAs to foreclose (and dispossess the homeowners) even while the mortgagees are working with the borrowers as required by HUD's guidelines. Further, Nevada Revised Statute§ 116.3116 interferes with the insurance component that is the centerpiece of the FHA Programs and HUD's interest in obtaining title to FHA-insured properties upon default. " The purpose of the [Single Family Property Disposition (SFPD)] Program" is to reduce the inventory of acquired properties "in a manner that expands home ownership opportunities, strengthens neighborhoods and communities, and ensures a maximum return to the mortgage insurance fund." 24 C.F.R. § 291.1. To achieve these goals, HUD exercises discretion to pay claims and take title to insured properties after default, even if the mortgagee has not complied

[25] HUD Administration of Insured Home Mortgages Handbook 4330.1, ch. 9, § 9-3, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=43301c9HSGH.pdf (last visited Jan. 5, 2015) ("Foreclosure should be considered only as a last resort and shall not be initiated until all other relief options have been exhausted.").
[26] See, e.g., HUD Administration of Insured Home Mortgages Handbook 4330.1, ch. 7, § 7-1, available at http://portal.hud.gov/hudportal/ documents/huddoc?id=43301c7HSGH. pdf (last visited Jan. 5, 2015) ("HUD does not expect to see a delinquent mortgage foreclosed if there is a reasonable chance of saving the mortgage."); 24 C.F.R. § 203.501 (requiring mortgagees to consider alternatives to foreclosure such as special forbearance and mortgage modifications).

1   with all regulatory requirements or paid off all HOA claims.[27] As Chief Judge Navarro held, "state

2   laws cannot operate to undermine the federal agency's ability to obtain title after foreclosure and

3   resell the propert[ies]." <u>Washington</u>, 2014 WL 4798565, at *6.

4        Indeed, even Nevada has recognized that HOA foreclosures interfere with mortgagees'

5   efforts to keep borrowers in their homes and has made some-albeit insufficient-effort to mitigate the

6   controversial rush to foreclose by HOAs and their collection agents. In 2013, Nevada changed its

7   law to bar HOAs from initiating non-judicial foreclosure proceedings after the mortgagee has

8   recorded a notice of default and before it complies with Nevada's own foreclosure avoidance

9   procedures (which generally require pre-foreclosure mediation). *See* NRS § 116.31162(6)(b).

10        Although this amendment reflects the Nevada Legislature's own recognition of the harm

11   caused by HOA foreclosures, the amendment is not sweeping enough to avoid federal preemption as

12   applied to FHA-insured loans because Nevada law still frustrates federal foreclosure forbearance

13   objectives. As the Supreme Court has recognized, a "[c]onflict in technique can be fully as

14   disruptive to the system Congress enacted as conflict in overt policy." <u>Amalgamated Ass'n of</u>

15   <u>Street, Electric Ry., & Motor Coach Emps. v. Lockridge</u>, 403 U.S. 274, 287 (1971). For example,

16   under the 2013 amendment, nothing impedes the HOA from pursuing foreclosure and removing the

17   borrower from the home where the mortgagee has not issued a notice of default; indeed, if anything,

18   Nevada law works directly at cross purposes with federal law by encouraging mortgagees to issue a

19   notice of default and initiate foreclosure at the earliest possible time in order to at least temporarily

20   prevent the HOA from proceeding with its own foreclosure. In contrast, the FHA Programs direct

21   mortgagees on insured loans to work with the borrower and to evaluate modification and other

22   alternatives before taking steps toward foreclosure. The U.S. Supreme Court and other federal

23   courts have found preemption of state law under the Supremacy Clause in much less compelling

24   circumstances than those presented here. For instance, in <u>De la Cuesta</u>, the Supreme Court held that

25

---

26   [27] For instance, 24 C.F.R. § 203.363 provides that HUD, in its discretion, may grant extra time to a
lender to cure any regulatory non-compliance, and 24 C.F.R. § 203.402(k), HUD may curtail the

27   insurance pay-out, but need not entirely decline to pay at all, due to the failure to meet a number of
regulatory requirements. See also HUD Administration of Insured Home Mortgages Handbook

28   4330.1, ch. 7, § 7-12(D), available at http://portal.hud.gov/hudportal/documents/huddoc?id=43301
c7HSGH.pdf (last visited Dec. 29,2014); HUD Mortgagee Letter 2013-38, at 2 (Oct. 28, 2013),
http://portal.hud.gov/hudportal/ documents/huddoc ?id= 13-3 8ml. pdf.

