**MSJ**
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
**AKERMAN LLP**
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: darren.brenner@akerman.com
Email: thera.cooper@akerman.com

*Attorneys for Defendants, BAC Home Loans*
*Service, LP fka Countrywide Home Loans*
*Service, LP and Carrington Mortgage*
*Services*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RJRN HOLDINGS, LLC,<br><br>       Plaintiff,<br><br>vs.<br><br>RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive,<br><br>       Defendants. | Case No.:     2:15-CV-1257-JCM-NJK<br><br><br>**ERRATA TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| RH KIDS, LLC,<br><br>       Third-Party Plaintiff,<br><br>vs.<br><br>RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and  DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive,<br><br>       Third-Party Defendants. | |

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

{39605205;1}

1

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP,

Counterclaimant,

vs.

RH KIDS, LLC, a limited liability company of unknown origin; RJRN HOLDINGS, LLC, a Nevada limited liability company; REX ARCHAMBAULT, an individual,

Counter-Defendants.

Defendants BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP (**Bank of America**), Carrington Mortgage Services (**Carrington**), and Mortgage Electronic Registration Systems, Inc. (**MERS**) (collectively, **Defendants**), by and through their attorneys at the law firm AKERMAN LLP, files this Errata to Defendants Motion for Summary Judgment to incorporate the entire pages to the Motion for Summary Judgment.  A copy of the correct image is attached hereto as Exhibit A.

DATE: September 22, 2016.

AKERMAN LLP


*/s/ Thera Cooper*
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Defendants, BAC Home Loans Service, LP fka Countrywide Home Loans Service, LP and Carrington Mortgage Services*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Akerman LLP, and that on the 22nd day of September, 2016, I caused to be served a true and correct copy of the foregoing **ERRATA TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**, in the following manner:

(**Electronic Service**)   Pursuant to FRCP 5(b), the above referenced document was electronically filed on the date hereof  with the Clerk of the Court for the United States District Court by using the Court's CM/ECF system and served through the Court's Notice of electronic filing system automatically generated to those parties registered on the Court's Master E-Service List.

Michael N. Beede, Esq.
Cheryl A. Grames, Esq.
Law Office of Mike Beede, PLLC
2300 W. Sahara Avenue, Suite 420
Las Vegas, Nevada 89102
eservice@legallv.com
cheryl@legallv.com
*Attorneys for Plaintiff/Counter Defendant*
*RJRN Holdings, LLC*
*Third-Party Plaintiff/CounterDefendant*
*RH Kids, LLC and Rex Archambault*


                                         */s/ Carla Llarena*
                                         An employee of AKERMAN LLP

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

# EXHIBIT A

# EXHIBIT A

**MSJ**
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
**AKERMAN LLP**
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: darren.brenner@akerman.com
Email: thera.cooper@akerman.com

*Attorneys for Defendants, BAC Home Loans
Service, LP fka Countrywide Home Loans
Service, LP and Carrington Mortgage
Services*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RJRN HOLDINGS, LLC, | Case No.:    2:15-CV-1257-JCM-NJK |
| Plaintiff, | |
| vs. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive, | |
| Defendants. | |
| RH KIDS, LLC, | |
| Third-Party Plaintiff, | |
| vs. | |
| RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and  DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive, | |
| Third-Party Defendants. | |

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

{39581889;1}                                      1

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  BAC HOME LOANS SERVICING, LP FKA
   COUNTRYWIDE HOME LOANS
2  SERVICING, LP,

3                      Counterclaimant,
                vs.
4
   RH KIDS, LLC, a limited liability company of
5  unknown origin; RJRN HOLDINGS, LLC, a
   Nevada limited liability company; REX
6  ARCHAMBAULT, an individual,

7                      Counter-Defendants.

8

9          Defendants BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP

10  (**Bank of America**), Carrington Mortgage Services (**Carrington**), and Mortgage Electronic

11  Registration Systems, Inc. (**MERS**) (collectively, **Defendants**), by and through their attorneys at the

12  law firm AKERMAN LLP, move for summary judgment on RH Kids, LLC's (**RH Kids**) quiet title and

13  declaratory relief claims and Bank of America's quiet title and declaratory relief counterclaims.

14                    **MEMORANDUM OF POINTS AND AUTHORITIES**

15                          **I.    INTRODUCTION**

16          In a landscape altering decision, the Ninth Circuit recently held NRS 116's "opt-in" notice

17  scheme violated,[1]  the Due Process Clause because it allows a mortgage lender to be stripped of its

18  first deed of trust without requiring actual notice to the lender of the intent to foreclose.  *Bourne*

19  *Valley*, __ F.3d __, 2016 WL 4254983 (9th Cir. Aug. 12, 2016).  The Due Process Clause requires,

20  under **all** circumstances, a statute authorizing extinguishment of a lien in a foreclosure sale also

21  **mandate** actual notice to those lienholders.   Here, because the HOA's foreclosure sale was

22  conducted under an unconstitutional statute, it is void, meaning Defendants are entitled to summary

23  judgment.

24          Even if NRS 116 (the **HOA Lien Statute**) were constitutional, Defendants are still entitled to

25  summary judgment because BANA's super-priority tender extinguished the HOA's super-priority

26  lien before the foreclosure sale.  The Nevada Supreme Court recently held a mortgagee's tender of

27

28  [1] The Nevada Legislature amended NRS chapter 116 effective October 1, 2015 to mandate homeowners associations
    provide mortgagees with notice of default and sale even when notice has not been requested.  S.B. 306 (Nev. 2015).

the statutory super-priority amount of a homeowners association's lien extinguishes the super-priority portion of the lien, even if the association rejects the super-priority tender.  *Stone Hollow Avenue Trust v. Bank of America, N.A.*, Case No. 64955, 2016 WL _____ (Nev. Aug. 11, 2016).  Following Bank of America's tender, the HOA could only foreclose on only the sub-priority portion of its lien.  The sub-priority lien was subordinate to Bank of America's Deed of Trust,  thus, RH Kids' interest in the Property, if any, is subject to Bank of America's Deed of Trust.

Moreover, Defendants are entitled to summary judgment because the HOA Lien Statute is preempted as applied to deeds of trust securing FHA-insured loans, like the deed of trust in this case, and the Nevada Supreme Court's decision in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) cannot be applied retroactively.  Finally, the HOA's foreclosure sale is void as commercially unreasonable because the HOA sold the Property for 8% of its fair market value after rejecting Bank of America's super-priority tender and informing Bank of America the HOA's foreclosure would not extinguish its Deed of Trust.  RH Kids cannot hide behind the bona fide purchaser doctrine, as it expressly acknowledged that title to the Property was clouded and the Property was encumbered by Bank of America's Deed of Trust when it purchased the Property.  For these reasons, Defendants are entitled to summary judgment.

## II.   STATEMENT OF FACTS

**A.    Rhonda Davis borrows $157,528.00 to purchase a home.**

On or about December 23, 2008, Rhonda Davis (**Borrower**) executed a promissory note (the **Note**) in the amount of $157,528.00 to purchase real property located at 5234 Fire Night Avenue, Las Vegas, Nevada 89122 (the **Property**).  The Note was secured by a first deed of trust in favor of Pulte Mortgage, LLC (the **Deed of Trust**).  **Exhibit A**.  The Deed of Trust was assigned to Bank of America on August 6, 2010.  **Exhibit B**.  The Deed of Trust secures a loan insured by the Federal Housing Administration (**FHA**).  **Exhibit C**.  Bank of America has made mortgage insurance premium payments to the FHA over the life of the loan.  *Id.*

**B.    The HOA rejects Bank of America's super-priority tender and sells the Property at a 92% discount.**

The Property is governed by the Declaration of Covenants, Conditions, and Restrictions of the Hacienda North Homeowners Association (the **HOA**), which requires the Property's owner to

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

pay certain assessments to the HOA.  Borrower defaulted on her obligations to the HOA.  On April 12, 2011, the HOA, through its agent Absolute Collection Services, LLC (the **HOA Trustee**), recorded a Notice of Delinquent Assessment Lien, stating the Borrower owed $1,074.00 to the HOA. **Exhibit D**.  Subsequently, the HOA, through the HOA Trustee, recorded a Notice of Default and Election to Sell Under Homeowners Association Lien on July 18, 2011, stating the Borrower owed $2,009.41 to the HOA.  **Exhibit E**.