1  a Federal Home Loan Bank Board regulation permitting-but not requiring-federal savings and loan

2  associations to include "due-on-sale" clauses in their mortgage contracts preempted state law that

3  restricted the use of such clauses."  By further limiting the availability of an option the Board

4  considers essential to the economic soundness of the thrift industry, the State has created 'an

5  obstacle to the accomplishment and execution of the full purposes and objectives' of the due-on-

6  sale regulation." 458 U.S. at 156 (citations omitted).

7          Here, HUD explicitly directs servicers to exercise restraint in proceeding with foreclosures

8  to help keep borrowers in their homes.  Since, Nevada Revised Statute § 116.3116 impermissibly

9  restricts the discretion of both the servicer and HUD in addressing borrower default, it is preempted

10 under the Supremacy Clause as applied to FHA insured mortgages.[28] Finally, the preemptive effect

11 here is modest. Nothing about HUD regulations or federal preemption requires HOAs to give up

12 their partial priority of payment, NRS 116.3116(2); they simply require that HOAs yield to the

13 FHA-insured mortgagee with respect to the timing of their recovery out of foreclosure proceeds,

14 NRS 116.31162. The HOAs will still receive the fees that are entitled to super-priority status

15 following a sale conducted by the mortgagee. But allowing an HOA to foreclose on an FHA-insured

16 loan plainly frustrates the objectives of HUD regulations in restricting foreclosures on at-risk FHA

17 borrowers where specified foreclosure avoidance measures offer some promise in keeping the

18 borrowers in their homes.  SFR fails to address the impact of Nevada Revised Statute § 116.3116 on

19 the FHA Programs, or Chief Judge Navarro's Order in Washington.  BAC does not allege that HUD

20 took title to the Property, or that it could today.  BAC simply alleges that HUD's insurance of a

21 mortgage under the FHA insurance program creates as federal property interest.  BAC nowhere

22 alleges that HUD today holds title to the Property; indeed BAC seeks "an order quieting title and

23 establishing that its deed of trust is the senior lien encumbering the property."  It does not by this

24 _____

25 [28] Similarly, in Forest Park II v. Hadley, 336 F.3d 724 (8th Cir. 2003), a state statute required owners of federally subsidized low-income housing to comply with prepayment requirements and schedules that differed from those imposed under federal law and HUD regulations. The Court in

26 Forest Park II noted it was possible to comply with both laws. At issue were conflicting notice requirements and "Forest Park could give 365 days notice to the state and 250 days notice to HUD."

27 Id. at 732.  But by requiring more notice under state law, the private entity would be required to wait longer than it otherwise would have before it could prepay its loans. While the Eighth Circuit

28 recognized that compliance with both statutes was possible, it reasoned that such an argument did "not address the principal problem with these state statutes-they fly in the face of the Constitution's Supremacy Clause." Id.

1   action seek conveyance to HUD.