Upon being notified of the HOA's lien, BANA retained legal counsel to obtain information regarding the super-priority amount owed in order to pay the super-priority amount.  Miles, Bauer, Bergstrom & Winters LLP (**Miles Bauer**), on behalf of Bank of America, wrote the HOA on January 30, 2012, seeking to determine the nine-month super-priority lien amount and offering to pay the same.  **Exhibit F**.[2]  The letter stated:

> [A] portion of your HOA lien is arguably superior to [Bank of America]'s first deed of trust, specifically **the nine months of assessments for common expenses** incurred before the date of your notice of delinquent assessment dated November 26, 2012.  For purposes of calculating the nine-month period, the trigger date is the date the HOA sought to enforce its lien.  It is unclear, based on the information known to date, what amount the nine months' of common assessments pre-dating the NOD actually are.  **That amount,** whatever it is, **is the amount [Bank of America] should be required to rightfully pay to fully discharge its obligations to the HOA** per NRS 116.3102 and **my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA.**

*Id.* (emphasis added).  The HOA Trustee informed Bank of America the HOA was foreclosing on only the sub-priority portion of its lien, as it did not believe the super-priority lien came into existence until after the senior deed of trust on a property was foreclosed.  **Exhibit G**.[3]  The HOA Trustee further informed Bank of America it "recognized [Bank of America]'s position as the first mortgage company as the senior lien holder."  *Id.*  For these reasons, the HOA Trustee refused Bank of America's offer to pay the super-priority amount of the HOA's lien.  *Id.*

---

[2] This letter was produced by the HOA Trustee in response Bank of America's subpoena *duces tecum*, and was accompanied by the attached Certificate of Custodian of Records from the HOA Trustee.

[3] This letter was produced by the HOA Trustee in response Bank of America's subpoena *duces tecum*, and was accompanied by the attached Certificate of Custodian of Records from the HOA Trustee.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Instead of accepting the full super-priority tender, the HOA Trustee proceeded to foreclose on  the HOA's sub-priority lien, recording a Notice of Trustee's Sale on November 10, 2011, stating the Borrower owed the HOA $3,530.72, and setting the sale for January 17, 2012. **Exhibit H**. No sale occurred on this date.  Instead, the HOA Trustee sold the HOA's subordinate interest in the Property to Rex Archambault (**Archambault**) on April 17, 2012, for $5,000.00. **Exhibit I**. The amount Archambault paid for the Property was approximately 8% of the Property's fair market value at the time of the HOA sale—$66,000.00.  **Exhibit J.**  Archambault subsequently transferred its interest in the Property to RJRN Holdings, LLC (**RJRN**).  **Exhibit K**.

**C.     RJRN correctly believed that the Property was encumbered by the Deed of Trust after the foreclosure sale.**

RJRN believed it was purchasing properties at HOA foreclosure sales subject to senior deeds of trust.  The individual in charge of purchasing properties for RJRN, Daunshari Wong-Culotta, testified RJRN believed deeds of trust still encumbered properties after HOA foreclosure sales. **Exhibit L**, Deposition of Daunshari Wong-Culotta, Corporate Representative of RJRN, LLC, at 11:23–12:5.  Specifically, responding to a question regarding how RJRN determined how much to bid at an HOA foreclosure auction, Ms. Wong-Culotta testified:

> Basically market research that I would provide.  I wouldn't go above a certain amount that I felt comfortable paying for an **HOA lien, because I never believed we would own them**.  So my formula was to keep them for 18 to 24 months to capture the rent, recapture the rent, **and if the bank came in to foreclose, no harm, no foul**.

*Id.* (emphasis added).  Ms. Wong-Culotta made clear that she is the sole individual in charge of purchasing properties for RJRN.  *Id.*, at 11:18–11:22.  RJRN later sold its purported interest in the Property to RH Kids.

**D.     RH Kids purchases RJRN's purported interest in the Property while acknowledging there is a "cloud on title."**

RJRN's sale of its purported interest in the Property to RH Kids was memorialized in a Purchase and Sale Agreement (the **PSA**).  **Exhibit M**.  The Purchase and Sale Agreement contains the following clause:

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

> Seller and Purchaser acknowledge the following: **There are one or more clouds on title.  No title insurance is provided in this sale.  No warranties or representations are provided with this sale.**  Buyer and Seller agree that Buyer is taking title to the property subject to any and all encumbrances which are currently recorded against the property, including deeds of trust, HOA assessments, and other liens.

*Id.* (emphasis in original).  The PSA also contains an indemnity clause, in which RJRN agrees to indemnify RH Kids for any loss arising from the sale of the encumbered Property.  *Id.*  The PSA also contains an attorney conflict waiver, in which both RH Kids and RJRN waive any conflicts from their joint representation by the Law Office of Mike Beede, PLLC.  *Id.*

### III.    LEGAL STANDARDS

Summary judgment is proper when there is no issue of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  After the movant has carried its burden to identify issues where there is no genuine issue of material fact, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment must be granted if "the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995).

### IV.    ARGUMENT.

**A.     The HOA Lien Statute is facially unconstitutional.**

**1.     The HOA Lien Statute does not mandate notice to deed of trust beneficiaries.**

The due process clause requires, "at a minimum, [the] deprivation of life, liberty, or property by adjudication be preceded by notice and an opportunity for hearing appropriate to the nature of the case."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  An "elementary and fundamental requirement" is "notice reasonably calculated, **under all circumstances**, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Tulsa Prof'l Collection Services, Inc. v. Pope*, 458 U.S. 478, 484 (1988) (quoting *Mullane*, 339 U.S. at 314) (emphasis added)).

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

The HOA Lien Statute did not mandate notice to mortgagees prior to its recent amendment. Instead, the statute contained "request-notice" or "opt-in" notice provisions, requiring notice **only** if lienholders requested it in advance. *See e.g.,* NRS 116.31163(2) (requiring notice of default to "any holder of a security interest encumbering the unit owner's interest **who has notified the association**, 30 days before the recordation of the notice of default, of the security interest.") (emphasis added); NRS 116.311635 (requiring notice of sale to "[t]he holder of a recorded security interest or the purchaser of the unit, **if either of them has notified the association**, before the mailing of the notice of sale, of the existence of the security interest, lease of contract of sale, as applicable.") (emphasis added).

As the Ninth Circuit explained, the HOA Lien Statute "required a homeowners' association to alert a mortgage lender it intended to foreclose only if the lender had affirmatively requested notice."[4] *Bourne Valley v. Wells Fargo Bank, N.A.*, __ F.3d __, No. 15-15223, 2016 WL 4254983, *1 (9th Cir. Aug. 12, 2016). Pointing out the absurd practical effect of this "opt-in" notice scheme, the Ninth Circuit commented:

> [D]espite that only the homeowners' association knew when and to what extent a homeowner had defaulted on her dues, the burden was on the mortgage lender to ask the homeowners' association to please keep it in the loop regarding the homeowners' association's foreclosure plans. How the mortgage lender, which likely had no relationship with the homeowners' association, should have known to ask is anybody's guess.

*Bourne Valley*, 2016 WL 4254983, * 3.

---

[4] The Nevada Supreme Court also made clear the HOA Lien Statute is an "opt-in" notice statute in *SFR Investments*: "Before [foreclosure], the HOA must give notice of sale to the owner and to the holder of a recorded security interest **if the security interest holder 'has notified the association, before mailing of the notice of sale of the existence of the security interest.'"** *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 411 (Nev. 2014) (emphasis added) (citing NRS 116.311635(1)(b(2)). The Nevada Supreme Court did not decide the constitutionality of the HOA Lien Statute in *SFR Investments*. *See SFR Investments*, 334 P.3d at 418. That mortgagee made an **as-applied**, rather than **facial** challenge to the HOA Lien Statute, arguing it received insufficient notice under the due process clause. *See id.* The Nevada Supreme Court did not reach the as-applied challenge because "at the pleadings stage, we credit the allegations of the complaint that [the HOA] provided all statutorily required notices as true and sufficient to withstand a motion to dismiss." *Id.* There was no consideration of the argument that the HOA Lien Statute is facially unconstitutional because it impermissibly requires mortgagees to opt-in to their due process rights. *SFR Investments* has no precedential value in deciding the facial unconstitutionality issue presented here.

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

As an issue of first impression, *Bourne Valley* holds that the HOA Lien Statute's "peculiar scheme" is facially unconstitutional under the Fourteenth Amendment. *Id.*, at *3. Plaintiff Bourne Valley Court Trust obtained a quitclaim deed to a reverted property following an HOA's foreclosure sale. *Id.*, at *2. It then filed suit to quiet title against the senior mortgagee. *Id.* The district court granted summary judgment to Bourne Valley Court Trust, holding that the HOA's sale extinguished the lender's interest under *SFR Investments. Id.* On appeal, the Ninth Circuit held the HOA Lien Statute's "opt-in" notice scheme was "not only strange [but] also unconstitutional" because it "required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice." *Id.*, at *1, *3.