2        BAC's Supremacy Clause argument does not depend on HUD presently owning the

3   Property. Similarly, in finding Nevada Revised Statute § 116.3116 preempted under the Supremacy

4   Clause to the extent it allows an HOA to foreclose ahead of an FHA-insured mortgagee, Chief

5   Judge Navarro did not rely on the existence of a vested federal property interest. While the federal

6   court considered whether the Property Clause of the U.S. Constitution applied, it saw no reason to

7   "make such a finding" in that case given that the mortgage interest was only "insured by HUD at the

8   time of the foreclosure"-i. e., the court explicitly recognized that HUD was neither the mortgagee

9   nor the title-holder.   Washington, 2014 WL 4798565, at *6. Rather, the court held that

10  "extinguish[ment] [of] a first secured interest" of a mortgagee where the mortgage is insured by

11  HUD "would 'operate[ ] to impede or condition the implementation of federal policies and

12  programs' and therefore 'must yield under the supremacy clause of the Constitution to the interests

13  of the federal government.'" Id. (quoting Rust v. Johnson, 597 F.2d 174, 179 (9th Cir. 1979)).[29]

14  Because neither the Supremacy Clause nor Washington relies on the existence of a vested federal

15  property interest, Washington applies here and preempts the HOA's attempt to foreclose on the

16  FHA-insured property at issue ahead of BAC.

17  **E.      THE HOA'S LIEN VIOLATED NRS § 116.3116.**

18       Under NRS Chapter 116 and the Nevada Real Estate Division's ("NRED") Advisory

19  Opinion 13-01, a lien under NRS 116.3116(1) can only include costs and fees that are specifically

20  enumerated in the statute. NRS Chapter 116 specifically excludes attorney's fees and the costs of

21  collection from being included in an HOA Lien. The language in NRS 116.3102(1) lists five

22  categories of penalties, fees, charges, late charges, fines, and interest that an HOA can include in the

23  association's lien. The costs of collecting and attorney's fees are not listed in any of the five

24  categories under NRS 116.3102(1). The HOA Notices show that the HOA included collection costs

25  into the HOA Lien.[30] The inclusion of attorney's fees and collection costs in the association's lien

26

27  [29] See also Saticoy Bay LLC, Series 7342 Tanglewood Park, Case no. 2:13-cv-01199-JCM-VCF,
    Order, at 5-6 ("[P]recedent forbids application of a state law that impedes a federal interest. Because
28  the evidence supports a finding that the property was federally insured at the time of the HOA
    foreclosure sale, the court concludes that the HOA foreclosure sale at issue was invalid.").
    [30] See **Exhibits D, E and F**.

1 | violates NRS Chapter 116; therefore, a question of fact exists as to whether the HOA Lien is

2 | statutorily improper and whether the HOA Sale must be found invalid.

3 |       Several Judges in the Eighth Judicial District Court of Clark County, Nevada have issued

4 | opinions consistent with the above interpretation of NRS Chapter 116.  The Court in Stanford Burt

5 | v. Sutter Creek Homeowners Association, et al., Case No. A-12-672790-C, Court Minutes, stated

6 | that an HOA Lien was statutorily improper and the foreclosure sale by the HOA should be rescinded

7 | because the HOA Lien included the costs of collection.[31]  The Court in Wingbrook Capital, LLC v.

8 | Peppertree Homeowners Association, Case No. A-11-636948-B, Order, confirms that an

9 | association's lien does not include any fees, cost of collection, or additional costs outside the scope

10 | of NRS Chapter 116.  Wingbrook concluded,

> [T]he **Super Priority Lien amount is not without limits** and NRS 116.3116 provides that the amount of the Super Priority Lien (i.e. the amount of a homeowners' associations' Statutory Lien which retains priority status over the First Security Interest) is limited "to the extent" of those assessments for common expenses based upon the associations' periodic budget that would have become due in the nine (9) month period immediately preceding an associations' institution of an action to enforce its Statutory Lien and "to the extent" of external repaid costs pursuant to NRS 116.310312.[32]
>
> Therefore after the foreclosure by a First Security Interest holder of a unit located within a homeowners' association, pursuant to NRS 116.3116 the monetary limit of a homeowners' association's Super Priority Lien is limited to a maximum amount equaling nine (9) times the homeowners' association's monthly assessment amount to unit owners for common expenses based on the periodic budget which would have become due immediately preceding the institution of an action to enforce the lien plus external repair costs pursuant to NRS 116.310312.[33]

20 | Therefore, the Court in Wingbrook and Burt reaffirm the Nevada Real Estate Opinion and statutory

21 | language in NRS Chapter 116, wherein the HOA Lien cannot include attorney's fees or collection

22 | costs.