In the absence of controlling authority analyzing the constitutionality of an "opt-in" notice scheme, the Ninth Circuit turned to the Fifth Circuit, who evaluated a similar clause in the context of Louisiana's foreclosure statute. *Id.*, at 9. In *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir. 1989), the Fifth Circuit held that the Louisiana statute—which mandated prior notice of seizure only to those who requested it—did not pass constitutional muster because it impermissibly shifted the "entire burden of ensuring adequate notice to an interested party regardless of the circumstances." *Id.*, at 884 (citing *Mennonite*, *Bd. of Missions v. Adams*, 462 U.S. 791, 797 (1983)).

The court in *Bourne Valley* recognized that the HOA Lien Statute's "opt-in" notice provisions functioned similarly to the unconstitutional Louisiana statute, holding that the HOA Lien Statute also impermissibly shifts the burden of ensuring adequate notice to mortgage lenders "without regard for: (1) whether the mortgage lender was aware that the homeowner had defaulted on her dues to the homeowners' association, (2) whether the mortgage lender's interest had been recorded such that it would have been easily discoverable through a title search, or (3) whether the homeowners' association had made any effort whatsoever to contact the mortgage lender." 2016 WL 4254983, at *4.

Invoking NRS 107.090 does not salvage the constitutionality of the HOA Lien Statute. *Bourne Valley* rejected the argument that NRS 107.090—which governs the notice required for default and sale under a deed of trust—cures the HOA Lien Statute's deficiencies. *Id.* Bourne Valley argued NRS 107.090's notice requirements "should be read into" the HOA Lien Statute via

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1    NRS 116.31168(1), under which "[t]he provisions of NRS 107.090 apply to the foreclosure of [a

2    homeowners] association's lien as if a deed of trust were being foreclosed." *Id.* The Ninth Circuit

3    disagreed, noting Bourne Valley's statutory interpretation renders the HOA Lien Statute's notice

4    provisions entirely superfluous. *Id.* The court further recognized that the Nevada Legislature would

5    have had no reason to amend the HOA Lien Statute—as it did last year—if the statute already

6    required notice to mortgagees whose interests may be extinguished. *Id.*, at *4, n.4.

7        The potential extinguishment of the deed of trust in this case pursuant to the HOA Lien

8    Statute amounts to state action, and thus requires application of the Due Process Clause. *See Bourne*

9    *Valley*, 2016 WL 4254983; *see, e.g.*, *Culbertson v. Leland*, 528 F.2d 426, 432 (9th Cir. 1975)

10   (holding that operation of innkeeper's lien statute that permitted non-judicial seizure to be state

11   action); *J.D. Construction v. IBEX Int'l Group*, 126 Nev. 366, 240 P.3d 1033 (Nev. 2010).

12       In *Bourne Valley*, the Ninth Circuit concluded that because the HOA Lien Statute failed to

13   mandate notice to lenders and met the other requirements for finding a violation of due process, it

14   was facially unconstitutional. *Bourne Valley*, 2016 WL 4254983, at *5. This decision should be

15   applied here because the HOA sale through which RH Kids purports to have acquired its interest in

16   the Property was conducted under the same unconstitutional statute analyzed in *Bourne Valley*.

17       **2.      Any alleged factual issue concerning actual notice is irrelevant.**

18       Whether Bank of America had actual notice of the "super-priority" lien amount is irrelevant.[5]

19   An unconstitutional law is void. *Journigan v. Duffy*, 552 F.2d 283, 289 (9th Cir. 1977).

20   Consequently, a successful facial challenge invalidates the statute itself. *Foti v. City of Menlo Park*,

21   146 F.3d 629, 635 (9th Cir. 1998); *Dehne v. Avanino*, 219 F. Supp. 2d 1096, 1102 (D. Nev. 2001).

22   Actual notice does not change the analysis. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 456 (1st Cir.

23   2009).[6] *Bourne Valley* itself recognized that Wells Fargo's failure to "present evidence that it did

24   not receive notice" in that case did not affect its facial challenge. *See Bourne Valley*, 2016 WL

25

26

27   _____

     [5] Defendants do not concede actual notice.

28   [6] *See also Planned Parenthood v. Casey*, 505 U.S. 833, 894 (1992) (holding spousal abortion notification law
     unconstitutional notwithstanding some women would voluntarily notify their husbands).

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

4254983, at 7.[7]   Because the HOA Lien Statute is facially unconstitutional, it is void as a matter of law.  Consequently, the HOA's foreclosure sale was void, and passed no interest in the Property to RH Kids' predecessor-in-interest, meaning RH Kids has no interest in the Property.

**B.**     **Bank of America's super-priority tender extinguished the super-priority lien.**

Bank of America's super-priority tender extinguished the super-priority portion of the HOA's lien before the HOA's foreclosure sale.  The Nevada Supreme Court recently confirmed that an HOA's super-priority lien is limited to nine months of delinquent assessments.  *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 73 (Nev. 2016) ("[W]e conclude the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees and foreclosure costs incurred; rather it is limited to an amount equal to the common expense assessments due during the nine months before foreclosure.").  And in a case with facts quite similar to this case, the Nevada Supreme Court held that a mortgagee's super-priority tender extinguishes the super-priority portion of an HOA's lien, even if the HOA rejects the tender.  *Stone Hollow Avenue Trust v. Bank of America, N.A.*, Case No. 64955, 2016 WL _____ (Nev. Aug. 11, 2016).[8] Under this clear precedent, Bank of America's Deed of Trust survived the foreclosure sale because its tender of nine months' delinquent assessments extinguished the HOA's super-priority lien before the sale.

In *Stone Hollow*, an investment trust purchased property at a homeowners association's foreclosure sale, then sued Bank of America, seeking a judgment that it owned the property free and clear of Bank of America's senior deed of trust.  **Exhibit N**.  After the district court granted summary judgment in Bank of America's favor based on its super-priority tender, the purchaser appealed.  *Id.*  On appeal, the Nevada Supreme Court first ordered reversal based on the purchaser's

---

[7] The Ninth Circuit has consistently rejected the argument an actor might voluntarily provide more process than the statute provides.  *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 789 (9th Cir. 2014) (where statute failed to provide for individualized determination before setting bail, declining to consider whether officials might decide to provide such determination voluntarily and holding entire statute unconstitutional).

[8] Although the *Stone Hollow* decision was not published and is therefore not technically binding on this Court, it has tremendous persuasive value and should be followed.  *See* NEV. R. APP. P. 36(c)(3).  The three justices in the *Stone Hollow* panel were also members of the majority of the Court in the *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014).  It is thus very likely that the Nevada Supreme Court will continue to follow the reasoning and rule it followed in *Stone Hollow*, and announce that rule in a binding, published decision in one of the many super-priority tender cases pending before it in the near future.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

argument that it was a bona fide purchaser.  *Id.*, at 2.  But after reconsideration, the Nevada Supreme Court issued an order affirming the district court's judgment based on Bank of America's pre-foreclosure tender of the full super-priority amount to the homeowners association, without analyzing whether the purchaser was a bona fide purchaser.  **Exhibit O**.  The Nevada Supreme Court found that the association's rejection of Bank of America's full super-priority tender was "unjustified," and that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien." *Id.*, at 1.  Because the association's super-priority lien was extinguished before the sale, the Supreme Court held that the association foreclosed on only the sub-priority portion of its lien, meaning Bank of America's "deed of trust was not extinguished by virtue of the sale to" the foreclosure-sale purchaser.  *Id.*, at 2.  Accordingly, the foreclosure-sale purchaser "took title to the property subject to [Bank of America]'s deed of trust," regardless of whether the foreclosure-sale purchaser was a bona fide purchaser.  *Id.*