23 |       The NRED Opinion 13-01 has also stated that attorney's fees and the costs of collecting on

24 | an HOA Lien cannot be included in the lien.  In August of 2012, the Nevada Supreme Court

25 | recognized that the Nevada Real Estate Division of the Department of Business and Industry is

26 | responsible for interpreting NRS Chapter 116 and issuing advisory opinions relating to the extent

[31] See Stanford Burt v. Sutter Creek Homeowners Association, et al., Case No. A-12-672790-C, Court Minutes, is attached to Defendant's RJN as **Exhibit I.**
[32] Id.
[33] Id.

1   and priority of the association super-priority lien.  See <u>State, Bus. & Indus. v. Nev. Ass'n Servs.</u>,

2   128 Nev. Adv. Op. 34, 294 P.3d 1223, 1227 (2012)("We therefore determine that the plain language

3   of the statutes requires that the CCICCH and the Real Estate Division, and no other commission or

4   division, interpret NRS Chapter 116.").   The Nevada Supreme Court has also stated that courts

5   generally give "great deference" to an agency's interpretation of a statute that the agency is charged

6   with enforcing.  <u>State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.</u>, 116 Nev. 290, 293 (2000); see

7   also <u>Dutchess Business Services v. Nev. State Bd. Of Pharmacy</u>, 124 Nev. 701, 709 (2008) (stating

8   that it "defer[s] to an agency's interpretation of its governing statutes or regulations if the

9   interpretation is within the language of the statute.").   In December 12, 2012, NRED issued its

10  Advisory Opinion 13-01 directly on point.[34]  The Opinion was asked three questions that dealt with

11  the enforcement of an HOA Lien.  The Opinion strongly stated that the association's lien cannot

12  include the costs of collection as defined in NRS 116.310313.   The Opinion cites to the

13  Commission for Common Interest Communities and Condominium Hotels Advisory Opinion No.

14  2010-01 to support the assertion that the cost of collecting is not included in the association's lien.

15  The Advisory Opinion No. 2010-01 states, "An association may collect as a part of the super

16  priority lien (a) interest permitted by NRS 116.3115, (b) late fees or charges authorized by the

17  declaration, (c) charges for preparing any statements of unpaid assessments and (d) the "costs of

18  collecting" authorized by NRS 116.310313."

19          The NRED Opinion clearly states that the "Costs of collecting" defined by NRS 116.310313

20  is too broad to fall within the parameters of charges for late payment of assessments.[35]   By

21  definition, the "costs of collecting" relate to the collection of past due "obligations," which are in

22  turn defined as "any assessment, fine, construction penalty, fee, charge or interest levied or imposed

23  against a unit's owner."[36]  Since the instant HOA Notices include the cost of collection in the HOA

24  Lien, the HOA Lien and subsequent sale are invalid and in direct violation of NRS Chapter 116.

25  Based on the above, the plain language of NRS 116.3116(1) and the statutory interpretation of the

26  NRED Opinion, the costs of collecting cannot be included in an association's lien.

27  ─────────────
[34] *See* Nevada Real Estate Opinion 13-01 attached hereto as **Exhibit J.**
28  [35] Charges for late payment of assessments come from NRS 116.3102(1)(k) and are incorporated
    into NRS § 116.3116(1).
    [36] NRS § 116.310313.