Bank of America took an almost identical action in this case, tendering the full super-priority amount of the HOA's lien before the foreclosure sale, thus extinguishing that portion of the HOA's lien.  After learning of the HOA's Notice of Default and Election to Sell, Bank of America, through counsel at Miles Bauer, sent a letter to the HOA Trustee, requesting a payoff ledger detailing the super-priority amount of the HOA's lien before the HOA's foreclosure sale.  **Ex. F**.  The letter stated that Bank of America "**hereby offers to pay [the super-priority] sum** upon presentation of adequate proof of the same by the HOA." *Id.* (emphasis added).  The letter correctly defined the statutory super-priority sum Bank of America offered to pay as "nine months' of common assessments." *Id.*; *see also Ikon Holdings,* 373 P.3d at 73 ("[W]e conclude the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees and foreclosure costs incurred; rather it is limited to an **amount equal to the common expense assessments due during the nine months before foreclosure**.") (emphasis added).  The HOA Trustee unjustifiably refused to accept Bank of America's super-priority tender based on its mistaken belief that the HOA's super-priority lien did not come into existence until after the senior deed of trust on a property was foreclosed.  **Ex. G**.  The HOA Trustee further explained that Bank of America's tender was

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  unnecessary because the HOA Trustee "recognized [Bank of America]'s position as the first

2  mortgage company as the senior lien holder." *Id.*

3          The HOA Trustee's rejection of Bank of America's super-priority tender is irrelevant, as

4  Bank of America's offer to pay the statutory super-priority amount was an effective tender under

5  long-standing Nevada law, and thus extinguished the super-priority portion of the HOA's lien under

6  *Stone Hollow*.   Tender is complete when "**the money is offered** to a creditor who is entitled to

7  receive it." *Cladianos v. Friedhoff*, 69 Nev. 41, 45, 240 P.2d 208, 210 (Nev. 1952) (emphasis

8  added).  After the money owed is offered to the creditor, "nothing further remains to be done, and

9  the transaction is completed and ended." *Id.*  Other jurisdictions agree that tender is defined as "**an**

10 **offer of payment** that is coupled either with no conditions or only with conditions upon which the

11 tendering party has a right to insist." *Fresk v. Kramer*, 99 P.3d 282, 286-87 (Or. 2004) (emphasis

12 added); *see also* 74 Am. Jur. 2d *Tender* § 22 (2014).

13         The facts in this case are nearly identical to the facts in *Stone Hollow*—the only distinction is

14 here Bank of America could not send a check for the super-priority amount because the HOA

15 Trustee refused its offer to pay the super-priority amount.  That is a distinction without a difference

16 under Nevada law, as tender is complete when the "money is offered to a creditor." *See Cladianos*,

17 64 Nev. at 45.  Here, Bank of America offered the statutory super-priority amount to the HOA

18 Trustee, a clear tender under Nevada law.  Like the HOA trustee in *Stone Hollow*, the HOA Trustee

19 here unjustifiably rejected Bank of America's full super-priority tender.  **Ex. G**.  As in *Stone Hollow*,

20 this unjustifiable rejection is irrelevant—the super-priority "tender [was] effective to discharge the

21 lien." **Ex. O**.  Consequently, the result in this case should be the same as the result in *Stone*

22 *Hollow*—RH Kids "took title to the [P]roperty subject to [Bank of America's] Deed of Trust." *See*

23 *id.*

24 **C.    RH Kids' interest in the Property, if any, is subject to Bank of America's Deed of Trust.**

25         RH Kids' claim that it is a bona fide purchaser is irrelevant, as that equitable doctrine cannot

26 protect it from the legal effect of Bank of America's super-priority tender.  Even if bona fide

27 purchaser status could protect a foreclosure-sale purchaser from a super-priority tender, RH Kids is

28 not entitled to that protection because it is not a bona fide purchaser.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**1.    The bona fide purchaser doctrine cannot protect RH Kids from Bank of America's super-priority tender.**

The *Stone Hollow* decision makes clear that the bona fide purchaser doctrine is irrelevant in cases where, like here, the senior mortgagee tendered the super-priority amount before the foreclosure sale.  In *Stone Hollow*, the district court granted summary judgment in favor of Bank of America based on its tender to the homeowners association of the super-priority amount of its lien.  **Ex. N**, at 1.  The Nevada Supreme Court initially vacated the district court's order because "the district court did not take into account [the foreclosure-sale purchaser]'s putative status as a bona fide purchaser when it granted summary judgment."  *Id.*, at 2.  The Court then remanded the case to the district court to develop whether the foreclosure-sale purchaser was a bona fide purchaser.  *Id.*  Bank of America then petitioned the Nevada Supreme Court for rehearing.  **Ex. O**, at 1.

On rehearing, the Nevada Supreme Court vacated its prior order, affirming the district court's grant of summary judgment even though the district court did not "take into account [the foreclosure-sale purchaser]'s putative status as a bona fide purchaser."  *Id.*; **Ex. N**, at 1.  Making clear this equitable doctrine was irrelevant in super-priority tender cases, the Nevada Supreme Court explained that the "district court correctly determined **as a matter of law** that [the foreclosure-sale purchaser] took title to the property subject to [the] deed of trust."  **Ex. O**, at 2 (emphasis added).

Just as is it did in *Stone Hollow*, here Bank of America tendered the super-priority amount to the HOA Trustee before the sale.  **Ex. F**.  Accordingly, RH Kids "took title to the [P]roperty subject to [Bank of America's] Deed of Trust."  Whether RH Kids is a bona fide purchaser is irrelevant.

**2.    RH Kids is not a bona fide purchaser.**

Even if bona fide purchaser status could protect RH Kids' purported interest in the Property, RH Kids is not bona fide purchaser.  The burden of establishing bona fide purchaser status rests with the party claiming such status—here, RH Kids.  *Berge v. Fredericks*, 591 P.2d 246, 248 (Nev. 1979).  A subsequent purchaser is bona fide under common-law principles if it takes property "for a valuable consideration and without notice of the prior equity, and **without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry**."  *Shadow Wood*, 366 P.3d at 1115 (citing *Bailey v. Butner*, 64 Nev. 1,

19, 176 P.2d 226, 234 (1947) (emphasis added)).   Under Nevada law, "[c]onstructive notice is that which is imparted to a person upon strictly legal inference of matters which he necessarily ought to know, or which, by the exercise of ordinary diligence, he might know."  *Id.*  (quoting *Allison Steel Mfg. Co. v. Bentonite, Inc.,* 471 P.2d 666, 668 (Nev. 1970)).

A party cannot qualify as a bona fide purchaser if the party was under a duty of inquiry before purchasing the property at issue.  *Berge v. Fredericks*, 591 P.2d 246, 249 (Nev. 1979).  The *Berge* Court explained that this duty arises:

> when the circumstances are such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights. He is said **to have constructive notice of their existence** whether he does or does not make the investigation. The authorities are unanimous in holding **that he has notice of whatever the search would disclose**.

*Berge*, 95 Nev. at 189 (emphasis added).  The Nevada Supreme Court has clarified that "[a] recital in an instrument of record charges subsequent purchasers with notice of all material facts which an inquiry suggested by that recital would have disclosed."  *Allison Steel*, 86 Nev. at 498.  "When **anything** appears in" an instrument of record "sufficient to put a prudent man on inquiry which if prosecuted with ordinary diligence would lead to actual knowledge of **some right or title in conflict with the title he is about to purchase**, it is his duty to make inquiry, and **if he does not do so he is chargeable with actual knowledge of what the inquiry would have disclosed**."  *Id.* (emphasis added).

Here, the recorded Deed of Trust had a Planned Unit Development Rider (**PUD Rider**) containing the following provision, which put RH Kids on inquiry notice of Bank of America's super-priority tender:

> If Borrower does not pay [HOA] dues and assessments when due,
> Lender may pay them.

**Ex. A**.  This provision of the publicly-recorded Deed of Trust put RH Kids on inquiry notice that Bank of America could pay off a lien which had priority over the Deed of Trust—like the HOA's super-priority lien here.  Whether RH Kids actually knew of Bank of America's tender is thus

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

irrelevant, as it was under a duty to inquire if Bank of America had tendered, and it is "charge[d] … with notice of all material facts which" this inquiry would have disclosed.  *See Allison Steel*, 86 Nev. at 498.  RH Kids' duty of inquiry required the level of investigation that a "reasonable man in his position [would make] that would advise him of the existence of prior unrecorded rights."  *See Berge*, 95 Nev. at 189, 591 P.2d at 250.  RH Kids made no investigation whatsoever.  **Exhibit P**, at Resp. 8 ("RH Kids did not research whether any entity had satisfied or attempted to satisfy the superpriority portion of the HOA's lien prior to the foreclosure sale.").