1       Accordingly, Plaintiff's Complaint must be dismissed as HOA's lien failed to comply with

2   NRS 116 et seq. and NRED.

3   **F.**      **THE FAILURE OF NRS CHAPTER 116 TO REQUIRE ACTUAL NOTICE TO LENDERS VIOLATES CONSTITUTIONAL DUE PROCESS RIGHTS AND**

4       **RENDERS THE STATUTES FACIALLY VOID AND UNENFORCEABLE.[37]**

5       The fatal flaw of NRS Chapter 116 – which SFR did not address – is that none of its express

6   notice provisions provide for mandatory notice to lenders[38]; despite the fact that their property rights

7   are directly threatened by an HOA's non-judicial foreclosure. Instead of mandating notice to

8   lenders, the statutes provide various "opt-in" provisions that would allow "any person with an

9   interest" to request notice in advance of a foreclosure sale by submitting a written notice request to

10   the HOA. Thus, under the statutes, the affirmative duty is on the lender to request notice, not on the

11   HOA to provide notice. This is true even when the lender has a prior recorded interest. Such facially

12   defective notice requirements establish the constitutional infirmity of NRS § 116.3116 and

13   necessitate setting aside the HOA sale and dismissing the case as a matter of law in favor of BAC.

14       **1.**      **BAC's Facial Challenge Is a Legal Issue of First Impression Which This Court Can Consider despite the SFR decision.**

15

16       The distinction must be drawn between facial verses as-applied challenges. An as-applied

17   challenge asks a court to hold that a statute is unconstitutional under the specific facts of a case. See

18   Ezell v. City of Chicago, 651 F.3d 684, 698-99 (7th Cir. 2011). Conversely, a facial challenge asks

19   a court to hold that a statute is void because the alleged violation is intrinsic to the statutes' terms,

20   not its application. 651 F.3d at 698-99 (holding that the City Council violated the Second

21   Amendment *when* it created a gun law mandating firing-range training)., Black's Law Dictionary

22   (9th ed. 2009) makes the distinction between the respective challenges thusly: an as-applied

23   challenge is "a claim that a statute is unconstitutional on the facts of a particular case or in its

24   application to a particular party" while a facial challenge is "a claim that a statute is unconstitutional

25   on its face - that is, that it always operates unconstitutionally." See also Seguin v. City of Sterling

26   Heights, 968 F.2d 584, 589-90 (6th Cir. 1992) (in a due process challenge holding that plaintiffs'

27

[37] Pursuant to NRS 30.130, JPMorgan will serve notice of its constitutional challenge of NRS § 116.3116 to the Nevada Attorney General's Office forthwith.

28 [38] BAC uses "lender" to include the original lender, or a subsequent investor, servicer, or beneficiary of the deed of trust at issue.

injury occurred *when* the city council passed the zoning ordinance at issue). Importantly, "individual application of facts do not matter" in a facial challenge and "the plaintiff's personal situation becomes irrelevant." Ezell, 651 F.3d at 697 (citing Reno v. Flores, 507 U.S. 292 (1993)); see also John Doe No. I v. Reed, 561 U.S. 186 (2010). Accordingly, facial challenges attack the terms of a statute and as-applied challenges attack its execution – that is, was a facially sound law applied in an unconstitutional manner to a particular plaintiff.   As a consequence, if a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances. Women's Med. Prof. Corp. v. Voinovich, 130 F.3d 187, 193 (6th Cir. 1997).  This distinction underscores the point that SFR addressed the as-applied challenge and not a facial challenge since that plaintiff should have survived the motion to dismiss since its complaint alleged that the statutorily required notices were given, not whether the statutorily required notices were insufficient as a matter of law to protect the lender's due process rights.[39]  Indeed, the Nevada Supreme Court never addressed whether notice was or was not constitutionally required.  This distinction also demonstrates that it would not matter to a facial challenge if, in an individual case, the lender had *actual* notice but the statutes permit the taking without requiring notice.   This Court need only evaluate whether the terms of the statutes themselves violate a constitutional right. This is a purely legal issue appropriate for determination even at the motion to dismiss stage. Ezell, 651 F.3d at 697. For the reasons set forth below, NRS Chapter 116 is unconstitutional because its "opt-in" notice provisions do not comply with the due process requirements.