In fact, RH Kids expressly acknowledged there was a cloud on title when it purchased the Property, and acknowledged that it was purchasing the Property subject to the Deed of Trust.  In the Purchase and Sale Agreement through which it purchased the Property from RJRN, RH Kids acknowledged that:

> Seller and Purchaser acknowledge the following: **There are one or more clouds on title.  No title insurance is provided in this sale.  No warranties or representations are provided with this sale.**  Buyer and Seller agree that Buyer is taking title to the property subject to any and all encumbrances which are currently recorded against the property, including deeds of trust, HOA assessments, and other liens.

**Ex. M** (emphasis in original).  RH Kids cannot possibly contend that it is a bona fide purchaser without notice of Bank of America's Deed of Trust when it expressly acknowledged the existence and possible (and actual) validity of Bank of America's Deed of Trust in the contract memorializing its purchase of the Property.

RH Kids cannot qualify as a bona fide purchaser, as it had actual and constructive knowledge of the senior Deed of Trust, and inquiry notice of Bank of America's super-priority tender.  Consequently, to the extent RH Kids has any interest in the Property, that interest is subject to the Deed of Trust.

**D.**     **The HOA sale is invalid because it was commercially unreasonable.**

This Court should grant summary judgment in Defendants' favor because the sale of the Property for 8% of its fair market value is grossly inadequate as a matter of law.  The Nevada Supreme Court has explained that inadequate price alone can be sufficient to set aside an HOA foreclosure sale if the price is "grossly inadequate."  *Shadow Wood Homeowners Ass'n v. New York*

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

*Comm. Bancorp*, 366 P.3d 1105, 1112 (Nev. 2016).   Adopting the Restatement approach, the Nevada Supreme Court held: "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is **warranted in invalidating a sale where the price is less than 20 percent of fair market value**[.]"   *Id.* (emphasis added) (quoting the Restatement (Third) of Property (Mortgages) § 8.3 cmt. b (1997)).

In explaining when a foreclosure sale is defective, the Restatement (Third) of Property (Mortgages) § 8.3 (1997) provides:

> (a) A foreclosure sale price obtained pursuant to a foreclosure proceeding that is otherwise regularly conducted in compliance with applicable law **does not render the foreclosure defective unless the price is grossly inadequate**.

> (b) Subsection (a) applies to both power of sale and judicial foreclosure proceedings.

(emphasis added).   The Restatement authors defined what "grossly inadequate" means:

> "Gross inadequacy" cannot be precisely defined in terms of a specific percentage of fair market value. Generally, however, a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value and, absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount. See Illustrations 1-5. **While the trial court's judgment in matters of price adequacy is entitled to considerable deference, in extreme cases a price may be so low (typically well under 20% of fair market value) that it would be an abuse of discretion for the court to refuse to invalidate it.**

*Id.*, at cmt. b. (emphasis added).   Finally, the Restatement authors address the method of proving gross inadequacy:

> This section articulates the traditional and widely held view that a foreclosure proceeding that otherwise complies with state law may not be invalidated because of the sale price unless that price is grossly inadequate. **The standard by which "gross inadequacy" is measured is the fair market value of the real estate.** For this purpose the latter means, not the fair "forced sale" value of the real estate, but the price which would result from negotiation and mutual agreement, after ample time to find a purchaser, between a vendor who is willing, but not compelled to sell, and a purchaser who is willing to buy, but not compelled to take a particular piece of real estate.

*Id.* (emphasis added).

Under the Restatement approach—adopted in *Shadow Wood*—a **grossly inadequate price** itself is the proof of unfairness required to set aside a foreclosure sale under the "price-plus" analysis

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

espoused by the Nevada Supreme Court in *Long v. Towne*.  639 P.2d 528, 530 (Nev. 1982).  In *Long*, the Nevada Supreme Court stated that "**mere** inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness, or oppression." *Id.*, at 13.  The Restatement approach *Shadow Wood* adopted makes clear that while "**mere** inadequacy of price" is insufficient to set aside a foreclosure sale absent other evidence of unfairness, a "**gross** inadequacy" of price is itself sufficient to set aside a foreclosure sale.  Restatement (Third) of Property (Mortgages) § 8.3 cmt. b ("a foreclosure proceeding that otherwise complies with state law may not be invalidated because of the sale price unless the price is grossly inadequate.").

Like the *Shadow Wood* Court, the Arizona Supreme Court has adopted the Restatement approach, holding that a grossly inadequate price alone is sufficient to invalidate a foreclosure sale. *In re Krohn*, 52 P.3d 774, 781 (Ariz. 2002).  In *Krohn*, the Court explained that a contrary rule allowing grossly inadequate sales prices to stand would only benefit speculators at the expense of homeowners and the mortgage-lenders that make owning a home possible.  *Id.*, at 779 ("Windfall profits, like those reaped by bidders paying grossly inadequate prices at foreclosure sales, do not serve the public interest and do no more than legally enrich speculators.").  The *Krohn* Court thus adopted the same Restatement test adopted by the Nevada Supreme Court in *Shadow Wood*, which is meant to protect individual homeowners' equity from grossly inadequate and unfair foreclosure sale prices.  *Id.*, at 780 (noting that foreclosure-sale "bidders can reasonably expect to get bargains because of the nature of foreclosure sales, **but public policy and the courts should not endorse extraordinary bargains at the expense of already troubled debtors**.") (emphasis added).

Here, the HOA sold the Property for 8% of its fair market value at the foreclosure sale, less than half of the 20% of fair market value the *Shadow Wood* Court explained would be "grossly inadequate as a matter of law." **Ex. I**; **Ex. J**.  Defendants produced expert testimony showing the Property's fair market value at the time of the foreclosure sale was $66,000.00.  **Ex. J**.  The HOA foreclosure-sale price was $5,000.00.  **Ex. I**.  Dividing the sales price by the fair market value at the time of the sale shows the Property was sold for less than 8% of its fair market value.  The foreclosure-sale price is thus grossly inadequate as a matter of law, meaning the foreclosure sale is invalid under *Shadow Wood*.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Even if the "price-plus" approach espoused in *Long* still requires evidence of unfairness beyond the grossly inadequate price after *Shadow Wood*, the HOA's sale of the Property after informing Bank of America that its foreclosure would not affect the Deed of trust and rejection of Bank of America's super-priority tender satisfies the *Long* test.  As discussed in Section B, *supra*, Bank of America tendered the super-priority amount to the HOA Trustee prior to the foreclosure sale.  **Ex. F**.  The HOA Trustee rejected this tender because it did not believe the HOA's super-priority lien came into existence until after the senior deed of trust was foreclosed.  The HOA Trustee informed Bank of America that its Deed of Trust was safe, stating that it "recognize[d] [Bank of America]'s position as the first mortgage company as the senior lien holder."  **Ex. G**.

While the HOA Trustee correctly believed that it was foreclosing on the sub-priority portion of its lien, RH Kids now claims that the HOA Trustee actually sold RH Kids' predecessor title to the Property free and clear at the HOA foreclosure sale.  Put simply, RH Kids contends that its predecessor-in-interest purchased something at the HOA foreclosure sale that the HOA Trustee expressly stated it was not selling.  It would be patently unfair for Bank of America's Deed of Trust to be extinguished by the HOA's foreclosure sale when the HOA Trustee informed Bank of America that its Deed of Trust would not be extinguished by that foreclosure.  This is especially so where Bank of America took the exact action required to protect its Deed of Trust by tendering the super-priority amount to the HOA Trustee before the foreclosure sale.  *See Stone Hollow* Order, at **Ex. O**.

Under *Shadow Wood*, the gross inadequacy of the 8% of fair market value sales price in this case is sufficient to invalidate the foreclosure.  If more evidence of unfairness is needed, Bank of America has met that burden by showing that it tendered the super-priority amount prior to the foreclosure sale, and by showing that the HOA Trustee informed Bank of America that it was not foreclosing on the HOA's super-priority lien.  Consequently, the HOA foreclosure sale was commercially unreasonable, and thus invalid.

**E.**   ***SFR Investments* should not be applied retroactively to extinguish Bank of America's Deed of Trust.**

This Court should also grant Defendants' motion for summary judgment because *SFR Investments* can only be applied prospectively.  When *SFR Investments* was decided on September

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

18, 2014, it displaced more than twenty years of practice regarding the priority between first deeds of trust and HOA assessment liens.  The decision should not be applied retroactively to permit extinguishment of the Deed of Trust.

In *Chevron Oil Co. v. Hudson*, 404 U.S. 97, 106-07 (1971), the United States Supreme Court expanded the application of the doctrine of non-retroactivity outside the criminal area, in both constitutional and non-constitutional cases.  The Court noted:

> In our cases dealing with the non-retroactivity question, we have generally considered three separate factors.  First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, (citation omitted) or by deciding an issue of first impression whose resolution was not clearly foreshadowed (citation omitted).  Second, it has been stressed that "we must… weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." (Citation omitted.)  Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity." (Citation omitted.).