**2.      Due Process Requires that Lienholders Receive Notice Prior to Foreclosure of Real Property.**

The due process provisions of the United States Constitution require that "at a minimum, [the] deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co.,

---

[39] There, U.S. Bank made an as-applied – not facial – challenge to the HOA's compliance with the notice provisions of the statutes, arguing that "the content of the notice it received" was not specific enough to satisfy statutory requirements. 334 P.3d at 418.

339 U.S. 306, 314 (1950).[40]  The United States Supreme Court has established the well-settled rule that state action affecting real property must be accompanied by notice of the action. "An elementary and fundamental requirement of due process ... is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Tulsa Prof. Collection Services, Inc. v. Pope, 485 U.S. 478, 484 (1988).  The Court made this point particularly clear in Mennonite Bd. of Missions v. Adams, holding that any party with an interest in real property subject to deprivation must receive actual notice of the event that causes the deprivation. 465 U.S. 791 (1983). Moreover, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice." Mennonite, 462 U.S. at 798. While diligence may differ depending on the context, Mennonite requires that reasonable steps be taken to provide actual notice to interested parties. 462 U.S. at 795-800.

### a.   Statutory "opt in" notice provisions do not satisfy Federal due process requirements.

"Opt-in" notice provisions have repeatedly been held to violate Constitutional due process requirements. In the years following the Mullane and Mennonite decisions, several states attempted to circumvent notice requirements when real property was at issue. Among the most popular was the use of an "opt in" provision – meaning that a state's foreclosure statute would require no notice to interested parties unless that interested party affirmatively requested such notice, as is the case here. For example, in Small Engine Shop, Inc. v. Cascio, 878 F.2d 883, 893 (5th Cir. 1989), the Fifth Circuit analyzed Louisiana's "opt in" clause and concluded it did not satisfy due process requirements because it did not mandate notice to all interested parties. Instead, just like NRS

---

[40] The Nevada Supreme Court has "consistently relied upon the [United States] Supreme Court's holdings interpreting the federal Due Process Clause to define the fundamental liberties protected under Nevada's due process clause." State v. Eighth Jud Dist. Ct. (Logan D.), 306 P.3d 369, 377 (2013); Hernandez v. Bennett-Haron, 287 P.3d 305, 310 (2012) (holding that "the similarities between the due process clauses contained in the United States and Nevada Constitutions, permit us to look to federal precedent for guidance as we determine whether the procedures utilized ... are consistent with the due process clause set forth in the Article 1, Section 8(5) of the Nevada Constitution.") (citing Rodriguez v. Dist. Ct., 120 Nev. 798, 808 n. 22, 102 P.3d 41, 48 n. 22 (2004) ("[t]he language in Article I, Section 8(5) of the Nevada Constitution mirrors the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution")).

1  Chapter 116, it required an individual or entity to affirmatively request notice. Id. at 885-86.  This

2  "burden-shifting" was at the center of the controversy. The court applied Mennonite and Mullane

3  and held that the statute failed Mennonite's allocation of notice burdens. Id. at 890. Thus, where a

4  statute's sole notice provision is a burden-shifting "opt-in" provision, like NRS Chapter 116, the

5  statute is unconstitutional because it does not meet Federal due process requirements.

6
   **b. Nevada's "opt in" Statute does not satisfy the minimum notice requirements mandated by the Supreme Court, rendering the statutes void and unenforceable.**
7

8  NRS Chapter 116 does not include any express or mandatory notice provision requiring

9  notice to the lender. This is the primary constitutional defect. While the statutes expressly address

10 notice requirements in four separate provisions, none of them mandate actual notice to the lender.

11 Instead, each requires the lender to "opt in" and affirmatively request notice, as detailed below.

12 NRS § 116.31162 governs the mailing of notice of delinquent assessments but only to "the

13 unit's owner or his or her successor in interest." It does not require that an HOA provide any notice

14 to the lender of the delinquent assessment, in violation of due process requirements.