*Chevron Oil Co.*, 404 U.S. at 107.  The first point of *Chevron Oil Co.* is pertinent for this analysis.  *SFR Investments* was not clearly foreshadowed.  Even the *SFR Investments* decision recognized, "Nevada's state and federal district courts are divided on whether NRS 116.3116 establishes a true priority lien."  334 P.3d at 412.  As a result, *SFR Investments* should only be applied prospectively because it establishes a new principle of law by overruling clear precedent on which litigants relied and by deciding an issue of first impression that was not clearly foreshadowed.

Recently, Judge Jones held that retroactive application of *SFR Investments* was improper.  In *Christina Trust v. S&P Homes, et al.*, Case No. 2:15-cv-01534.  Judge Jones explained:

> It is not disputed that both the state and federal trial courts were in sharp disagreement as to whether an HOA Sale under NRS 116.3116 extinguished a prior-recorded first mortgage, and that the practice in the real estate industry prior to the announcement of the Nevada Supreme Court's controversial decision was to treat such sale as not extinguishing first mortgages . . . At best, the [*SFR Investments* decision] decided an issue of first impression whose resolution was not clearly foreshadowed.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**Exhibit P**.  Judge Jones also held that retroactive application of *SFR Investments* did not further the purpose of the HOA super-priority rule and that the extinguishment of a first deed of trust through an HOA Sale "where the extinguishment rule was not only unclear but presumed within the relevant industry at the time of the foreclosure sale to be to the contrary, would be an extremely, not just a substantially, inequitable result."  *Id.*, at 10.[9]  This Court should do the same.

## F.    The HOA Lien Statute is preempted to the extent it interferes with federal mortgage insurance programs or extinguishes mortgage interests insured by the FHA.

This Court should grant summary judgment in favor of Defendants because the statutory basis for RH Kids' quiet-title action is preempted under the Supremacy Clause of the U.S. Constitution.  This Court has already held that foreclosures of mortgages insured by the Federal Housing Administration (**FHA**) conducted pursuant to the HOA Lien Statute are void, as the statute is preempted to the extent its operation would extinguish FHA-insured deeds of trust, like Bank of America's Deed of Trust in this case.  **Ex. C**, at ¶ 8.  By destroying the Department of Housing and Urban Development's (**HUD**) ability to incentivize lenders to make mortgage loans to at-risk borrowers and potentially eliminating HUD's ability to take title to the underlying real property, Nevada's HOA foreclosure scheme has the "effect of limiting the effectiveness of the remedies available to the United States."  *Washington & Sandhill Homeowners Ass'n v. Bank of America, N.A.*, 2014 WL 4798565, *7 (D. Nev. Sept. 25, 2014); *see also Saticoy Bay LLC v. SRMOF II 2012-1 Trust*, 2015 WL 1990076, *4 (D. Nev. Apr. 30, 2015) ("Accordingly, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under Nevada Revised Statute 116.3116 may not extinguish a federally-insured loan.").

Furthermore, HOA foreclosures on FHA-insured mortgages circumvent and frustrate HUD's comprehensive foreclosure-avoidance scheme for the at-risk borrowers that are the primary beneficiaries of the FHA Programs.  The purpose of the FHA Programs is to permit at-risk borrowers to purchase homes by providing mortgage insurance to those who otherwise cannot secure

---

[9] The court also noted that the *Chevron Oil Co.* court "cited ten of its own cases dating as far back as the Civil War for the rule limiting the retroactivity of 'judicial decisions' not only in criminal cases but also 'in cases of nonconstitutional, noncriminal state law.'"  *Id.*, 8:21-23.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

mortgage financing.   To promote its homeownership goals, the FHA Programs also include guidelines and directives that limit and control foreclosures on FHA-insured mortgages.   The HOA foreclosures ostensibly authorized by the HOA Lien Statute frustrate that goal by cutting short any foreclosure-avoidance efforts in favor of early foreclosure by HOAs.

Under the Supremacy Clause, state law that conflicts with federal law—including federal regulations—is preempted.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Fid. Fed. Savings & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153–54 (1982) (holding that federal regulations have the same preemptive force as federal statutes).  Federal conflict preemption applies if the challenged state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Crosby*, 530 U.S. at 372–73 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Munoz v. Branch Banking & Trust Co.*, 131 Nev. Adv. Rep. 23, 2015 Nev. LEXIS 27, *4 (Apr. 30, 2015) (preemption "occurs when the state law 'frustrates the purpose of the national legislation, or impairs the efficiencies of [the] agencies of the Federal government to discharge the duties for the performance of which they were created,'" quoting *McClellan v. Chipman*, 164 U.S. 347, 357 (1896)).  A state law stands as an "obstacle" to federal law, and is thus preempted under the Supremacy Clause, whenever it conflicts, interferes, or is inconsistent with "the full purposes and objectives of Congress."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000) (quoting *Hines*, 312 U.S. at 67).

Applying these principles immediately after the Nevada Supreme Court's *SFR Investments* decision, this Court held that "[b]ecause a homeowners association's foreclosure under Nevada Revised Statute § 116.3116 on a Property with a mortgage insured under the FHA insurance program would have the effect of limiting the effectiveness of the remedies available to the United States, the Supremacy Clause bars such foreclosure sales."  *See Washington & Sandhill*, 2014 WL 4798565, at *7.  In another case, this Court held that "[a]llowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property . . . interferes with the purposes of the FHA insurance program."  *Saticoy Bay LLC*, 2015 WL 1990076, at *4 (noting that "courts consistently apply federal law, ignoring conflicting state law, in determining rights related to federally-insured loans").  Because the deed of trust was federally insured, this Court held that "the homeowners'

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

association sale in the instant case is void." *Id.*, at \*5.  In this case, as in *Washington & Sandhill* and *Saticoy Bay*, the HOA foreclosed on property secured by an FHA-insured deed of trust.  As such, the HOA's foreclosure sale is void because the Supremacy Clause bars such foreclosure sales.

      **1.**    **As applied to FHA-insured mortgages, the HOA Lien Statute is preempted because it extinguishes a federal interest and interferes with the governance of a federal program.**

      The Supremacy Clause mandates preemption of state laws when the state "legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs."  *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979).  The federal program at issue here, the FHA Insurance Program, is part of a comprehensive scheme designed to induce lenders to provide loans to at-risk borrowers who could not otherwise obtain financing to purchase a home.[10]  The FHA's purpose is as broad as it is essential, as the "[FHA] is the largest insurer of mortgages in the world, insuring over 34 million properties since its inception in 1934."[11]  And the effects of the Program are far-reaching:  "FHA provides a huge economic stimulation to the country in the form of home and community development, which trickles down to local communities in the form of jobs, building suppliers, tax bases, schools, and other forms of revenue."[12]

      Critical to the FHA Insurance Program's mission is a partnership between private lenders and the federal government.  Through the programs, the federal government insures certain residential mortgage loans originated by private lenders for at-risk borrowers who qualify for assistance under FHA criteria.  *See, e.g.*, 12 U.S.C. § 1701t ("[T]here should be the fullest practicable utilization of the resources and capabilities of private enterprise and of individual self-help techniques.").[13]  By

---

[10]*Mortgage Insurance for One to Four Family Homes Section 203(b)*, HUD.gov, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/ins/203b--df (last visited December 21, 2015) ("[T]he Federal Government expands homeownership opportunities for first time homebuyers and other borrowers who would not otherwise qualify for conventional mortgages on affordable terms, as well as for those who live in underserved areas where mortgages may be harder to get.")

[11]*The Federal Housing Administration (FHA)*, HUD.gov, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory (last visited December 21, 2015).

[12] *Id.*

[13] *See also* Housing Act of 1949, § 2, 42 U.S.C. § 1441 (policy of Housing Act of 1949 is to encourage private enterprise "to serve as large a part of the total need as it can"); Department of Housing and Urban Development Act of 1965, §§ 2, 3(a), 42 U.S.C. §§ 3531 (HUD to "encourage the maximum contributions that may be made by vigorous private home-building and mortgage lending institutions to housing, urban development, and the national economy"), 3532(b) (Secretary of HUD to do same).