15 NRS § 116.31163 governs the mailing of the notice of default and election to sell but only to

16 "Each person who has requested notice pursuant to NRS §§ 107.090 or 116.31168; [and] Any

17 holder of a recorded security interest encumbering the unit's owner's interest who has notified the

18 association, 30 days before the recordation of the notice of default, of the existence of the security

19 interest."  This express notice provision does not require mandatory notice to the lender, again in

20 violation of basic due process requirements, and each subsection instead governs how to "opt in"

21 and request notice.  Reference therein to NRS §§ 107.090 and 116.31168 does not save this

22 provision, as both govern a request for notice (and further fail as detailed below).

23 NRS § 116.31165, governs mailing the notice of sale, but again only to:

24
       Each person entitled to receive a copy of the notice of default and election to sell notice under NRS 116.31163; [and] The holder of a recorded security interest or
25     the purchaser of the unit, if either of them has notified the association, before the mailing of the notice of sale, of the existence of the security interest, lease or
26     contract of sale, as applicable.

27

28 This third notice provision does not mandate affirmative, actual notice to the lender, again in

   violation of due process.

                                            -20-

1       NRS § 116.31168, "Foreclosure of liens: Requests by interested persons for notice of default

2  and election to sell…," also unconstitutionally shifts the burden to lenders, requiring they "opt in" to

3  receive notice of foreclosure as under NRS § 107.090 "as if a deed of trust were being foreclosed"

4  with a *request* that "must identify the lien by stating the names of the unit's owner and the common-

5  interest community." Moreover, NRS § 116.31168 only applies to a notice of default and election

6  to sell and does not apply to any other form of notice –specifically, the notice of trustee's sale.

7       The reference in NRS § 116.31168 to NRS § 107.090(3) (notice of default) and (4) (notice

8  of sale) does not save the statute since these sections cannot apply to lenders for purposes of notice

9  because their interest is not "*subordinate* to the deed of trust" (emphasis added) – their interest *is*

10 the deed of trust. This inconsistency makes it unlikely that any HOA or its foreclosure trustee would

11 understand they must give notice to the holder of that first deed of trust.  As the dissent in <u>SFR</u>

12 acknowledged, "The means employed must be such as one desirous of actually informing the

13 absentee might reasonably adopt to accomplish it."" 334 P.3d at 422 (citing <u>Mullane</u>, 339 U.S. at

14 315. NRS § 116.31162-116.31168 fail this requirement.

15      The Nevada Legislature knows how to draft an express notice requirement- it has done so in

16 many places throughout the statutes. But as to lenders, NRS Chapter 116's notice provisions are

17 constitutionally flawed, rendering the statutes invalid on their face. Accordingly, Plaintiff cannot

18 prevail on any of its claims against BAC since its claim to title is founded on a statutory scheme that

19 is facially unconstitutional.  Accordingly, Plaintiff's claims should be dismissed with prejudice.

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

## IV.   CONCLUSION

Based on the above, Defendants respectfully request the Court grant its Motion to Dismiss with Prejudice Plaintiff's Complaint.

DATED this 2nd day of September, 2015.

WRIGHT, FINLAY & ZAK, LLP

Edgar C. Smith, Esq.
Nevada Bar No. 5506
Victoria L. Hightower, Esq.
Nevada Bar No. 10897
7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
*Attorneys for Defendants, BAC Home Loans
Servicing, LP fka Countrywide Home Loans
Servicing, LP and Carrington Mortgage Services*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP; that service of the foregoing **BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP AND CARRINGTON MORTGAGE SERVICES' MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S COMPLAINT** was made on the day of September, 2015, by electronic means or depositing a copy of same in the United States Mail, at Las Vegas, Nevada, addressed as follows:

Michael Beede, Esq.
The Law Office of Mike Beede, PLLC
2300 W. Sahara Ave. #420
Las Vegas, NV 89102
*Attorney for Plaintiff*

An Employee of WRIGHT, FINLAY & ZAK, LLP