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

incentivizing private lenders to make loans to at-risk borrowers, the FHA Insurance Program implements the "National Housing Act's strong policy in favor of **encouraging** private investment in housing." *Angleton v. Pierce*, 574 F. Supp. 719, 736 n.22 (D.N.J. 1983).[14]  In managing the FHA Insurance Program, HUD, the federal agency charged with implementing the FHA, has issued comprehensive regulations to determine what mortgages will be insured, when a foreclosing mortgage servicer will be entitled to convey the home to HUD and in return receive the insurance proceeds, when payment to the servicer and conveyance of the property to HUD will be a matter of discretion rather than entitlement, and how HUD will dispose of the property once conveyed to it in a manner to best support the national housing objective.

The Nevada Supreme Court's recent decision in *Munoz* is instructive on the preemptive effect that should be applied to federal statutory schemes, like the National Housing Act, where the challenged state statute's impact on private entities frustrates a federal statutory or regulatory scheme.  In *Munoz*, the Court considered the preemptive effect of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (**FIRREA**) on a state statute, NRS 40.459(1)(c), which limits the amount of a deficiency judgment that a successor creditor can recover to the amount it paid to acquire the interest in the secured debt, less the amount of the secured property's actual value.  2015 Nev. LEXIS 27 at *1, 7.  FIRREA governs the winding down of a failed bank, providing that the Federal Deposit Insurance Corporation (**FDIC**) will act as receiver for the failed bank and convert the bank's assets to cash to cover insured depositors and debtors to the maximum extent possible.  *Id.*, at *6.  One category of a bank's assets are the loans it holds.  Because the Nevada law limited the amount a subsequent private purchaser could recover on the loan, it made it less likely that a private party would purchase the loan, and hence would make it at least marginally more difficult for the FDIC to dispose of the assets.  *Id.*, at *8.  Since the Nevada law interfered with

---

[14] *The Federal Housing Administration (FHA)*, HUD.gov, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory (last visited Dec. 21, 2015) ("FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans.  The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."); *Mortgage Insurance for One to Four Family Homes Section 203(b)*, HUD.gov, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/ins/203b--df (last visited Dec. 21, 2015) ("[The 203(b)] program provides mortgage insurance to protect lenders against the risk of default on mortgages to qualified buyers."); *see also Hahn*, 430 F.2d at 1249–51; *Falzarano*, 607 F.2d at 512.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

FIRREA's express purpose of "facilitat[ing] the purchase and assumption of failed banks as opposed to their liquidation[,]" it was preempted by the federal law.  *Id.*

Similar to the Nevada statute in *Munoz*, the HOA Lien Statute undermines the incentives federal insurance provides to private parties, which "frustrates the purpose … or impairs the efficiencies" of a federal program—here the FHA Insurance Program.  *See id.*, at *4 (quoting *McClellan*, 164 U.S. at 357).  When Congress enacted the National Housing Act and when HUD first implemented it by promulgating the FHA Insurance Programs' regulations, those entities struck the balance between the public fisc and the private partnership with loan originators that the HOA Lien Statute frustrates.  Congress, in striking that balance, made decisions that "involve[d] a balancing of factors and a consideration of complex financial data," *Falzarano v. United States*, 607 F.2d 506, 512 (1st Cir. 1979), and "economic and managerial decisions" about which "courts are ill-equipped to superintend," *Hahn v. Gottlieb*, 430 F.2d 1243, 1249-51 (1st Cir. 1970).  State interference with that careful and expert balancing could "discourage the increased involvement of the private sector" that is the goal of the National Housing Act, which created the FHA.  *Id.*, at 1250.

Recognizing the careful public-private balance Congress struck in enacting the FHA Insurance Program, the Ninth Circuit has consistently held that federal law, rather than state law, applies in cases involving FHA-insured mortgages, which "assure[s] the protection of the federal program against loss, state law to the contrary notwithstanding."  *United States v. Stadium Apartments*, 425 F.2d at 358, 362 (9th Cir. 1970); *United States v. View Crest Gardens Apartments, Inc.*, 268 F.2d 380, 383 (9th Cir. 1959) ("[T]he federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit—becomes predominant. Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty cannot be adopted."); *see also United States v. Victory Highway Vill., Inc.*, 662 F.2d 488, 497 (8th Cir. 1981) ("federal law, not [state] law, governs the rights and liabilities of the parties in cases dealing with the remedies available upon default of a federally held or insured loan.").

Consistent with the well-settled standard that federal law applies to federally-insured mortgages, this Court held that the HOA Lien Statute was preempted in *Washington & Sandhill*,

stating that "a homeowner[] association's foreclosure under Nevada Revised Statutes § 116.3116 on a Property with a mortgage insured under the FHA insurance program would have the effect of limiting the effectiveness of the remedies available to the United States," and, thus, "the Supremacy Clause bars such foreclosure sales." 2014 WL 4798565, at *7. Indeed, "extinguish[ment] of a first secured interest" of a mortgagee where the mortgage is insured by HUD "would 'operate[ ] to impede or condition the implementation of federal policies and programs' and therefore 'must yield under the supremacy clause of the Constitution to the interests of the federal government.'" *Id.*, at *6 (quoting *Rust*, 597 F.2d at 179). Similarly, this Court held in *Saticoy Bay LLC* that "a homeowners' association foreclosure sale under Nevada Revised Statute 116.3116 may not extinguish a federally-insured loan." 2015 WL 1990076, at *4 ("Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program.").

Foreclosure on and extinguishment of federally-insured mortgages "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Rust*, 597 F.2d at 179. The Supremacy Clause "forbids application of a state law that impedes a federal interest," and the federal interest in the mortgage is impeded where "the property was federally insured at the time of the HOA foreclosure sale." *Saticoy Bay*, 2015 WL 1990076, at *5. Because the HOA Lien Statute impedes the operation of the FHA Insurance Programs, the statute is preempted as applied to FHA-insured mortgages, like the Deed of Trust in this case.

> **2.      As applied to FHA-insured mortgages, the HOA Lien Statute is preempted because it frustrates FHA's foreclosure-avoidance efforts.**

In addition to threatening the partnership between private and public entities, allowing HOAs to foreclose on FHA-insured mortgages also threatens HUD's comprehensive regulations that seek to avoid foreclosure and keep at-risk borrowers in their homes. FHA loans are issued to borrowers who might otherwise not qualify for conventional mortgages due, for example, to their inability to

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

make more than a minimal down payment or their having significantly lower credit scores than banks would otherwise approve.[15]

FHA is not analogous to a private insurer.  As a federal agency, "FHA insures mortgages so that lenders will be encouraged to make more mortgages available for people."[16]  "HUD's mission is to create strong, sustainable, inclusive communities and quality affordable homes for all."[17]  This strong federal interest encompasses keeping borrowers in their homes for some period of time during default as the lender and borrower try to resolve the delinquency.[18]  The FHA Programs include a comprehensive set of servicing guidelines that are aimed at keeping at-risk borrowers in their homes to the extent possible, including in circumstances where the borrowers are in financial distress.  For example, before claiming a default and initiating foreclosure proceedings, the FHA Programs' regulations require that mortgagees consider forbearance and pre-foreclosure counseling[19]—which can take six months or more[20]—and provide that noncompliance may result in a civil monetary

---

[15] *See supra* note 10 and accompanying test; Mortgage Credit Analysis for Mortgage Insurance on One- to Four-Unit Mortgage Loans (4155.1), ch. 4, § 2.A.2.a, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=4155-1_2_secA.pdf (last visited Dec. 21, 2015) ("In order for FHA to insure this maximum loan amount, the borrower must make a required investment of at least 3.5% of the lesser of the appraised value or the sales price of the property.").

*Id.* § 4.A.1.c (showing that borrowers with credit scores between 500 and 579 are eligible for a maximum Loan-To-Value ratio of 90%).

[16]*Discontinuing   Monthly   Mortgage   Insurance   Premium   Payments*,   HUD.gov, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/comp/premiums/prem2001 (last visited Dec. 21, 2015).

[17] *See* HUD's Mission Statement, *available at* http://portal.hud.gov/hudportal/HUD?src=/about/mission (last visited, Dec. 21, 2015).

[18] *See* HUD Mortgagee Letter 2010-04, at 1 (Jan. 22, 2010), http://portal.hud.gov/hudportal/documents/huddoc?id=10-04ml.pdf (last visited Dec. 21, 2015) ("Loss Mitigation is critical to both borrowers and FHA because it works to fulfill the goal of helping borrowers retain homeownership while protecting the FHA Insurance Fund from unnecessary losses.").

[19] *See* 24 C.F.R. § 203.501 (requiring that mortgagees "must consider" actions such as "special forbearance," meaning in cases where the mortgagor does not own other FHA-insured property and the default was caused by circumstances beyond the mortgagor's control, the forbearance agreement will not require increased payments before the original maturity date of the mortgage); HUD Administration of Insured Home Mortgages Handbook 4330.1, ch. 7, §§ 7-3, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=43301c7HSGH.pdf (last visited Dec. 21, 2015) (requiring that servicers "make a concerted effort to help the mortgagor resolve his/her financial problems," specifically addressing that a mortgage servicer should endeavor to be aware of marital difficulties, substance abuse, excessive gambling, loss of income, loss of employment, illness, and other factors, and then refer borrowers to counseling before initiating foreclosure).

[20] HUD Administration of Insured Home Mortgages Handbook 4330.1 app. 18, at 2, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=43301x18HSGH.pdf (last visited Dec. 21, 2015).

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  penalty and withdrawal of HUD's approval of the mortgagee as a program participant, 24 C.F.R. §

2  203.500.   In addition to forbearance,[21] FHA regulations require that mortgagees consider or attempt

3  other forms of relief short of foreclosure, including modifying a loan's terms to make it more

4  affordable.  *Id.* at §§ 203.357, 203.370, 203.608, 203.616.   Moreover, even where foreclosure is

5  inevitable, FHA regulations identify a lengthy and exhaustive process that details the level and form

6  of borrower communications required before foreclosure may begin.[22]   Federal regulators have

7  marshalled many decades of expertise to enact a comprehensive and detailed approach to foreclosure

8  and foreclosure forbearance on FHA-insured mortgages, the goal of which is to expand the housing

9  market for those who otherwise would not be able to purchase a home.

10       By allowing HOAs to foreclose on distressed borrowers, Nevada law conflicts with FHA

11  regulations specifying foreclosure as a "last resort" for this potentially vulnerable category of

12  borrowers.[23]   Nevada itself has recognized that HOA foreclosures interfere with mortgagees' efforts

13  to keep borrowers in their homes and has made some—albeit insufficient—effort to mitigate the

14  controversial rush to foreclose by HOAs and their collection agents.   In 2013, Nevada changed its

15  law to bar HOAs from initiating non-judicial foreclosure proceedings after the mortgagee has

16  recorded a notice of default and before it complies with Nevada's own foreclosure avoidance

17  procedures (which generally require pre-foreclosure mediation).  *See* NRS 116.31162(6)(b).

18       Although this amendment reflects the Nevada Legislature's own recognition of the harm

19  caused by HOA foreclosures, the amendment is not sweeping enough to avoid federal preemption as

20  applied to FHA-insured loans because Nevada law still frustrates federal foreclosure forbearance

21  objectives.   As the Supreme Court has recognized, a "[c]onflict in technique can be fully as

22  disruptive to the system Congress enacted as conflict in overt policy."  *Amalgamated Ass'n of Street,*

23  *Electric Ry., & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 287 (1971).   For example,

24

25  ---
   [21] *See* 24 C.F.R. §§ 203.471, 203.614.

26  [22] *See generally* HUD Administration of Insured Home Mortgages Handbook 4330.1, ch. 7, § 7-7, *available at*
   http://portal.hud.gov/hudportal/documents/huddoc?id=43301c7HSGH.pdf (last visited Dec. 21, 2015).

27  [23]  HUD Administration of Insured Home Mortgages Handbook 4330.1, ch. 9, § 9-3, *available at*
   http://portal.hud.gov/hudportal/documents/huddoc?id=43301c9HSGH.pdf (last visited Dec. 21, 2015) ("Foreclosure

28  should be considered only as a last resort and shall not be initiated until all other relief options have been exhausted.").

under the 2013 amendment, nothing impedes HOAs from pursuing foreclosure and removing the borrower from the home where the mortgagee has not issued a notice of default.  Indeed, if anything, Nevada law directly undermines federal law by encouraging mortgagees to issue a notice of default and initiate foreclosure at the earliest possible time to at least temporarily prevent the HOA from proceeding with its own foreclosure.  In contrast, the FHA Programs direct mortgagees on insured loans to work with the borrower and to evaluate modification and other alternatives ***before*** taking steps toward foreclosure.[24]

The U.S. Supreme Court and other federal courts have found preemption of state law under the Supremacy Clause in much less compelling circumstances than those presented here.  For instance, in *De la Cuesta*, the Supreme Court held that a Federal Home Loan Bank Board regulation permitting—but not requiring—federal savings and loan associations to include "due-on-sale" clauses in their mortgage contracts preempted state law that restricted the use of such clauses.  "By further limiting the availability of an option the Board considers essential to the economic soundness of the thrift industry, the State has created 'an obstacle to the accomplishment and execution of the full purposes and objectives' of the due-on-sale regulation."  458 U.S. at 156 (citations omitted).  Here, HUD explicitly directs mortgage servicers to exercise restraint in proceeding with foreclosures to help keep borrowers in their homes.  *See supra* note 10.  Because the HOA Lien Statute impermissibly restricts the discretion of both the servicer and HUD in addressing borrower default, it is preempted under the Supremacy Clause as applied to FHA-insured mortgages.[25]

Finally, the preemptive effect here is modest.  Nothing about HUD regulations or federal preemption requires HOAs to give up their partial payment priority, NRS 116.3116(2); they simply

---

[24] Decisions HUD has made about how much time and effort banks are required to expend before foreclosing are careful and important ones.  "HUD has very broad discretion in order to achieve national housing objectives," *United States v. Antioch Found.*, 822 F.2d 693, 695 (7th Cir. 1987), including in the context foreclosure avoidance.  As noted, such decisions "involve[ ] a balancing of factors and a consideration of complex financial data."  *Falzarano*, 607 F.2d at 512.

[25] Similarly, in *Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003), a state statute required owners of federally subsidized low-income housing to comply with prepayment requirements and schedules that differed from those imposed under federal law and HUD regulations.  The Court in *Forest Park II* noted it was possible to comply with both laws.  At issue were conflicting notice requirements and "Forest Park could give 365 days-notice to the state and 250 days-notice to HUD."  *Id.*, at 732.  But by requiring more notice under state law, the private entity would be required to wait longer than it otherwise would have before it could prepay its loans.  While the Eighth Circuit recognized that compliance with both statutes was possible, it reasoned that such an argument did "not address the principal problem with these state statutes—they fly in the face of the Constitution's Supremacy Clause."  *Id.*

require that HOAs yield to the FHA-insured mortgagee with respect to the timing of their recovery out of foreclosure proceeds. *See* NRS 116.31162. The HOAs will still receive the fees that are entitled to super-priority status following a sale conducted by the mortgagee. But allowing an HOA to foreclose on an FHA-insured loan plainly frustrates the objectives of HUD regulations in restricting foreclosures on at-risk FHA borrowers where specified foreclosure avoidance measures offer some promise of keeping the borrowers in their homes.

Because the HOA Lien Statute "interferes with the federal purpose or operates to impede or condition the implementation" of the FHA Programs, it is preempted as applied to FHA-insured mortgages, like Bank of America's Deed of Trust is this case. *See Rust*, 597 F.2d at 179. Since RH Kids' quiet-title action is entirely dependent on the validity of the preempted state law, its quiet title and declaratory judgment claims fail.

## V.   CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of Defendants on RH Kids' quiet title and declaratory relief claims, and Bank of America's claims for quiet title and declaratory relief.

DATE: September 22, 2016.

AKERMAN LLP


*/s/ Thera Cooper*
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Defendants, BAC Home Loans Service, LP fka Countrywide Home Loans Service, LP and Carrington Mortgage Services*

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

{39581889;1}

29

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Akerman LLP, and that on the 22nd day of September, 2016, I caused to be served a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**, in the following manner:

(**Electronic Service**)    Pursuant to FRCP 5(b), the above referenced document was electronically filed on the date hereof  with the Clerk of the Court for the United States District Court by using the Court's CM/ECF system and served through the Court's Notice of electronic filing system automatically generated to those parties registered on the Court's Master E-Service List.

Michael N. Beede, Esq.
Cheryl A. Grames, Esq.
Law Office of Mike Beede, PLLC
2300 W. Sahara Avenue, Suite 420
Las Vegas, Nevada 89102
eservice@legallv.com
cheryl@legallv.com
*Attorneys for Plaintiff/Counter Defendant*
*RJRN Holdings, LLC*
*Third-Party Plaintiff/CounterDefendant*
*RH Kids, LLC and Rex Archambault*

*/s/ Carla Llarena*
An employee of AKERMAN LLP

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572