# Exhibit A – Deed of Trust

Assessor's Parcel Number:
161-28-316-025
Return To:
Pulte Mortgage LLC
7475 S. Joliet St.
Englewood, CO 80112
Attn: Sales & Acquisitions

Prepared By:
Pulte Mortgage LLC
7475 South Joliet Street Englewood, Co
80112

~~Recording Requested By:~~
Pulte Mortgage LLC
7475 South Joliet Street
Englewood, Co 80112

‖‖‖ ‖ ‖‖‖ ‖ ‖‖‖‖‖ ‖‖ ‖ ‖‖‖‖‖ ‖ ‖‖‖ ‖ ‖‖‖ ‖‖ ‖‖
**20090106-0000999**

Fee: $27.00      RPTT: $0.00
N/C Fee: $25.00
01/06/2009          08:39:29
T20090002905
Requestor:
  LANDAMERICA PHC
Debbie Conway          MGM
Clark County Recorder     Pgs: 14

_01914037 DMW_ [Space Above This Line For Recording Data]

**State of Nevada**

## DEED OF TRUST

FHA Case No.

332-4658881-703

MIN 100057400003675412
VRU# 1-888-679-6377

THIS DEED OF TRUST ("Security Instrument") is made on December 23, 2008
The Grantor is Rhonda M Davis  An Unmarried Woman

("Borrower"). The trustee is LandAmerica

**MNV12AFORM78-35116**     (Rev. 11/08)
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 1 of 11
Initials: ___

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Pulte Mortgage LLC

, ("Lender")

is organized and existing under the laws of Delaware                                                 ,
and whose address is 7475 South Joliet Street, Englewood, CO 80112

. Borrower owes Lender the principal sum of
One Hundred Fifty-seven Thousand Five Hundred Twenty-eight And 00/100
                                        Dollars (U.S. $157,528.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2039                  . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in Clark                                          County, Nevada:
All that certain real property situated in the County of Clark, State of Nevada, described as follows: PARCEL ONE: Lot Forty-Five (45) of HACIENDA NORTH - PHASE 4 as shown by map thereof on file in Book 125 of Plats, Page 31 in the office of the County Recorder of Clark County, Nevada. PARCEL TWO: An easement for ingress, egress and private utilities as set forth on above shown plat map.

which has the address of 5234 Fire Night Ave                                      [Street]
Las Vegas                                    [City], Nevada 89122          [Zip Code]
("Property Address");

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

---

**MNV12BFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 2 of 11
Initials

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

---

**MNV12CFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 3 of 11
Initials:

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with

**MNV12DFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 4 of 11
Initials:

any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

---

**MNV12EFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 5 of 11
Initials: ___

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

**MNV12FFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 6 of 11
Initials:

to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other

**MNV12GFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 7 of 11
Initials:

flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie**

---

**MNV12HFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 8 of 11
Initials: _____

evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ **currency which does not exceed the amount set by HUD.**

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |

**MNV12IFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 9 of 11
Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____        _____ (Seal)
                                          Rhonda M Davis                -Borrower

_____        _____ (Seal)
                                                                        -Borrower

_____ (Seal)         _____ (Seal)
                         -Borrower                                      -Borrower

_____ (Seal)         _____ (Seal)
                         -Borrower                                      -Borrower

_____ (Seal)         _____ (Seal)
                         -Borrower                                      -Borrower

**MNV12JFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 10 of 11
Initials:

**STATE OF NEVADA**

**COUNTY OF** Clark

This instrument was acknowledged before me on   by
Rhonda M Davis

Mail Tax Statements To:
Rhonda M Davis
5234 Fire Night Ave, Las Vegas, NV  89122

**B. ANDREAS**
Notary Public State of Nevada
No. 04-92290-1
My appt. exp. Aug. 26, 2012

---

**MNV12KFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 11 of 11
Initials:

# PLANNED UNIT DEVELOPMENT RIDER

VRU# 1-888-679-6377
MIN# 100057400003675412

FHA Case No.
332-4658881-703

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23rd day of December, 2008 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to Pulte Mortgage LLC

("Lender") of the same date and covering the Property described in the Security Instrument and located at: 5234 Fire Night Ave, Las Vegas, NV 89122

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

Hacienda Park

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the

---

**610AFORM78-35116** (Rev. 11/08)
FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 1 of 3
Initials:

yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**610BFORM78-35116**
FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 2 of 3
Initials: ____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Rhonda M Davis_____ (Seal)          _____ (Seal)
Rhonda M Davis                   -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

**610CFORM78-35116**
FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 3 of 3
Initials: _____

# Exhibit B –
# Corporate Assignment of Deed of Trust Nevada

Inst #: 201008110002623
Fees: $14.00
N/C Fee: $0.00
08/11/2010 01:58:02 PM
Receipt #: 461300
Requestor:
**CLARK RECORDING SERVICE**
Recorded By: LEX Pgs: 1
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**



RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
AND WHEN RECORDED MAIL DOCUMENT TO:
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

TS No. 10-0093709
**TITLE ORDER#: 4508418**
161-28-316-025

144

## CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/23/2008,
EXECUTED BY: RHONDA M DAVIS AN UNMARRIED WOMAN,TRUSTOR: TO
LANDAMERICA, TRUSTEE AND RECORDED AS INSTRUMENT NO. 0000999 ON 01/06/2009, IN
BOOK 20090106, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF CLARK
COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: August 06, 2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.

State of: ~~Texas~~ )
County of: ~~Tarrant~~ )
)BY: _____
**Khadija Gulley** , Assistant Secretary

On AUG 0 9 2010 before me _____ Elsie E. Kroussakis _____, personally appeared **Khadija Gulley**
. **Asst. Sec**, know to me (or proved to me on the oath of _____ or through
_____ ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

**ELSIE E KROUSSAKIS**
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-14-11

# Exhibit C –

*RJRN Holdings, LLC v. Rhonda Davis,* Affidavit in Support of Motion for Summary Judgment

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RJRN HOLDINGS, LLC, | |
|              Plaintiff, | |
| vs. | |
| RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive, | Case No.:     2:15-CV-1257-JCM-NJK |
|              Defendants. | **AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| RH KIDS, LLC, | |
|              Third-Party Plaintiff, | |
| vs. | |
| RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive, | |
|              Third-Party Defendants. | |
| BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, | |
|              Counterclaimant, | |
| vs. | |
| RH KIDS, LLC, a limited liability company of unknown origin; RJRN HOLDINGS, LLC, a Nevada limited liability company; REX ARCHAMBAULT, an individual, | |
|              Counter-Defendants. | |

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1.      My name is Tiffany Barnfield. I am over 18 years of age, of sound mind, and capable of making this Affidavit. The facts stated in this Affidavit are based on a review of the loan file in this matter and my personal knowledge based thereon and are true and correct.

2.      I am employed as an AVP, Senior Operations Manager for Bank of America, N.A. (**Bank of America**). I am authorized to submit this affidavit on behalf of Bank of America.

3.      As a result of my employment and my investigation into the matters contained in this affidavit, I have personal knowledge of the facts set forth herein, and am competent to testify as to such facts. Through my employment as an AVP, Senior Operations Manager at Bank of America, I am familiar with Bank of America's records and how those records are created and maintained. Those records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge, and (b) kept in the course of Bank of America's regularly conducted business activities. It is the regular practice of Bank of America to make such records.

4.      I have personally reviewed the records in connection with the subject loan.

5.      Rhonda Davis's (**Borrower**) deed of trust was originated on or about December 23, 2008. *See* **Exhibit A**, Deed of Trust. The Deed of Trust was recorded on January 6, 2009. *Id.*

6.      The FHA Case Number on the first page of the Deed of Trust shows the Borrower's loan is insured by the Federal Housing Administration (**FHA**).[1] *Id.* The Deed of Trust also indicates that mortgage insurance premiums must be paid to the Department of Housing and Urban Development (**HUD**) and indicates how those payments will be applied in the Deed of Trust's Application of Payments section. *Id.*

7.      The Deed of Trust was assigned to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP (**BAC**), and the assignment was recorded on August 11, 2010. *See* **Exhibit B**, Corporation Assignment of Deed of Trust. Bank of America is the successor by merger to BAC.

---

[1] Borrower's loan number has been redacted to protect the Borrower's privacy.

**AKERMAN LLP**
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

8.      Bank of America makes mortgage insurance payments to FHA.  These payments are reflected in the attached payment history.[2]  *See* **Exhibit C**, Payment History.

9.      Exhibit C is true and correct copy of information in Bank of America's business records.  Based on my experience and job duties, I am familiar with the manner in which and procedure governing how such information is retained and how a report like Exhibit C is created, maintained, and utilized in Bank of America's regular course of business.  It is the regular practice of Bank of America to maintain such information.  The information included in this report was kept by Bank of America in its ordinary course of business and was entered into Bank of America's records at or near the time of the mortgage insurance payments.

FURTHER AFFIANT SAYETH NOT.

[The Remainder of this Page Intentionally Left Blank]

---

[2] The Borrower's other payments have been redacted to protect the Borrower's privacy.

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   Bank of America, N.A, as successor by July 1, 2011
    de jure merger with BAC Home Loans Servicing,
2   L.P., fka Countrywide Home Loans Servicing, LP

3   
    Tiffany Barnfield
4   AVP, Senior Operations Manager
5   September 20, 2016

6

7   STATE of TEXAS
    COUNTY of DALLAS
8

9

10  SUBSCRIBED and SWORN to before me on this 20th day of September, 2016, by Tiffany
    Barnfield, X known to me (□ or satisfactorily proven to me through production of -------- as
11  identification) to be the person who appeared before me.

12

13          PATRICE D. JACKSON          Patrice D. Jackson
                Notary Public
14           STATE OF TEXAS             Notary Public State of Texas
           My Comm. Exp. 04-17-19       Commission No. 13019545-7
15                                      Commission Expires04/17/2019

16

17

18

19

20

21

22

23

24

25

26

27

28

# AFFIDAVIT EXHIBIT A

Assessor's Parcel Number:
161-28-316-025
Return To:
Pulte Mortgage LLC
7475 S. Joliet St.
Englewood, CO 80112
Attn: Sales & Acquisitions

Prepared By:
Pulte Mortgage LLC
7475 South Joliet Street Englewood, Co
80112

Recording Requested By:
Pulte Mortgage LLC
7475 South Joliet Street
Englewood, Co 80112

```
||||| | ||| ||| ||||| || || ||||| || ||| || || ||| ||
20090106-0000999
Fee: $27.00      RPTT: $0.00
N/C Fee: $25.00
01/06/2009        08:39:29
T20090002905
Requestor:
  LANDAMERICA PHC
Debbie Conway          MGM
Clark County Recorder      Pgs: 14
```

*01914037 DMW*—[Space Above This Line For Recording Data]—

**State of Nevada**

## DEED OF TRUST

| FHA Case No. |
|---|
| 332-4658881-703 |

MIN 100057400003675412
VRU# 1-888-679-6377

THIS DEED OF TRUST ("Security Instrument") is made on December 23, 2008
The Grantor is Rhonda M Davis  An Unmarried Woman

("Borrower"). The trustee is LandAmerica

---

**MNV12AFORM 78-35116**      (Rev. 11/08)
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 1 of 11
Initials: ___

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Pulte Mortgage LLC

, ("Lender")

is organized and existing under the laws of Delaware                           ,
and whose address is 7475 South Joliet Street, Englewood, CO 80112
                                        . Borrower owes Lender the principal sum of
One Hundred Fifty-seven Thousand Five Hundred Twenty-eight And 00/100
                                        Dollars (U.S. $157,528.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on January 1, 2039             . This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and
conveys to the Trustee, in trust, with power of sale, the following described property located in
Clark                                  County, Nevada:
All that certain real property situated in the County of Clark, State of
Nevada, described as follows: PARCEL ONE: Lot Forty-Five (45) of HACIENDA
NORTH - PHASE 4 as shown by map thereof on file in Book 125 of Plats,
Page 31 in the office of the County Recorder of Clark County, Nevada.
PARCEL TWO: An easement for ingress, egress and private utilities as set
forth on above shown plat map.

which has the address of 5234 Fire Night Ave                          [Street]
Las Vegas                               [City], Nevada 89122       [Zip Code]
("Property Address");
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and
additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title
to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or
custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise
any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and
to take any action required of Lender including, but not limited to, releasing or canceling this Security
Instrument.

---

**MNV12BFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 2 of 11
Initials: AM

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**MNV12CFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 3 of 11
Initials: ___

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with

**MNV12DFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 4 of 11
Initials:

any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

---

**MNV12EFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 5 of 11
Initials:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

---

**MNV12FFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 6 of 11
Initials:

to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other

---

**MNV12GFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 7 of 11
Initials: _____

flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie**

---

**MNV12HFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 8 of 11
Initials:

evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and  appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Assumption Fee.** If there is an assumption  of  this  loan,  Lender  may  charge  an assumption  fee of   U.S. $ **currency which does not exceed the amount set by HUD.**

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants  of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider                 ☐ Growing Equity Rider         ☐ Other [specify]
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider

**MNV12IFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 9 of 11
Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____         _____ (Seal)
                                         Rhonda M Davis              -Borrower


_____         _____ (Seal)
                                                                     -Borrower


_____ (Seal)         _____ (Seal)
                    -Borrower                                        -Borrower


_____ (Seal)         _____ (Seal)
                    -Borrower                                        -Borrower


_____ (Seal)         _____ (Seal)
                    -Borrower                                        -Borrower


**MNV12JFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 10 of 11
Initials:

**STATE OF NEVADA**

**COUNTY OF** Clark

This instrument was acknowledged before me on December 30, 2008    by
Rhonda M Davis



Mail Tax Statements To:
Rhonda M Davis
5234 Fire Night Ave, Las Vegas, NV  89122

> B. ANDREAS
> Notary Public State of Nevada
> No. 04-92290-1
> My appt. exp. Aug. 26, 2012

---

**MNV12KFORM78-35116**
FHA Deed of Trust with MERS-NV
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 2/98
VMP4N(NV) (0809)
Page 11 of 11
Initials:

# PLANNED UNIT DEVELOPMENT RIDER

VRU# 1-888-679-6377
MIN# 100057400003675412

| FHA Case No. |
|---|
| 332-4658881-703 |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23rd      day of December, 2008       , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to Pulte Mortgage LLC

("Lender") of the same date and covering the Property described in the Security Instrument and located at: 5234 Fire Night Ave, Las Vegas, NV  89122

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

Hacienda Park

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    A.    So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the

---

**610AFORM78-35116**    **(Rev. 11/08)**
FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 1 of 3
Initials: ___

yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**610BFORM78-35116**
FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 2 of 3
Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Rhonda M Davis_ _____ (Seal)
Rhonda M Davis                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

610CFORM78-35116
FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 3 of 3
Initials: _____

# AFFIDAVIT EXHIBIT B

Inst #: 201008110002623



Fees: $14.00
N/C Fee: $0.00
08/11/2010 01:58:02 PM
Receipt #: 461300
Requestor:
**CLARK RECORDING SERVICE**
Recorded By: LEX   Pgs: 1
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
AND WHEN RECORDED MAIL DOCUMENT TO:
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065

TS No. 10-0093709
**TITLE ORDER#:  4508418**
161-28-316-025

144

## CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/23/2008,
EXECUTED BY:  RHONDA M DAVIS AN UNMARRIED WOMAN,TRUSTOR: TO
LANDAMERICA, TRUSTEE AND RECORDED AS INSTRUMENT NO. 0000999 ON 01/06/2009, IN
BOOK 20090106, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF CLARK
COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:  August 06, 2010                    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                           INC.

State of:        Texas           )
County  of:      Tarrant         )
                                 )BY: _____
                                 **Khadija Gulley**        , Assistant Secretary

On AUG 0 9 2010 before me _____ **Elsie E. Kroussakis** _____, personally appeared **Khadija Gulley**
. **Asst. Sec.**, know to me (or proved to me on the oath of _____ or through
_____) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

**ELSIE E KROUSSAKIS**
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-14-11

# AFFIDAVIT EXHIBIT C



Page 4

| Loan Number: | ■■0260 |
| Statement Period: | 01/1986 - 06/2016 |
| Date Prepared: | 06/17/2016 |

Property Address:
5234 FIRE NIGHT AVE
LAS VEGAS, NV 89122

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | **157,205.99** | | **.00** | | | | **.00** |
| 03/05/2009 | FHA MIP PMT | -64.38 | 03/2009 | .00<br>**157,205.99** | .00 | -64.38<br>**379.14** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 04/06/2009 | FHA MIP PMT | -64.46 | 03/2009 | .00<br>**157,205.99** | .00 | -64.46<br>**314.76** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 05/06/2009 | FHA MIP PMT | -64.38 | 04/2009 | .00<br>**157,043.80** | .00 | -64.38<br>**504.33** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 06/04/2009 | FHA MIP PMT | -64.38 | 05/2009 | .00<br>**156,880.82** | .00 | -64.38<br>**693.90** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 07/06/2009 | FHA MIP PMT | -64.38 | 06/2009 | .00<br>**156,717.04** | .00 | -64.38<br>**883.47** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 08/06/2009 | FHA MIP PMT | -64.38 | 07/2009 | .00<br>**156,552.46** | .00 | -64.38<br>**1,073.04** | .00 | .00 | .00<br>**.00** | .00<br>**593.00** |





| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/04/2009 | FHA MIP PMT | -64.38 | 08/2009 | .00 | .00 | -64.38 | .00 | .00 | .00 | .00 |
| | | | | **156,386.86** | | **891.27** | | | **.00** | **593.00** |
| 10/06/2009 | FHA MIP PMT | -64.38 | 09/2009 | .00 | .00 | -64.38 | .00 | .00 | .00 | .00 |
| | | | | **156,220.45** | | **709.50** | | | **.00** | **593.00** |



Bank of America—WestRL   6/17/2016   2:28:23 PM   PAGE   5/013   888-294-5658

Page 6

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/05/2009 | FHA MIP PMT | -64.38 | 10/2009 | .00 **156,053.23** | .00 | -64.38 **899.07** | .00 | .00 | .00 **.00** | .00 **593.00** |
| 12/04/2009 | FHA MIP PMT | -64.38 | 11/2009 | .00 **155,885.19** | .00 | -64.38 **1,088.64** | .00 | .00 | .00 **.00** | .00 **600.72** |
| 01/07/2010 | FHA MIP PMT | -64.38 | 12/2009 | .00 **155,716.54** | .00 | -64.38 **308.24** | .00 | .00 | .00 **.00** | .00 **600.72** |

BANA 173





Bank of America—WestRL 6/17/2016 2:28:23 PM PAGE 6/013 888-294-5658

Page 7

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| ▮▮▮▮▮ | ▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮▮▮ | ▮▮ | ▮▮ | ▮▮ | ▮▮ |
| 02/04/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / 514.10 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| ▮▮▮▮▮ | | | | | | | | | | |
| 03/04/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / 79.00 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| 04/06/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / 15.26 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| 05/06/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -48.48 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| 06/04/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -112.22 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| 07/07/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -175.96 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| 08/05/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -239.70 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| ▮▮▮▮▮ | | | | | | | | | | |
| 09/07/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -729.39 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| ▮▮▮▮▮ | | | | | | | | | | |
| 10/06/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -1,095.10 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| 11/04/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -1,158.84 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| ▮▮▮▮▮ | | | | | | | | | | |
| 12/06/2010 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -1,713.99 | .00 | .00 | .00 / .00 | .00 / 600.72 |
| ▮▮▮▮▮ | | | | | | | | | | |
| 01/06/2011 | FHA MIP PMT | -63.74 | 01/2010 | .00 / 155,547.06 | .00 | -63.74 / -2,079.70 | .00 | .00 | .00 / .00 | .00 / 600.72 |

BANA 174



**Bank of America**
**Home Loans**

Bank of America-WestRL  6/17/2016  2:28:23 PM  PAGE  7/013  888-294-5658

Page 8

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/04/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -2,142.74 | .00 | .00 | .00 .00 | .00 600.72 |
| ██████████████████████████████████████████████████████████████████████ | | | | | | | | | | .00 ...2 |
| 03/04/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -2,507.75 | .00 | .00 | .00 .00 | .00 600.72 |
| 04/06/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -2,570.79 | .00 | .00 | .00 .00 | .00 600.72 |
| 05/05/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -2,633.83 | .00 | .00 | .00 .00 | .00 600.72 |
| 06/06/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -2,696.87 | .00 | .00 | .00 .00 | .00 600.72 |
| 07/07/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -2,759.91 | .00 | .00 | .00 .00 | .00 600.72 |
| ██████████████████████████████████████████████████████████████████████ | | | | | | | | | | |
| 08/04/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -3,289.11 | .00 | .00 | .00 .00 | .00 600.72 |
| 09/07/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -3,352.15 | .00 | .00 | .00 .00 | .00 600.72 |
| ██████████████████████████████████████████████████████████████████████ | | | | | | | | | | |
| 10/06/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -3,035.47 | .00 | .00 | .00 .00 | .00 .00 |
| 11/04/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -3,098.51 | .00 | .00 | .00 .00 | .00 .00 |
| 12/06/2011 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -3,161.55 | .00 | .00 | .00 .00 | .00 .00 |
| ██████████████████████████████████████████████████████████████████████ | | | | | | | | | | |
| 01/06/2012 | FHA MIP PMT | -63.04 | 01/2010 | .00 155,547.06 | .00 | -63.04 -3,445.59 | .00 | .00 | .00 .00 | .00 .00 |
| 02/06/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00 155,547.06 | .00 | -62.29 -3,507.88 | .00 | .00 | .00 .00 | .00 .00 |

**BANA 175**



| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-3,791.17 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/05/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-5,036.46 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/04/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-5,098.75 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/06/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-5,161.04 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/06/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-6,080.13 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/07/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-6,542.11 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/07/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-6,604.40 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/04/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-6,821.36 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/06/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-6,883.65 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/06/2012 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-7,100.61 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/07/2013 | FHA MIP PMT | -62.29 | 01/2010 | .00<br>155,547.06 | .00 | -62.29<br>-7,162.90 | .00 | .00 | .00<br>.00 | .00<br>.00 |

BANA 176

Bank of America-WestRL 6/17/2016 2:28:23 PM PAGE 8/013 888-294-5658



**Bank of America**
**Home Loans**

Page 10

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/06/2013 | FHA MIP PMT | -61.49 | 01/2010 | .00 **155,547.06** | .00 | -61.49 **-7,224.39** | .00 | .00 | .00 **.00** | .00 **.00** |
| 03/06/2013 | FHA MIP PMT | -61.49 | 01/2010 | .00 **155,547.06** | .00 | -61.49 **-7,440.55** | .00 | .00 | .00 **-144.15** | .00 **.00** |
| 04/04/2013 | FHA MIP PMT | -184.47 | 01/2010 | .00 **155,547.06** | .00 | -184.47 **-7,625.02** | .00 | .00 | .00 **-144.15** | .00 **.00** |

**Fee Transaction Activity (01/1986 - 06/2016)**

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|

**BANA 177**



**Bank of America**
Home Loans

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|



BANA 178



| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|



BANA 179

BankofAmerica-WestRL  6/17/2016 2:28:23 PM  PAGE  11/013  888-294-5658



BankofAmerica-WestRL  6/17/2016  2:28:23 PM  PAGE  12/013  888-294-5658

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|



Page 14

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|



BankofAmerica-WestRL 6/17/2016 2:28:23 PM PAGE 13/013 888-294-5658

# Exhibit D –
## Notice of Delinquent Assessment Lien

Inst #: 201104120001764
Fees: $15.00
N/C Fee: $0.00
04/12/2011 10:11:48 AM
Receipt #: 737394
Requestor:
CAMCO
Recorded By: OSA   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Return to:
Attn: Kelly Mitchell
Absolute Collection Services, LLC
PO Box 12117
Las Vegas, NV 89112
(702) 531-3394 phone
www.absolute-collection.com

APN # 161-28-316-025

## Notice of Delinquent Assessment Lien

**This NOTICE OF DELINQUENT ASSESSMENT** is being given
pursuant to N.R.S. 117.70 et seq. or N.R.S. 116.3115 et. Seq. and
N.R.S. 116.3116 through 116.31168 et. Seq. and the provisions of
the Declaration of Covenants, Conditions and Restrictions (CC&Rs)
of the Homeowners Association as follows:

Association Claimant: HACIENDA NORTH HOA Declarations of
CC&Rs 5/26/06 Instrument No: 0002468, Book No.: 20060526,
Page No:__ County of CLARK, and any and all amendments or
annexations of record thereto.

The description of the common interest development unit against
which this notice is being recorded is as follows: Legal Unit No.:
5234 Fire Night Ave., Hacienda North Phase 4 Plat Book 125 Page
31 Lot 45

The reputed owner is: RHONDA DAVIS

Common address: 5234 Fire Night Ave., Las Vegas NV 89122

Owner's mailing address: Same

### DELINQUENCY #A2368

| | |
|---|---|
| Total Amount due as of 4/11/11 | $1,074.00 |

Additional monies shall accrue under this claim at the rate of the claimant's periodic assessments, plus permissible late charges, costs of collection and interest and other charges, if any, that shall accrue subsequent to the date of this notice.

The acting agency for enforcement on this lien is:

ABSOLUTE COLLECTION SERVICES, LLC
PO BOX 12117
LAS VEGAS NV 89112
(702) 531-3394
www.absolute-collection.com
customerservice@absolute-collection.com

DATED:     4/11/11

RICHARD KAYE, Trustee Sales Officer

STATE OF NEVADA
COUNTY OF CLARK

On April 11, 2011 before me, the undersigned, a Notary Public in and for said county, personally appeared, RICHARD KAYE personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within Instrument and acknowledged to me that he/she executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

KELLY MITCHELL, Notary Public

KELLY MITCHELL
Notary Public, State of Nevada
Appointment No. 08-7504-1
My Appt. Expires July 10, 2012

# Exhibit E –
## Notice of Default and Election to Sell Under Homeowners Association Lien

Inst #: 201107180000857

Fees: $16.00
N/C Fee: $0.00
07/18/2011 10:15:29 AM
Receipt #: 847085
Requestor:
CAMCO
Recorded By: RNS   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

Return to:
Attn:  Kelly Mitchell
Absolute Collections Services, LLC
PO Box 12117
Las Vegas, NV  89112
(702) 531-3394

APN # 161-28-316-025
TS NO: A2368
Title Order No:

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN

**WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account.  No sale date may be set until ninety (90) days from the date this notice of default may be recorded or mailed.  The amount is **$2,009.41** as of **July 15, 2011** and will increase until your account becomes current.  Upon your written request, **Hacienda North HOA** will give you a written itemization of the entire amount you must pay.  You and the Association may mutually agree in writing prior to the time the notice of sale is posted to, amount other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).  Following the expiration of the time period previously referred to, unless a separate written agreement between you and the Association permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by the Association.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, contact the following trustee who has been authorized by the Association to enforce its lien by sale: Absolute Collection Services, LLC, PO Box 12117, Las Vegas, NV 89112, 702-531-3394.

THIS NOTICE is given pursuant to NRS 117.070 et. Seq. or NRS 116.3115 et. Seq. and NRS 116.3116 through 116.31168 et. Seq., and pursuant to that certain Notice of Delinquent Assessment Lien, recorded on **4/12/11** Document no. **0001764** book **20110412** of Official Records in the office of the Recorder of Clark County, State of Nevada.

### Owner: **Rhonda Davis**
Property Address: **5234 Fire Night Ave., Las Vegas NV 89122**

Legal Description-shown on the Subdivision map recorded in Book No. **125** Page(s) **31, Lot 45,** Inclusive, of Maps of the County of Clark, State of Nevada.

If you have any questions, you should contact a lawyer. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Absolute Collection Services, LLC, is the duly appointed Trustee/Agent authorized by the Association, pursuant to the terms contained **5/26/06** as document number **0002468-20060526** of Official Records in the Office of the Recorder of Clark County, Nevada, and any and all amendments or annexations of record thereto, describing the land therein. That the beneficial Interest under said Notice of Delinquent Assessment is presently held by the Association. That a breach of, and default in, the obligation for which said Covenants, Conditions and Restrictions as security has occurred in that the payment(s) have not been made of:

Periodic assessments, less credits and offsets, plus any late charges, interest, fees, charges, collection costs, trustee's fees, and attorney fees, if any.

That by reason thereof, the present Association under such Covenants, Conditions and Restrictions, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Covenants, Conditions and Restrictions and

all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the herein described property, liened by said Association, to be sold to satisfy the obligations secured thereby.

PLEASE NOTE THAT WE ARE A DEBT COLLECTOR.

Date:  July 15, 2011

Absolute Collection Services, LLC as Trustee

Richard Kaye, Trustee Sale Officer

STATE OF NEVADA
COUNTY OF CLARK

On July 15, 2011 before me, the undersigned, a Notary Public in and for said county, personally appeared, Richard Kaye personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within Instrument and acknowledged to me that he/she executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

Kelly Mitchell, Notary Public



**KELLY MITCHELL**
Notary Public, State of Nevada
Appointment No. 08-7504-1
My Appt. Expires July 10, 2012

# Exhibit F – Letter from Miles, Bauer, Bergstrom & Winters, LLC to Absolute Collections Services, LLC

**DOUGLAS E. MILES**
Also Admitted in California &
Illinois
**JEREMY T. BERGSTROM**
Also Admitted in Arizona
**GINA M. CORENA**
**ROCK K. JUNG**
**KRISTA J. NIELSON**
**JORY C. GARABEDIAN**
**THOMAS M. MORLAN**
Admitted in California
**STEVEN E. STERN**
Admitted in Arizona & Illinois
**ANDREW H. PASTWICK**
Also Admitted in Arizona &
California



MILES, BAUER, BERGSTROM & WINTERS, LLP
ATTORNEYS AT LAW   SINCE 1985

2200 Paseo Verde Pkwy., Suite 250
Henderson, NV 89052
Phone: (702) 369-5960
Fax: (702) 369-4955

**CALIFORNIA OFFICE**
1231 E. Dyer Road, Suite 100
Santa Ana, CA 92705
Phone: (714) 481-9100
Fax: (714) 481-9141

**RICHARD J. BAUER, JR.**
**FRED TIMOTHY**
**WINTERS**
**KEENAN E.**
**McCLENAHAN**
**MARK T. DOMEYER**
Also Admitted in the
District of
Columbia & Virginia
**TAMI S. CROSBY**
**L. BRYANT JAQUEZ**
**WAYNE A. RASH**
**VY T. PHAM**
**HADI R. SEYED-ALI**
**BRIAN H. TRAN**
**ANNA A. GHAJAR**
**CORI B. JONES**
**CATHERINE K. MASON**
**CHRISTINE A. CHUNG**
**HANH T. NGUYEN**
**S. SHELLY RAISZADEH**
**SHANNON C. WILLIAMS**
**ABTIN SHAKOURI**
**LAWRENCE R. BOIVIN**

January 30, 2012

Hacienda North HOA                                                          *SENT VIA FIRST CLASS MAIL*
Absolute Collections Services, LLC
PO Box 12117
Las Vegas, NV 89112

Re:    *Property Address: 5234 Fire Night Avenue, Las Vegas, NV 89122*
       *MBBW File No.* REDACTED

Dear Sirs:

This letter is in response to your Notice of Sale with regard to the HOA assessments purportedly owed on the above described real property. This firm represents the interests of MERS as nominee for Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP (hereinafter "BANA") with regard to these issues. BANA is the beneficiary/servicer of the first deed of trust loan secured by the property.

As you know, NRS 116.3116 governs liens against units for assessments. Pursuant to NRS 116.3116:

The association has a lien on a unit for:

...

*any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 are enforceable as assessments under this section*

While the HOA may claim a lien under NRS 116.3102 Subsection (1), Paragraphs (j) through (n) of this Statute clearly provide that such a lien is JUNIOR to first deeds of trust to the extent the lien is for fees and charges imposed for collection and/or attorney fees, collection costs, late fees, service charges and interest. See Subsection 2(b) of NRS 116.3116, which states in pertinent part:

2. A lien under this section is prior to all other liens and encumbrances on a unit except:

*5234 Fire Night Avenue, Las Vegas, NV 89122*                                    *Page two of two*

(b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent…

**The lien is also prior to all security interests described in paragraph (b) <u>to the extent of the assessments for common expenses…which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien</u>.**

Subsection 2b of NRS 116.3116 clearly provides that an HOA lien "is prior to all other liens and encumbrances on a unit except: a first security interest on the unit…" But such a lien is prior to a first security interest to the extent of the assessments for common expenses which would have become due during the 9 months before institution of an action to enforce the lien.

Based on Section 2(b), a portion of your HOA lien is arguably senior to BANA's first deed of trust, specifically the nine months of assessments for common expenses incurred before the date of your notice of delinquent assessment. For purposes of calculating the nine-month period, the trigger date is the date the HOA sought to enforce its lien. It is unclear, based upon the information known to date, what amount the nine months' of common assessments pre-dating the NOD actually are. That amount, whatever it is, is the amount BANA should be required to rightfully pay to fully discharge its obligations to the HOA per NRS 116.3102 and my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA.

Please let me know the status of the Foreclosure sale that is scheduled for February 14, 2012. My client does not want these issues to become further exacerbated by a wrongful HOA sale and it is my client's goal and intent to have these issues resolved as soon as possible. Please refrain from taking further action to enforce this HOA lien until my client and the HOA have had an opportunity to speak to attempt to fully resolve all issues.

Thank you for your time and assistance with this matter. I may be reached by phone directly at (702) 942-0412. Please fax the breakdown of the HOA arrears to my attention at (702) 942-0411. I will be in touch as soon as I've reviewed the same with BANA.

Sincerely,

*MILES, BAUER, BERGSTROM & WINTERS, LLP*

Rock K. Jung, Esq.

## CERTIFICATE OF CUSTODIAN OF RECORDS

STATE OF NEVADA       )

                 ) ss.

COUNTY OF Clark       )

Case No.: 2:15-cv-1257

NOW COMES Kelly Mitchell, who after first being duly sworn deposes and says:

1.  That the deponent is the Collection Manager of Absolute Collection Services, LLC and in her capacity as Collection Manager is a custodian of the records of Absolute Collection Services, LLC.

2.  That Absolute Collection Services, LLC is licensed to do business as a Collection Company in the State of Nevada.

3.  That on the 15th day of the month of July of the year 2016, the deponent was served with a subpoena in connection with the above-entitled cause, calling for the production of records pertaining to 5234 Fire Night Avenue, Las Vegas, NV 89122.

4.  That the deponent has examined the original of those records and has made or caused to be made a true and exact copy of them and that the reproduction of them attached hereto is true and complete.

5.  That the original of those records was made at or near the time of the act, event, condition, opinion or diagnosis recited therein by or from information transmitted by a person with knowledge, in the course of a regularly conducted activity of the deponent or Absolute Collection Services, LLC.

Executed on: _____8|16|16_____
             *(Date)*

_____
*(Signature of Custodian of Records)*

**SUBSCRIBED AND SWORN** to before me this

_15_ day of _August_, 20_16_.

_____

**NOTARY PUBLIC** in and for the
County of __Clark__, State of __Nevada__.

```
RICHARD KAYE
Notary Public, State of Nevada
Appointment No. 15-1318-1
My Appt. Expires March 20, 2019
```

# Exhibit G –

## Letter from Absolute Collections Services, LLC to Miles, Bauer, Bergstrom & Winters, LLC



# Absolute Collection Services, LLC

| | |
|---|---|
| *Mailing address:* | *Phone* 702.531.3394 |
| *6440 Sky Pointe Drive Ste. 140-154* | *Fax* 702.531.3396 |
| *Las Vegas, NV 89131* | *www.absolute-collection.com* |

## CORRESPONDENCE RECEIPT

February 17, 2012

Rock Jung
Miles, Bauer, Bergstrom & Winters LLP
2200 Paseo Verde Pkwy, Ste 250
Henderson NV 89052
**VIA FAX 702-369-4955**

RE:   Hacienda North HOA: 5234 Fire Night Ave..; MBBW File No. [REDACTED] ; Our File: 

Dear Mr. Jung:

I am in receipt of your most recent correspondence regarding a Statement of Account for the above-mentioned property.  Please note that in conversations past, you had stated your clients position of paying for 9 months of assessments and no late fees, collection costs, etc., all occurring ***before*** foreclosure by your client.

I am making you aware that it is our view that without the action of foreclosure, a 9 month Statement of Account is not valid.  At this time, I respectfully request that you submit the Trustees Deed Upon Sale showing your client's possession of the property and the date that it occurred.  At that time, we will provide a 9 month super priority lien Statement of Account.

As discussed, any Statement of Account from us will show the entire amount owed.  We intend to proceed on the above-mentioned account up to and including foreclosure.  All such notifications have been and will be sent to all interested parties.  We recognize your client's position as the first mortgage company as the senior lien holder.  Should you provide us with a recorded Notice of Default or Notice of Sale, we will hold our action so your client may proceed.

Per our previous conversation, a Statement of Account costs $50 and is not good for a sale/transfer of the property.  If, after reviewing the information above, you would still like a Statement of Account, please email me at customerservice@absolute-collection.com or fax the above number.  If you would like an actual payoff demand that is good for the sale/transfer of a property, please visit our website at www.absolute-collection.com and go to Order Documents.  The upfront fee for the demand is $150 and we take all major credit cards or you may send the funds to the above address and provide an email/fax so we may get the demand to you.

If you have further questions, please feel free to contact us.

Sincerely,

Kelly Mitchell, Collection Manager
Absolute Collection Services, LLC

**PLEASE NOTE WE ARE A DEBT COLLECTOR**

## CERTIFICATE OF CUSTODIAN OF RECORDS

STATE OF NEVADA )
                             ) ss.
COUNTY OF Clark )

Case No.: 2:15-cv-1257

NOW COMES Kelly Mitchell, who after first being duly sworn deposes and says:

1.      That the deponent is the Collection Manager of Absolute Collection Services, LLC and in her capacity as Collection Manager is a custodian of the records of Absolute Collection Services, LLC.

2.      That Absolute Collection Services, LLC is licensed to do business as a Collection Company in the State of Nevada.

3.      That on the 15th day of the month of July of the year 2016, the deponent was served with a subpoena in connection with the above-entitled cause, calling for the production of records pertaining to 5234 Fire Night Avenue, Las Vegas, NV 89122.

4.      That the deponent has examined the original of those records and has made or caused to be made a true and exact copy of them and that the reproduction of them attached hereto is true and complete.

5.      That the original of those records was made at or near the time of the act, event, condition, opinion or diagnosis recited therein by or from information transmitted by a person with knowledge, in the course of a regularly conducted activity of the deponent or Absolute Collection Services, LLC.

Executed on: _8|16|16_
             (Date)

_Kelly Mitchell_
(Signature of Custodian of Records)

**SUBSCRIBED AND SWORN** to before me this
_15_ day of _August_, 20_16_.

**NOTARY PUBLIC** in and for the
County of _Clark_, State of _Nevada_.

RICHARD KAYE
Notary Public, State of Nevada
Appointment No. 15-1318-1
My Appt. Expires March 20, 2019

# Exhibit H –
## Notice of Trustee's Sale

Inst #: 201111100002405
Fees: $18.00
N/C Fee: $0.00
11/10/2011 01:51:54 PM
Receipt #: 974678
Requestor:
CAMCO
Recorded By: MSH   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Return to:
Attn: Kelly Mitchell
Absolute Collections Services, LLC
PO Box 12117
Las Vegas, NV 89112
(702) 531-3394

APN # 161-28-316-025
TS NO: A2368
Title Order No: 11980014
HOA: Hacienda North HOA

## NOTICE OF TRUSTEE'S SALE

**WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS
YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE
SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE
AMOUNT IS IN DISPUTE.  YOU MUST ACT BEFORE THE SALE
DATE.  IF YOU HAVE ANY QUESTIONS, PLEASE CALL ABSOLUTE
COLLECTION SERVICES, LLC AT 702-531-3394.  IF YOU NEED
ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF
THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION AT
877-829-9907 OR 702-486-4480 IMMEDIATELY.**

You are in default under a Notice of Delinquent Assessment LIEN, dated APRIL 12,
2011.  Unless you take action to protect your property, it may be sold at public sale.
If you need an explanation of the nature of the proceedings against you, you should
contact a lawyer.

NOTICE IS HEREBY GIVEN THAT:  On JANUARY 17, 2012 at 4:00 PM, at the front
entrance to Absolute Collection Services, LLC, 1820 E Sahara Ave #111, Las Vegas
NV 89104, under the power of sale pursuant to the terms of those certain covenants
conditions and restrictions recorded on 5/26/06 as instrument number 0002468 Book
20060526 of official records of Clark County, as the duly appointed agent and
pursuant to Notice of Delinquent Assessment LIEN, recorded on 4/12/11 as
Document No. 0001764 in Book 20110412 of Official Records in the Office of the
Recorder of Clark County, Nevada, **WILL SALE AT PUBLIC AUCTION TO THE
HIGHEST BIDDER FOR CASH**, (payable at time of sale in lawful money of the
United States) all right, title and interest in the following commonly known property
as:

Address:  5234 FIRE NIGHT AVE
City, State, Zip: LAS VEGAS NV 89122

The owner(s) of said property as of the date of the recording of said lien is purported to be:

RHONDA DAVIS

The undersigned agent disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum due under said Notice of Delinquent Assessment Lien, with interest thereon, as provided in said notice, advances, if any, estimated fees, charges, and expenses of the Trustee, to-wit:

$3,530.72 Estimated Accrued interest and additional advances, if any, will increase this figure prior to sale.

The Notice of Default and Election to Sell the described property was recorded on JULY 18, 2011 as instrument 0000857 Book 20110718 in the official records of Clark County.

PLEASE NOTE THAT WE ARE A DEBT COLLECTOR

Absolute Collection Service, LLC
1820 E Sahara Ave #111
Las Vegas NV 89104
702-531-3394

Date: 11/10/11

Richard Kaye, Trustee's Sale Officer

STATE OF NEVADA
COUNTY OF CLARK

On 11/10/11 before me, the undersigned, a Notary Public in and for said county, personally appeared, Richard Kaye personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within Instrument and acknowledged to me that he/she executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

Kelly Mitchell, Notary Public

KELLY MITCHELL
Notary Public, State of Nevada
Appointment No. 08-7504-1
My Appt. Expires July 10, 2012

# Exhibit I –
## Trustee's Deed Upon Sale

Fees: $19.00 N/C Fee: $25.00
RPTT: $25.50 Ex: #
04/18/2012 12:17:20 PM
Receipt #: 1134574
Requestor:
CAMCO
Recorded By: MAT  Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

**APN: 161-28-316-025**

WHEN RECORDED MAIL DEED AND
TAX STATEMENTS TO:

Rex Archambault
524 N Ada St.
Chicago IL 60642

Title No. 
Account NO
TS No.

_____

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

## TRUSTEE'S DEED UPON SALE

The undersigned declares:

| | | |
|---|---|---|
| 1) | The grantee herein **WAS NOT** the foreclosing beneficiary | |
| 2) | The amount of the unpaid debt together with costs was | $  5,000.00 |
| 3) | The amount paid by the grantee at the trustee sale was | $  5,000.00 |
| 4) | The documentary transfer tax is | $     25.50 |
| 5) | City Judicial District of LAS VEGAS | |

And **Absolute Collection Services, LLC.**, as the duly appointed Trustee under the Notice of Delinquent Assessment hereinafter described, does hereby GRANT and CONVEY, but without warranty, express or implied, to: **Rex Archambault, 524 N Ada St., Chicago IL 60642**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of CLARK, State of NEVADA, described as follows:

### 5234 Fire Night Ave., Las Vegas NV 89122

Legal Description-shown on the Subdivision map recorded in Book No. **125** Page(s) **31**, Lot **45**, Inclusive, of Maps of the Country of Clark, State of Nevada; See Exhibit A Attached

AGENT STATES THAT:
This conveyance is made pursuant to the powers granted to **Hacienda North HOA** and conferred upon appointed trustee by the provisions of the Nevada Revised Statutes, the **Hacienda North HOA** governing documents (CC&R's) recorded as instrument number **0002468** Book **20060526** on **MAY 26, 2006** and that certain Notice of Delinquent

Assessment Lien recorded on **APRIL 12, 2011** instrument number **0001764** Book **20110412** Official Records of CLARK County; and pursuant to NRS 117.070 et Seq. or NRS 116.3115 et Seq and NRS 1163116 through 116.31168 et Seq. The name of the owner(s) of the property (trustor) was: **RHONDA DAVIS**

Default occurred as set forth in a Notice of Default and Election to Sell, recorded on **JULY 18, 2011** as instrument **0000857** Book **20110718** which was recorded in the office of the recorder of said county. Absolute Collection Services, LLC. Has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of **HACIENDA NORTH HOA** at public auction on **APRIL 17, 2012** at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid **$5,000.00** in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

Dated:        April 18, 2012

By Richard Kaye on behalf of Absolute Collection Services

STATE OF NEVADA        )
COUNTY OF CLARK        )

On 4/18/12 before me, Kelly Mitchell, personally appeared Richard Kaye personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in his/her authorized capacity, and that by signing his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

Kelly Mitchell Notary Public

**KELLY MITCHELL**
Notary Public, State of Nevada
Appointment No. 08-7504-1
My Appt. Expires July 10, 2012

Guarantee No.: 11980014                                          Order No.: 11980014-098-

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CLARK, STATE OF NEVADA, AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

LOT FORTY-FIVE (45) OF HACIENDA NORTH – PHASE 4 AS SHOWN BY MAP THEREOF ON FILE IN BOOK 125 OF PLATS, PAGE 31 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL TWO:

AN EASEMENT FOR INGRESS, EGRESS AND PRIVATE UTILITIES AS SET FORTH ON ABOVE SHOWN PLAT MAP.


APN: 161-28-316-025

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. 161 - 28 - 316 - 025
   b. _____
   c. _____
   d. _____
2. Type of Property:
   a. ☐ Vacant Land      b. ☒ Single Fam. Res.
   c. ☐ Condo/Twnhse     d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg        f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural     h. ☐ Mobile Home
      ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3. a. Total Value/Sales Price of Property           $ 5,000.00
   b. Deed in Lieu of Foreclosure Only (value of property ( _____ )
   c. Transfer Tax Value:                           $ 5,000.00
   d. Real Property Transfer Tax Due                $ 25.50

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred:_____ %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
   and NRS 375.110, that the information provided is correct to the best of their information and belief,
   and can be supported by documentation if called upon to substantiate the information provided herein.
   Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
   additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
   to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____   Capacity: Grantee

Signature _____   Capacity: _____

| **SELLER (GRANTOR) INFORMATION** (REQUIRED) | **BUYER (GRANTEE) INFORMATION** (REQUIRED) |
|---|---|
| Print Name: Absolute Collection Services | Print Name: REX ARCHAMBAULT |
| Address: PO Box 12117 | Address: 524 N. ADA St. |
| City: Las Vegas | City: CHICAGO |
| State: NV   Zip: 89112 | State: IL   Zip: 60642 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: CAMCD                          Escrow # NA - foreclosure
Address: PO Box 12117
City: Las Vegas                            State: NV   Zip: 89112

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

# Exhibit J –
## Residential Appraisal Summary Report

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 16-0382

## SUBJECT

| | |
|---|---|
| Property Address: 5234 Fire Night Ave | City: Las Vegas   State: NV   Zip Code: 89122 |
| County: Clark | Legal Description: Hacienda North - Phase 4, Book 125 Page 31, Lot 45 |

Assessor's Parcel #: 161-28-316-025   Tax Year: 2012-13   R.E. Taxes: $ 618.67   Special Assessments: $ None known

Current Owner of Record: Rhonda M. Davis as of April 17, 2012   Occupant: ☐ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe) ___ HOA: $ 46 ☐ per year ☒ per month

Market Area Name: Southeast   Map Reference: 925-G4 (Thomas)   Census Tract: 50.11

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☐ Market Value (as defined), or ☒ other type of value (describe) Fair Market Value

This report reflects the following value (if not Current, see comments): ☐ Current (the Inspection Date is the Effective Date) ☒ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: Litigation

Intended User(s) (by name or type): Akerman, LLP

Client: Akerman, LLP   Address: 1160 Town Center Dr, Suite 330, Las Vegas, NV 89144

Appraiser: Tammy L. Howard   Address: 3034 S. Durango Drive, Suite 100, Las Vegas, NV 89117

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit 65 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | | | 2-4 Unit % | ☐ Likely * ☐ In Process * |
| Property values: | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant | 15 Low | New | Multi-Unit 10 % | * To: |
| Demand/supply: | ☐ Shortage ☒ In Balance ☐ Over Supply | ☒ Vacant (0-5%) | 305 High | 25 | Comm'l 10 % | |
| Marketing time: | ☒ Under 3 Mos. ☐ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | 84 Pred | 10 | Vacant 15 % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): The nbhd. is located in the east ptn. of Las Vegas Valley, +/- 8-10 miles from the Las Vegas Strip & downtown areas.  It is bound on the north by Charleston Boulevard, the east by Hollywood Blvd. or limits of development in that direction, the south by Russell Road and the west by US 95.  This area includes a compatible mix of tract style SFR's with most new development occurring in the far SE ptn of the nbhd.  Notable communities in the area include the Wetlands Park and Sam Boyd Stadium.  The Clark County and City of Las Vegas sewage treatment plants border the nbhd to the north. Some industrial uses are located near the center of the nbhd. as well as along a portion of Boulder Hwy.  The area has an adequate mix of public schools, parks, shops, & general conveniences.  Access is average via Boulder Highway, US 95 & local streets.  Prices over the past 12 months show a stable trend.  The average list price to sale price ratio during the prior year within the neighborhood is 98%.  The reasonable exposure time for the subject property at the opinion of market value stated in this report is 60 days.  Average overall appeal and marketability.  The price range noted above is based on actual sales; the value range could potentially be higher.

## SITE DESCRIPTION

Dimensions: Irregular, see map   Site Area: 1,835 sf   ☐ Corner Lot ☐ Cul de Sac

| Zoning Classification: RUD | Description: Residential Urban Village | | Topography | Level |
|---|---|---|---|---|
| Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning | | | Size | Typical for neighborhood |

| Utilities | Public | Other | Description | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | | Street | Asphalt | ☒ | ☐ | Shape | Sl. irregular |
| Gas | ☒ | ☐ | | Curb/Gutter | Concrete | ☒ | ☐ | Drainage | Assume adequate |
| Water | ☒ | ☐ | | Sidewalk | Concrete | ☒ | ☐ | View | Wash to rear |
| Sanitary Sewer | ☒ | ☐ | | Street Lights | Electric | ☒ | ☐ | Landscaping | Minimal front and rear |
| Storm Sewer | ☐ | ☐ | Unknown | Alley | None | ☐ | ☐ | | |

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 32003C 2583F   FEMA Map Date 11/16/2011

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain) ___

Actual Use as of Effective Date: Single family residential   Use as appraised in this report: Single family residential

Summary of Highest & Best Use: The highest and best use is as it exists, a single family residence.

Site Comments: No apparent adverse easements, encroachment, environmental conditions, illegal or legal nonconforming zoning uses noted at the time of the inspection; however, inspection was made without the benefit of a title report or survey.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 ☐ Acc.Unit | Foundation | Concrete | Slab | Concrete | Area Sq. Ft. | | Type | FAU |
| # of Stories | 2 | Exterior Walls | Stucco | Crawl Space | None | % Finished | N/A | Fuel | Gas |
| Type ☒ Det. ☐ Att. | | Roof Surface | Concrete tiles | Basement | None | Ceiling | | | |
| Design (Style) | Standard | Gutters & Dwnspts. | None | Sump Pump | ☐ N/A | Walls | | Cooling | |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Fixed/Sliding | Dampness | ☐ NoneNoted | Floor | | Central | Yes |
| Actual Age (Yrs.) | 3 | Storm/Screens | WovenMesh | Settlement | ☐ NoneNoted | Outside Entry | | Other | |
| Effective Age (Yrs.) | 2 | | | Infestation | ☐ NoneNoted | | | | |

| Interior Description | | Appliances | Attic | ☐ | Amenities | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|
| Floors | Vinyl/tile/carpet | Refrigerator ☐ | None | ☒ | Fireplace(s) # 0 | Woodstove(s) # | Garage # of cars ( 1 Tot.) |
| Walls | Drywall/paint | Range/Oven ☒ | Stairs | ☐ | Patio | Stoop | Attach. |
| Trim/Finish | Wood/paint | Disposal ☐ | Drop Stair | ☐ | Deck | None | Detach. |
| Bath Floor | Vinyl | Dishwasher ☐ | Scuttle | ☐ | Porch | Covered | Blt.-In |
| Bath Wainscot | Fiberglass/tile | Fan/Hood ☐ | Floor | ☐ | Fence | Vinyl walls | Carport |
| Doors | Raised Panel/hollow | Microwave ☐ | Heated | ☐ | Pool | None | Driveway |
| Countertops | Laminate | Washer/Dryer ☐ | Finished | ☐ | | | Surface Concrete |

Finished area above grade contains: 5 Rooms   3 Bedrooms   2.5 Bath(s)   1,337 Square Feet of Gross Living Area Above Grade

Additional features: Assume vinyl/carpet flooring, standard cabinets with laminate countertops, overhead lights/fans, front yard drought tolerant landscaping,vinyl wall enclosed rear yard.

Describe the condition of the property (including physical, functional and external obsolescence): As of the effective date of this appraisal, the subject property is assumed to be in average condition.  At the time of inspection, there were no apparent major repairs, renovation, or remodeling evident. The effective age is based on the appraiser's exterior inspection of the property.  An exterior inspection of the property was performed from the public street.  An extraordinary assumption is made that the interior is in similar condition as the exterior and that the condition was similar the effective date of this appraisal.  The use of the extraordinary assumption may have affected the assignment results.

*Personal property items are not included herein.  The interior description has been based on public records and MLS records.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

LUBAWY000001

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 16-0382

**TRANSFER HISTORY**

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): County Records/MLS

| 1st Prior Subject Sale/Transfer | Analysis of Sale/Transfer History: County Records did not reveal any transfer of the subject in the 3-year |
|---|---|
| Date: None in three years prior | period preceding the date of value, April 17, 2012. Rhonda M. Davis purchased the property new from |
| Price: to April 17, 2012 | the builder on January 6, 2009 for $160,000. On December 30, 2010 the property was listed for sale |
| Source(s): County Records | (MLS#1109687) for $84,900 as a short sale; the price was lowered to $64,900 and a contingent offer |
| 2nd Prior Subject Sale/Transfer | was reported in June 2011. However, the sale did not come to fruition and the listing was withdrawn in |
| Date: | May 2012. The value estimated herein is reasonably higher than the most recent list price given the |
| Price: | favorable market conditions that were experienced during that time period. |
| Source(s): | |

**SALES COMPARISON APPROACH TO VALUE (if developed)** ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 5234 Fire Night Ave | 5333 Aurora Beam Ave | | 5336 Aurora Beam Ave | | 5288 Tipper Ave | |
| | Las Vegas, NV 89122 | Las Vegas, NV 89122 | | Las Vegas, NV 89122 | | Las Vegas, NV 89122 | |
| Proximity to Subject | | 0.14 miles E | | 0.15 miles E | | 0.09 miles NE | |
| Sale Price | $ 0.00 | | $ 65,000 | | $ 60,000 | | $ 65,000 |
| Sale Price/GLA | $ /sq.ft. | $ 47.31 /sq.ft. | | $ 44.88 /sq.ft. | | $ 48.62 /sq.ft. | |
| Data Source(s) | Exterior Inspection | MLS#1207841 | | MLS#1199530 | | MLS#1158657 | |
| Verification Source(s) | County Rcrds | Clark County Records | | Clark County Records | | Clark County Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | Cash | | Cash | | Cash | |
| Concessions | 0.00 | REO sale | | REO sale | | Short sale | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Date of Sale/Time | N/A | 2/22/2012 COE | | 2/21/2012 COE | | 9/20/2012 COE* | |
| Location | Average | Average | | Average | | Average | |
| Site | 1,835 SF | 2,300 SF | -1,000 | 1,742 SF | | 1,742 SF | |
| View | None | Wash | | None | | Street | +1,000 |
| Design (Style) | Standard | Standard | | Standard | | Standard | |
| Quality of Construction | Average, typical | Average | | Average | | Average | |
| Actual Age | 3 | 5 years | | 5 years | | 4 years | |
| Condition | Assm. average | Average- | +2,500 | Average- | +2,500 | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5 3 2.5 | 5 3 2.5 | | 5 3 2.5 | | 5 3 2.5 | |
| Gross Living Area | 1,337 sq.ft. | 1,374 sq.ft. | | 1,337 sq.ft. | | 1,337 sq.ft. | |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Car Garage | 1 Car Garage | | 1 Car Garage | | 1 Car Garage | |
| Porch/Patio/Deck | Patio | Similar | | Similar | | Similar | |
| Fireplace/Upgrades | None/standard | None/Similar | | None/similar | | None/similar | |
| Pool | None | None | | None | | None | |
| Site Improvements | L/S, block walls | Similar | | Similar | | Similar | |
| Contract Date | N/A | 1/23/2012 | | 01/23/2012 | | 3/3/2012 | |
| Day on Market | N/A | 62 | | 83 | | 257 | |
| Net Adjustment (Total) | | ☒ + ☐ - $ | 1,500 | ☒ + ☐ - $ | 2,500 | ☒ + ☐ - $ | 1,000 |
| Adjusted Sale Price | | Net 2.3 % | | Net 4.2 % | | Net 1.5 % | |
| of Comparables | | Gross 5.4 % $ | 66,500 | Gross 4.2 % $ | 62,500 | Gross 1.5 % $ | 66,000 |

Summary of Sales Comparison Approach    COE, Close of Escrow date indicates the date the transaction was recorded. The contract date is the date the purchase agreement was signed. Information for the COE and contract sales dates was obtained from MLS and county records and has been provided to give the Client additional understanding of the market conditions as of the effective date of this appraisal.

For the purpose of this appraisal, when conflict between County Records and appraiser inspection were noted, appraiser inspection was used. For the purpose of this appraisal, when conflict between County records were noted, MLS was used. The subject property and sales comparables were inspected on the exterior on July 15, 2016, however, GLVAR MLS photos were used from the time of sale as they are more reflective of the condition at the time of sale and the retrospective effective date of this appraisal. All of the sales are typical tract residences from the subject subdivision that have closed within 7 months of the effective date of value and are indicative of market conditions at that time. * Although sale 3 closed escrow after the effective date of value, the sale was consummated prior to the date of value.

Sale 1 was on the market for 62 days before selling $3,000 above list as an all cash REO sale. This property was acquired by the lender in August 2011 via trustees deed for $55,800. It backs to the wash and is situated on a larger lot. Some general cleaning and minor repairs were needed.

Sale 2 is a model match; this property was on the market for 83 days before selling at list as an all cash REO sale. The property was in inferior condition at the time of sale with some minor repairs and cleaning needed. It had been acquired by the lender in July 2011 via trustees deed for $61,200.

Sale 3 is also a model match; this property was on the market for 257 days before selling $9,900 below list as an all cash short sale. However, this property appears to have sold at market levels. It was owner occupied at the time of sale and was in similar condition. It backs to street that fronts a school; this added traffic and noise is considered to have a negative effect on the property.

See page 3 for continuation

**Indicated Value by Sales Comparison Approach $** 66,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP** RESIDENTIAL

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 16-0382

**COST APPROACH TO VALUE (if developed)** ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): The cost approach is not considered an accurate reflection of current market value for the subject property, and has not been developed.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ |
|---|---|---|---|
| Source of cost data: | DWELLING | Sq.Ft. @ $ | =$ |
| Quality rating from cost service:       Effective date of cost data: | | Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | =$ |
| | | Sq.Ft. @ $ | =$ |
| | | Sq.Ft. @ $ | =$ |
| | | | =$ |
| | Garage/Carport | Sq.Ft. @ $ | =$ |
| | Total Estimate of Cost-New | | =$ |
| | Less       Physical | Functional | External |
| | Depreciation | | =$( ) |
| | Depreciated Cost of Improvements | | =$ |
| | "As-is" Value of Site Improvements | | =$ |
| | | | =$ |
| | | | =$ |
| Estimated Remaining Economic Life (if required):       Years | **INDICATED VALUE BY COST APPROACH** | | **=$** |

**INCOME APPROACH TO VALUE (if developed)** ☒ The Income Approach was not developed for this appraisal.

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | **Indicated Value by Income Approach** |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM): Single family homes are not typically sold on an income basis. The income approach is not required for credible results.

**PROJECT INFORMATION FOR PUDs (if applicable)** ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:

Describe common elements and recreational facilities: An association fee of approximately $46 per month is reportedly charged for maintenance of common area landscaping and park.

| Indicated Value by: Sales Comparison Approach $ 66,000 | Cost Approach (if developed) $ N/A | Income Approach (if developed) $ N/A |
|---|---|---|

Final Reconciliation    The sales comparison approach is considered the most reliable indicator of value, as it best reflects the actions of buyers & sellers in the market. Most homes are owner occupied & do not produce income, so the income approach is not applicable. The cost approach is not an accurate reflection of current market value for the subject property & was not developed. The adjusted range is from $62,500 to $66,000 with a retrospective value of $66,000 estimated for the subject by weighting sale 3 as most similar. This equates to $49.36/sf which is within the unadjusted range of the sales.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: The subject property is being appraised with a retrospective date of value as of April 17, 2012. We assume the condition noted from an exterior inspection is similar to the property's retrospective date.

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $    66,000    , as of:    April 17, 2012    , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

A true and complete copy of this report contains    19    pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☐ Hypothetical Conditions | ☒ Extraordinary Assumptions | ☒ Narrative Addendum |
|---|---|---|---|---|
| ☐ Sketch Addendum | ☒ Location Map(s) | ☐ Flood Addendum | ☐ Additional Sales | ☐ Cost Addendum |
| ☐ Manuf. House Addendum | ☒ Supplemental Addendum | ☐ GLB Privacy Act | | |

Client Contact: Brieanne Siriwan      Client Name: Akerman, LLP

E-Mail: brieanne.siriwan@akerman.com      Address: 1160 Town Center Dr, Suite 330, Las Vegas, NV 89144

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *Tammy L. Howard* | *Matthew Lubawy* |
| Appraiser Name: Tammy L. Howard | Supervisory or Co-Appraiser Name: Matthew J. Lubawy, MAI |
| Company: Valbridge Property Advisors | Company: Valbridge Property Advisors |
| Phone: (702) 242-9369      Fax: (702) 242-6391 | Phone: (702) 242-9369      Fax: (702) 242-6391 |
| E-Mail: tlhoward@valbridge.com | E-Mail: mlubawy@valbridge.com |
| Date of Report (Signature): 07/15/2016 | Date of Report (Signature): 07/15/2016 |
| License or Certification #: A.0000253-CG      State: NV | License or Certification #: A.0000044-CG      State: NV |
| Expiration Date of License or Certification: 06/30/2017 | Expiration Date of License or Certification: 04/30/2017 |
| Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☒ None |
| Date of Inspection: July 15, 2016 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**      Form GPRES - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE      1/2007

LUBAWY000003

## Supplemental Addendum

File No. 16-0382

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |

**Purpose:**  The purpose of this appraisal is to form an opinion of the fair market value for the subject property as of the effective date which is a retrospective date of April 17, 2012.

**Intended User:** Akerman, LLP.  No other users are intended by the Appraiser.  Appraiser shall consider the intended users when determining the level of detail to be provided in the Appraisal Report.

**Intended Use: Litigation.**   No other use is intended by the Appraiser.  The intended use as stated shall be used by the Appraiser in determining the appropriate Scope of Work for the assignment.

### Scope of Appraisal:

Upon receiving this assignment from the client we identified the intended users of the report, confirmed that the effective date of the appraisal is to be consistent with the date of inspection.  Next the real property being appraised was identified and available property-specific data was collected through public records, various data services and or MLS database.

An exterior inspection of the property was completed as described herein; a visual observation of the unobstructed, exposed surfaces of accessible areas from standing height was performed on the exterior areas of the subject property for valuation purposes only.  The appraiser is NOT a "home inspector" and can only report conditions based on the visual observation noted above.  The appraiser DOES NOT warrant any part/whole of the subject property environmental conditions or other conditions that would require a licensed professional such as; identifying the existence of Lead Based paint, Mold, Soil Slippage, Hazardous Waste, Radon Gas etc.  We did not test the subject's mechanical systems; the appraiser is not an expert with regard to mechanical issues or electrical, plumbing, roof, foundation systems, or State, City, County, Building Code compliance etc.

The appraiser's inspection included noting the apparent condition, quality, utility, amenities and architectural style.  Measurements and room counts used in this report came from county records.   Zoning data was obtained from public records, office files, and or city/county planning offices.  The collected data was then used to develop a profile of the subject property and analyze the highest and best use of the subject property.

The appraiser performed a search of the local market area for the most similar closed comparable sales, pending/contingent sales and active listings.  The accessible sales were inspected from the street and photos taken.  MLS photos may be used when there is; obstruction, people are outside, when there is no access to the property, or when the MLS photo is considered a more accurate depiction of the properties condition at the time of sale.  The sales were confirmed and verified from public records, various data services, MLS and when necessary with an agent, the owner, or the title company.  Interior/exterior upgrade adjustments may be made to one or more of the comparables due to information obtained from the appraiser's exterior inspection of the property and/or information obtained from the multiple listing service (MLS).  Where available, the appraiser has reviewed interior photographs provided by listing agents on the comparables to obtain a better understanding of these properties.  The sales data was then analyzed and a value opinion derived.

In the preparation of this report, we have relied on data from county records, multiple listing service, title companies, etc.   We believe this report to be complete and accurate, however, should any error or omission be subsequently discovered, we reserve the right to correct it.

**Sales Comparison Analysis:**
For the purpose of this appraisal, when conflict  between County Records and appraiser inspection were noted, appraiser inspection was used.  For the purpose of this appraisal, when conflict between MLS and county records were noted, MLS was used.

LUBAWY000004

## Location Map

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|-------|-----|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



LUBAWY000005

## Neighborhood Map

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | |
|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | |
| City | Las Vegas | County Clark | | State NV | Zip Code 89122 |
| Client | Akerman, LLP | | | | |



LUBAWY000006

## Aerial View

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | |



LUBAWY000007

## Aerial View Close Up

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



LUBAWY000008

## Assessor's Parcel Map

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



## Assessor's Parcel Map Close Up

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



LUBAWY000010

## Subject Photo Page

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



**Subject Front**

| | |
|---|---|
| 5234 Fire Night Ave | |
| Sales Price | 0.00 |
| Gross Living Area | 1,337 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Average |
| View | None |
| Site | 1,835 SF |
| Quality | Average, typical |
| Age | 3 |

Photos taken 7/15/2016
by Tammy Howard



**Additional front view**



**Street scene**

Looking east, subject
is on the left

LUBAWY000011

## Comparable Sale Location Map

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



LUBAWY000012

## Comparable Photo Page

| Owner | Rhonda M. Davis as of April 17, 2012 | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5234 Fire Night Ave | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89122 |
| Client | Akerman, LLP | | | | | | |



### Comparable 1

5333 Aurora Beam Ave

| | |
|---|---|
| Prox. to Subject | 0.14 miles E |
| Sales Price | 65,000 |
| Gross Living Area | 1,374 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Average |
| View | Wash |
| Site | 2,300 SF |
| Quality | Average |
| Age | 5 years |

Photo from MLS



### Comparable 2

5336 Aurora Beam Ave

| | |
|---|---|
| Prox. to Subject | 0.15 miles E |
| Sales Price | 60,000 |
| Gross Living Area | 1,337 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Average |
| View | None |
| Site | 1,742 SF |
| Quality | Average |
| Age | 5 years |

Photo from MLS



### Comparable 3

5288 Tipper Ave

| | |
|---|---|
| Prox. to Subject | 0.09 miles NE |
| Sales Price | 65,000 |
| Gross Living Area | 1,337 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Average |
| View | Street |
| Site | 1,742 SF |
| Quality | Average |
| Age | 4 years |

Photo from MLS

LUBAWY000013

# Assumptions, Limiting Conditions & Scope of Work

| | | File No.: | 16-0382 | |
|---|---|---|---|---|
| Property Address: | 5234 Fire Night Ave | City: Las Vegas | State: NV | Zip Code: 89122 |
| Client: | Akerman, LLP | Address: | 1160 Town Center Dr, Ste. 330, Las Vegas, NV 89144 | |
| Appraiser: | Tammy L. Howard | Address: | 3034 S. Durango Drive, Suite 100, Las Vegas, NV 89117 | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

- The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

- The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

- If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

- The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

- If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

- The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the client at the time of the assignment.

- The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

- An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate**.**

**The Scope of Work** is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

**Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):**
**An exterior inspection of the property was performed for the public street. An extraordinary assumption is made the interior is in similar condition as the exterior and that these conditions were similar on the retrospective date of value. The use of the extraordinary assumption may have affected the assignment results.**

The purpose of this appraisal is for a "non lender" appraisal.  It should be noted that the appraisers's data and comparables utilized were retrieved as of the inspection date noted within the body of the report.  This report is intended for use by the Client that is named on page 1 of this report.

Measurements and room counts used in this report come from the appraisers interior/exterior inspection of the subject property, previous appraisal files and/or builder floor plans.  These numbers may differ slightly with those recorded with Clark County records due to differences in measuring techniques.

The sales were confirmed and verified from public records, various data services, MLS and when necessary with an agent, the owner or the title company.

In the preparation of this report, we have relied on data from county records, multiple listing service, title companies, etc.   We believe this report to be complete and accurate, however, should any error or omission be subsequently discovered, we reserve the right to correct it.



Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

LUBAWY000014

## Certifications

File No.: 16-0382

| Property Address: 5234 Fire Night Ave | | City: Las Vegas | State: NV | Zip Code: 89122 |
|---|---|---|---|---|
| Client: Akerman, LLP | Address: | 1160 Town Center Dr, Ste. 330, Las Vegas, NV 89144 | | |
| Appraiser: Tammy L. Howard | Address: | 3034 S. Durango Drive, Suite 100, Las Vegas, NV 89117 | | |

**APPRAISER'S CERTIFICATION**

**I certify that, to the best of my knowledge and belief:**
- The statements of fact contained in this report are true and correct.
- The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**
The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute.

-The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

-As of the date of this report, Matthew Lubawy, MAI has completed the continuing education program of the Appraisal Institute.

-The appraisers' state registration/certification has not been revoked, suspended, canceled or restricted.

**Disclosure of Prior Appraisal and/or Other Services:**
I certify that, to the best of my knowledge and belief:
I have not performed a prior appraisal or other service regarding the subject property within the 3 year period immediately preceding acceptance of this appraisal assignment.*

**DEFINITION OF FAIR MARKET VALUE *:**
"The price which a purchaser, willing but not obliged to buy, would pay an owner willing but not obliged to sell, taking into consideration all the uses to which the property is adapted and might in reason be applied."

Source:  Unruh v. Streight, 96 Nev. 684, 686, 615 P.2d 247 (1980)

| Client Contact: Brieanne Siriwan | | Client Name: Akerman, LLP | |
|---|---|---|---|
| E-Mail: brieanne.siriwan@akerman.com | Address: | 1160 Town Center Dr, Ste. 330, Las Vegas, NV 89144 | |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *Tammy L Howard* (signature) | *Matthew Lubawy* (signature) |
| | Supervisory or |
| Appraiser Name: Tammy L. Howard | Co-Appraiser Name: Matthew J. Lubawy, MAI |
| Company: Valbridge Property Advisors | Company: Valbridge Property Advisors |
| Phone: (702) 242-9369   Fax: (702) 242-6391 | Phone: (702) 242-9369   Fax: (702) 242-6391 |
| E-Mail: tlhoward@valbridge.com | E-Mail: mlubawy@valbridge.com |
| Date Report Signed: 07/15/2016 | Date Report Signed: 07/15/2016 |
| License or Certification #: A.0000253-CG   State: NV | License or Certification #: A.0000044-CG   State: NV |
| Designation: | Designation: MAI |
| Expiration Date of License or Certification: 06/30/2017 | Expiration Date of License or Certification: 04/30/2017 |
| Inspection of Subject: ☐ Interior & Exterior  ☒ Exterior Only  ☐ None | Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☒ None |
| Date of Inspection: July 15, 2016 | Date of Inspection: |

SIGNATURES

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
3/2007

**GP RESIDENTIAL**

LUBAWY000015

Qualifications of Tammy L. Howard
Senior Appraiser
Valbridge Property Advisors | Lubawy & Associates, Inc.

*Independent Valuations for a Variable World*

## State Certifications

State of Nevada
License #A.0000253-CG

## Education

Attended University of Nevada, Las Vegas, 1988-89
Graduated Plainwell High School, MI, 1980

## Contact Details

702-242-9369 (p)
702-242-6391 (f)

Valbridge Property Advisors |
Lubawy & Associates
3034 S. Durango Drive
Suite 100
Las Vegas, NV 89117

www.valbridge.com
torourke@valbridge.com

### Related Courses/Seminars:
Real Estate Appraisal Principles
Residential Valuation
Uniform Standards of Professional Appraisal Practice
Basic Valuation Procedures
Residential Case Studies
Case Studies in Law & Ethics
Forensic Real Property Appraising
FHA Appraisal Inspections from the Ground Up
Litigation Appraisal & Expert Testimony
Real Estate Law I and II
Income Property Analysis
Market Extraction
Factory Built Housing
Income Capitalization

### Experience:
**Senior Appraiser**
Valbridge Property Advisors|Lubawy & Associates (2013-Present)

**Senior Appraiser**
Lubawy & Associates (June 2012-2013)

**Senior Appraiser**
Grubb & Ellis-Landauer Valuation (Oct 2010-May 2012)

**Associate Appraiser**
Integra Realty Resources|Shelli Lowe & Associates (1985-2010)

Appraisal/valuation and consulting assignments include: apartment buildings; retail buildings and shopping centers; office buildings; industrial buildings; religious and special purpose properties including schools and houses of worship; residential subdivisions; and vacant industrial, commercial and residential land. Assignments have been concentrated in Nevada.

LUBAWY000016

# APPRAISER CERTIFICATE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

**NOT TRANSFERABLE**                  **REAL ESTATE DIVISION**                  **NOT TRANSFERABLE**

**This is to Certify That :** TAMMY L HOWARD          **Certificate Number:** A.0000253-CG

**Is duly authorized to act as a** CERTIFIED GENERAL APPRAISER **from the issue date to the expiration date at the business address stated here in, unless the certificate is sooner revoked, cancelled, withdrawn, or invalidated.**

**Issue Date:** June 30, 2015                     **Expire Date:** June 30, 2017

**In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in Chapter 645C of the Nevada Revised Statues, has caused this Certificate to be issued with its Seal printed thereon. This certificate must be conspicuously displayed in place of business.**

**FOR:** VALBRIDGE PROPERTY ADVISORS          **REAL ESTATE DIVISION**
3034 S DURANGO DR #100
LAS VEGAS, NV 89117

**JOSEPH (JD) DECKER**
*Administrator*

Form SCA - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

LUBAWY000017

Qualifications of Matthew Lubawy, MAI, CVA, CMEA
Senior Managing Director
Valbridge Property Advisors | Lubawy & Associates, Inc.



*Independent Valuations for a Variable World*

## State Certifications

Nevada License
# A.0000044-CG

Arizona License
#31821

## Education

Bachelor of Science
Business Administration
University of Nevada, Las Vegas

## Contact Details

702-242-9369 (p)
702-242-6391 (f)

Valbridge Property Advisors | Lubawy & Associates, Inc.
3034 S. Durango Dr. #100
Las Vegas, NV 89117
www.valbridge.com
mlubawy@valbridge.com

### Membership/Affiliations:

| | |
|---|---|
| Member: | Appraisal Institute - MAI Designation #10653 Director - (2008 – 2011) President of Las Vegas Chapter (1998 - 1989) 1st V.P. of Las Vegas Chapter (1997 – 1998) 2nd V.P. of Las Vegas Chapter (1996 – 1997) |
| Member: | NACVA – CVA Designation (Certified Valuation Analyst for business valuation) |
| Member: | NEBB Institute – CMEA Designation for Machinery and Equipment |
| Board Member: | Valbridge Property Advisors - Vice-Chairman of the Board of Directors (2011 – Present) |
| Member: | International Right of Way Association |
| Member: | National Association of Realtors |
| Member: | GLVAR |
| Board Member: | Nevada State Development Corporation Chairman of the Board (2008-Present) |

### Experience:

**Senior Managing Director**
Valbridge Property Advisors | Lubawy & Associates (2013 to Present)

**Principal**
Lubawy & Associates (1994-2013)

**Independent Fee Appraiser and Real Estate Consultant**
Timothy R. Morse and Associates (1992 – 1994)

**Staff Appraiser/Assistant Vice President**
First Interstate Bank (1988 - 1992)

**Independent Fee Appraiser and Real Estate Consultant**
The Clark Companies (1987 - 1988)

LUBAWY000018

# APPRAISER CERTIFICATE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

**NOT TRANSFERABLE**          **REAL ESTATE DIVISION**          **NOT TRANSFERABLE**

**This is to Certify That :** MATTHEW J LUBAWY          **Certificate Number:** A.0000044-CG

**Is duly authorized to act as a** CERTIFIED GENERAL APPRAISER **from the issue date to the expiration date at the business address stated here in, unless the certificate is sooner revoked, cancelled, withdrawn, or invalidated.**

**Issue Date:** March 31, 2015          **Expire Date:** April 30, 2017

**In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in Chapter 645C of the Nevada Revised Statues, has caused this Certificate to be issued with its Seal printed thereon. This certificate must be conspicuously displayed in place of business.**

**FOR:** VALBRIDGE PROPERTY ADVISORS          **REAL ESTATE DIVISION**
3034 S DURANGO DR #100
LAS VEGAS, NV  89117

**JOSEPH (JD) DECKER**
*Administrator*

LUBAWY000019

# MATTHEW LUBAWY, MAI
# DEPOSITIONS/TRIAL TESTIMONY

## DEPOSITIONS

### NEVADA STATE DISTRICT COURT

- **Branch Banking and Trust Company, et al., vs. Joe D. Thomas, et al.,** (Case #A-12-670622-B)
  Date: August 9, 2013
  Attorneys: Gabriel Blumberg, Gordon Silver– Attorneys for Defendant; Allison Noto, Sylvester & Polednak, Attorneys for Plaintiff
  Our File No: 13-0108-000

- **Richard & Bie-Shia K. Chu, et al. vs. Alan Schachtman, et al.,** (Case #A572474)
  Date:  November 19, 2014
  Attorneys:  Scott Coston, Burdman & Coston – Attorneys for Plaintiff; Jeff Garofalo, Lee, Hernandez, Landrum & Garofalo, Attorneys for Defendant
  Our File No: 14-0195-001

- **SFR Investment Pool 1, LLC. vs. Nationstar Mortgage, LLC., Sandra Salas, Does 1 through X and ROE Corporations I through X** (Case #A-13-684596-C)
  Date:  July 1, 2015
  Attorneys:  Karen L. Hanks, Howard Kim & Associates - Attorneys for Plaintiff; Melanie D. Morgan, Akerman, LLP - Attorneys for Defendant
  Our File No: 15-1013

- **Ignacio Gutierrez vs. SFR Investments Pool 1, LLC; Nevada Association Services, Inc., Horizon Heights Homeowners Association; KB Home Mortgage Company, , DOE Individuals I through X, ROE Corporations and Organization I through X.**

  **SFR Investments Pool 1, LLC. vs. Ignacio Gutierrez; Nationstar Mortgage, LLC, Countrywide Home Loans, Inc., Does I-X; and Roes 1-10, inclusive** (Case #A-13-684715-C)
  Date:  August 5, 2015
  Attorneys:  Karen L. Hanks, Howard Kim & Associates – Attorneys for Plaintiff; Akerman, LLP, Attorneys for Defendant
  Our File No: 15-1021

1

LUBAWY000020

## MATTHEW LUBAWY, MAI
## DEPOSITIONS (continued)

**Hodgepodge, LLC. vs. Blood Family Trust U/A/D 10/25/90, by and through its Trustees, John R. Blood and Paula Blood, Does I-X; and ROE Entities I-X, inclusive** (Case #A-15-719153-B)
Date:  November 10, 2015
Attorneys:  Erika Pike Turner with Garman, Turner, Gordon – Attorneys for Plaintiff; Jeff Sylvester with Sylvester & Polednak, LTD, Attorneys for Defendant
Our File No: 15-0131-001 & 002

**Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank. vs. Nevada Title Company** (Case #2:14-cv-01567-GMN-GWF)
Date:  December 21, 2015
Attorneys:  Emilia P.E. Morris, Mortgage Recovery Law Group LLP. – Attorneys for Plaintiff;
Scott Burris with Wilson Elser Moskowitz Edelman & Dicker, LLP, Attorneys for Defendant
Our File No: 15-1070

**Carrington Mortgage Services, LLC vs Saticoy Bay LLC Series 6709 Brick House; Cactus Springs at Fairfax Village Homeowners Association; Hampton & Hampton Collections, LLC** (Case #2:15-cv-01852 APG-PAL)
Date:  June 3, 2016
Attorneys:  Maximiliano D. Couvillier, III, Black & Lobello – Attorneys for Plaintiff; Robert S. Larsen and David T. Gluth, Gordon & Rees LLP - Attorneys for Defendant
Our File No: 16-0057

## U.S. DISTRICT COURT

- **George F. Tibsherany, Inc. vs. The Midby Companies, LLC** (Case #CV-S-05-0613-LDG-GWF)
  Date:  December 11, 2006
  Attorneys:  Nicholas M. Wieczorek (Morris, Polich, and Purdy, LLPO), William L. Coulthard (Harrison, Kemp & Jones), John Wendland (Weil & Drage, APC), Scott R. Cook (Gordon & Rees), Aviva Gordon (Ellis & Gordon)
  Judge:  Lloyd D. George
  Our File No: 06-301

2

LUBAWY000021

## FEDERAL BANKRUPTCY COURT

- **Whitton Corporation** (Case #BK-S-10-32680-BAM)
  Date:  April 13, 2011
  Attorneys:  Rodney M. Jean and Mohamed A. Iqbal, Jr., (Lionel Sawyer  Collins)

- **Marion Manor, LLC** (Case No. BK-S-11-28020-BAM)
  Date:  February 24, 2012
  Attorneys:   Chris Kaup and Lars Evensen with Holland & Hart; David J. Winterton & Associates, Ltd.

- **Desert Inn Management Company, LTD.** (Case No. BK-S-12-16719-LBR)
  Date:  January 29, 2013
  Attorneys:  Eric T. Gjerdingen, Gordon Silver & Jefrey Willis, Snell & Wilmer

# TRIAL TESTIMONY

## NEVADA STATE DISTRICT COURT

- **Bank of Nevada vs. Monterey Industrial, LLC; and Maria Guadalupe De Tostado,** (Case #A-10-623435-C)
  Date: March 15, 2011
  Attorney:  Michael D. Mazur, ESQ
  Judge: Jessie Walsh

- **Alliance Homes LLC (Bank of NV) vs. N. Las Vegas II, LLC; Frank T. Ferraro, Jr.; Christopher Paskvan; Tom Fehrman,** (Case #A-10-610698-C)
  Date: April 15, 2011
  Attorneys:  H. Stanley Johnson, CJD Law Group LLC; James B. Ball, Poli and Ball, PLC
  Judge: Nancy L. Allf

- **Bank of Nevada vs. Pebble Pines, LLC and Quiet Moon, LLC,** (Case #A-11-637410-C)
  Date: June 3, 2011
  Attorney:  Stephanie Hardie Allen – Kaempfer Crowell Penshaw Gronauer & Fiorentino
  Judge: Jerry A. Wiese
  Our File No: 10-468

3

LUBAWY000022

- **NV Energy v. Copperfield Investment & Development Co.**
  (Case # A-09-604760-C) testified on behalf of Plaintiff
  Date:  October 27, 2011
  Attorneys:  Plaintiff attorney: Kirby Gruchow (Leach, Johnson, Song & Gruchow)
  Defendant attorney:  John M. Netzorg
  Judge:  Susan Johnson

- **Bank of Nevada v. Classic Productions, LLC**
  (Case # A-10-626894-C) testified on behalf of Plaintiff
  Date:  August 27, 2012
  Attorneys:  Plaintiff attorney:  Michael D. Mazur
  Defendant attorney:  Lucas M. Gjovig
  Judge:  Jerry A. Wiese

4

- **Taylor Emanuel v. Richard Jones, et al.**
  (Case # A-10-611339-B) testified on behalf Defendant/Counter Claimant –
  Bank of Las Vegas
  Date:  August 28, 2012
  Attorneys:  Defendant/Counter Claimant attorney:  Nicole Lovelock
  (Holland & Hart, LLP)
  Plaintiff attorney:   David J. Winterton
  Judge:  Elizabeth Gonzalez

- **November 2005 Land Investors, LLC, et al. vs. Nevada Power Co.**
  (Case # A-10-611150-C – testified on behalf of Defendant – Nevada Power Company
  Date:  June 28 & July 1, 2013
  Attorneys:  Defendant: William E. Peterson & Janine C. Prupas, Snell & Wilmer (Snell &
  Wilmer, LLP)
  Plaintiff attorney:   J. Randall Jones & Eric M. Pepperman (Kemp, Jones & Coulthard,
  LLP) & Mark E. Ferrario (Greenberg Traurig)
  Judge:  Gloria Sturman

- **Branch Banking and Trust Company, et al., vs. Joe D. Thomas, et al.,** (Case #A-12-
  670622-B)
  Date: September 9, 2013
  Attorneys: Gabriel Blumberg, Gordon Silver– Attorneys for Defendant; Allison Noto,
  Sylvester & Polednak, Attorneys for Plaintiff
  Our File No: 13-0108-000
  Judge:  Elizabeth Gonzalez

- **Branch Banking and Trust Company, et al., vs. Joe D. Thomas, et al.,** (Case #A-12-
  670622-B)
  Date: September 9, 2013
  Attorneys: Gabriel Blumberg, Gordon Silver– Attorneys for Defendant; Allison Noto,
  Sylvester & Polednak, Attorneys for Plaintiff
  Our File No: 13-0108-000
  Judge:  Elizabeth Gonzalez

- **Nevada State Bank vs. David Fandel,** (Case #A-14-697643-B)
  Date: August 24, 2015
  Attorneys: Erika Pike Turner, Garman Turner Gordon, LLP– Attorney for Plaintiff, John
  Gutke, Attorney for Defendants;
  Our File No: 134-0254-000 and 13-0255-000
  Judge:  Mark Denton

5

LUBAWY000024

- **2010-1 CRE Venture LLC vs. OHDB, LLC., Lawrence Doyle, Joseph Lamarca, Stan Wasserkrug, John Hessling, Keith Lyon and Bonnie Chu** (Case #A-13-680017-B)
  Date: November 30, 2015
  Attorneys: Alina Shell, McLetchie Shell, LLC– Attorney for Defendant, Leslie S. Godfrey, Greenberg Traurig, LLP, Attorney for Plaintiff;
  Our File No: 15-0004-001
  Judge:  Susan W. Scann

## U.S. DISTRICT COURT

- **FDIC as receiver for Community Bank of Nevada vs. Glen Smith & Glen Development Company LLC** (Case #A575592)
  Date: January 10, 2011
  Attorneys: Spencer H. Gunnerson, Kemp, Jones & Coulthard; Aaron Shipley, McDonald Carano Wilson
  Judge: Elizabeth Gonzales
  Our File No: 09-251

## FEDERAL BANKRUPTCY COURT

- **Francis K. Poirier vs. Sean R. Harron and Elise M. Harron** (Bankruptcy Case #09-22463-mkn)
  Date: November 9, 2010
  Attorneys: Michael Stein and Erica J. Stutman of Snell & Wilmer
  Chief Judge: Mike K. Nakagawa
  Our File No:  1007-001C (Residential)

- **Francis K. Poirier vs. Sean R. Harron and Elise M. Harron** (Bankruptcy Case #09-22463-mkn)
  Date: January 13, 2011
  Attorneys: Michael Stein and Erica J. Stutman of Snell & Wilmer
  Chief Judge: Mike K. Nakagawa
  Our File No: 1007-001C (Residential)

- **Whitton Corporation** (Case #BK-S-10-32680-BAM)
  Date:  June 3, 2011
  Attorneys:  Rodney M. Jean and Mohamed A. Iqbal, Jr., (Lionel Sawyer Collins); David Snyder and Brett Axelrod (Fox Rothschild)
  Judge: Bruce A. Markell

LUBAWY000025

- **Marion Manor, LLC** (Bankruptcy Case No. BK-S-11-28020-BAM)
  Date:  February 28-29, 2011 and March 9, 2011
  Attorneys:    Tenille  Pereira,  (David  J.  Winterton  &  Associates,  Ltd.)  Debtor's
  Attorneys; Lars K. Evensen, (Holland & Hart, LLP) Creditor's Attorney
  Judge:  Bruce A. Markell
  Our File No: 11-272

LUBAWY000026



Lubawy & Associates, Inc.

3034 S. Durango Drive
Suite 100
Las Vegas, NV 89117
702-242-9369 phone
702-242-6391 fax
valbridge.com

# Fee Schedule

| | |
|---|---|
| Expert Witness Testimony | $400/hr. |
| Deposition and Court Testimony | $400/hr. |
| Supplemental Work, Research, Trial Preparation | $400/hr. |

Three-hour minimum for deposition and testimony.

If deposition or Court Testimony is cancelled within 24 hours of scheduled appearance, client will be billed for 50% of the three-hour minimum, in addition to any preparation time.

# Exhibit K – Quitclaim Deed

C ②-2

APN: 161-28-316-025

Fees: $17.00 N/C Fee: $25.00
RPTT: $385.05 Ex: #
02/10/2014 11:40:56 AM
Receipt #: 1927653
Requestor:
CSC AQUISITIONS & HOLDING L
Recorded By: COJ   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

WHEN RECORDED MAIL DEED AND
TAX STATEMENTS TO:

RJRN HOLDINGS LLC
2330 Paseo Del Prado, C-105
Las Vegas, NV 89102

# QUITCLAIM DEED

THIS QUITCLAIM DEED made on **January 29, 2014** between The Grantor, **Rex Archambault**, and
the Grantee, **RJRN HOLDINGS LLC**, for and in consideration of:

**5234 Fire Night Ave.**

Legally described as follows:
**HACIENDA NORTH-PHASE 4 PLAT BOOK 125 PAGE 31 LOT 45**

Together with all the tenements, hereditaments, and appurtenances there unto belonging, and
the reversions, remainders, rents, issues, and profits thereof. To have and to hold, all and
singular the premises, with the appurtenances, unto **RJRN HOLDINGS LLC** and his/her and
assigns forever.

DATED _____ GRANTOR _____
Rex Archambault

On this day personally appeared before me **Rex Archambault**, Grantor, to me known to be the
individual(s) described in and who executed the foregoing instrument, and acknowledged that
s/he signed the same as his/her free and voluntary act and deed for the uses and purposes
therein mentioned.

GIVEN under my hand and official seal this ___3___ day of _Feb___, 2014

NOTARY PUBLIC in and for the State of Nevada,

Residing at _1244 W. Grand Ave_
_Chicago IL 60642_   My commission expires _____

```
"OFFICIAL SEAL"
DENNIS P. SEPANIK
Notary Public, State of Illinois
My Commission Expires Oct. 27, 2015
Commission No. 497958
```

# State of Nevada
# Declaration of Value

<table>
<tr><td colspan="2">

**1.**    **Assessor Parcel Number(s)**

a) 161-28-316-025

b) _____

c) _____

d) _____
</td><td>

FOR RECORDERS OPTIONAL USE ONLY

Document/Instrument # _____

Book: _____ Page: _____

Date of Recording: _____

Notes: _____
</td></tr>
</table>

**2.**    **Type of Property:**

a) ☐ Vacant Land    b) ☒ Single Fam. Res.
c) ☐ Condo/Twnhse   d) ☐ 2-4 Plex
e) ☐ Apt. Bldg.      f) ☐ Comm'l/Ind'l
g) ☐ Agricultural    h) ☐ Mobile Home
i) ☐ Other_____

**3.**    **Total Value/Sales Price of Property:**    $ 75400

Deed in Lieu of Foreclosure Only (value of property)    $ _____

Transfer Tax Value per NRS 375.010, Section 2:    $ _____

Real Property Transfer Tax Due:    $ 385.05

**4.**    **If Exemption Claimed:**

a. Transfer Tax Exemption, per NRS 375.090, Section: _____

b. Explain Reason for Exemption: _____

**5.**    Partial Interest: Percentage being transferred: ( 00 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month.

**Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.**

Signature _____    Capacity _agent_

Signature _____    Capacity _____

<table>
<tr>
<td>

**SELLER (GRANTOR) INFORMATION**
(REQUIRED)

Print Name: Rex Archambault
Address: 624 N. Ada Ct
City: Chicago
State: IL    Zip: 60642
</td>
<td>

**BUYER (GRANTEE) INFORMATION**
(REQUIRED)

Print Name: RJRN HOLDINGS LLC
Address: 2330 paseo Del prado C10E
City: Las Vegas
State: NV    Zip: 89102
</td>
</tr>
</table>

**COMPANY REQUESTING RECORDING**
(REQUIRED IF NOT THE SELLER OR BUYER)

Print Name: CSC Admisitions      Escrow # _____

Address: 2330 paseo Del Prado C10E

City: Las Vegas    State: NV    Zip: 89102

*(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)*

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1.  Assessor Parcel Number(s)
    a.  _161 - 28 - 316 - 025_
    b.  _____
    c.  _____
    d.  _____

2.  Type of Property:
    a. ☐ Vacant Land        b. ☒ Single Fam. Res.
    c. ☐ Condo/Twnhse      d. ☐ 2-4 Plex
    e. ☐ Apt. Bldg          f. ☐ Comm'l/Ind'l
    g. ☐ Agricultural       h. ☐ Mobile Home
       ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

| | | |
|---|---|---|
| 3.a. Total Value/Sales Price of Property | $ | _75,400_ |
| b. Deed in Lieu of Foreclosure Only (value of property ( | | ) |
| c. Transfer Tax Value: | $ | |
| d. Real Property Transfer Tax Due | $ | _385.05_ |

**4. If Exemption Claimed:**
  a.  Transfer Tax Exemption per NRS 375.090, Section_____
  b.  Explain Reason for Exemption: _____

5.  Partial Interest: Percentage being transferred: _100_ %
The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief,
and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____    Capacity: _agent_

Signature _____    Capacity: _____

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
|---|---|
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: _Rev Archambault_ | Print Name: _RJRN Holdings_ |
| Address: _524 N. Ada St_ | Address: _2330 Paseo del Prado_ |
| City: _Chicago_ | City: _Los Vegas_ |
| State: _IL_  Zip: _60642_ | State: _NV_  Zip: _89102_ |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: _CSC Acquisitions_        Escrow # _____
Address: _2330 Paseo del Prado_
City: _LV_                             State: _NY_  Zip: _89102_

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

# Exhibit L –

Deposition of Daunshari Wong-Culotta 30(b) (6) Representative for RJRN, LLC

1                       DISTRICT COURT

2                  CLARK COUNTY, NEVADA

3

4    RJRN, LLC, a domestic limited    )
     liability company,               )
5                                     )
             Plaintiff,               )
6                                     )
       vs.                            ) CASE NO. A-14-706671-C
7                                     ) DEPT. NO. X
     NATIONSTAR MORTGAGE LLC, a       )
8    Foreign Limited Liability        )
     Company; CLEAR RECON CORP., a    )
9    Foreign Corporation; BANK OF     )
     AMERICA, N.A., a National        )
10   Banking Entity; U.S. BANK        )
     NATIONAL ASSOCIATION AS          )
11   SUCCESSOR TRUSTEE TO BANK OF     )
     AMERICA, N.A., AS SUCCESSOR TO   )
12   LASALLE BANK, N.A., AS TRUSTEE   )
     FOR THE HOLDERS OF THE MERRILL   )
13   LYNCH FIRST FRANKLIN MORTGAGE    )
     LOAN TRUST, MORTGAGE LOAN        )
14   ASSET-BACKED CERTIFICATES,       )
     _____)
15   / / /

16

17           DEPOSITION OF DAUNSHARI WONG-CULOTTA

18           30(b)(6) REPRESENTATIVE FOR RJRN, LLC

19              Taken on Monday, October 12, 2015

20                    At 2:44 p.m.

21                 Taken at Akerman, LLP

22        1160 North Town Center Drive, Suite 330

23                   Las Vegas, Nevada

24

25   Reported by: Terri M. Hughes, CCR No. 619

Daunshari Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1    SERIES 2007-I, an unknown        )
      entity; U.S.BANK, NATIONAL       )
 2    ASSOCIATION, SUCCESSOR TRUSTEE   )
      TO BANK OF AMERICA, N.A., AS     )
 3    SUCCESSOR TO LASALLE BANK, N.A.,)
      AS TRUSTEE FOR THE HOLDERS OF    )
 4    THE FIRST FRANKLIN MORTGAGE LOAN)
      ASSET-BACKED CERTIFICATES,       )
 5    SERIES 2007-FFC, an unknown      )
      entity; REGINA DAVIS, an         )
 6    Individual; DOES I through X;    )
      and ROE CORPORATIONS I through   )
 7    X, inclusive,                    )
                                       )
 8              Defendants.            )
      _____)
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Reported by: Terri M. Hughes, CCR No. 619
```

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page  3

```
 1      DEPOSITION OF DAUNSHARI WONG-CULOTTA, 30(b)(6)

 2      REPRESENTATIVE OF RJRN, LLC, taken at Akerman LLP, 1160

 3      North Town Center Drive, Suite 330, Las Vegas, Nevada, on

 4      Monday, October 12, 2015, at 2:44 p.m., before Terri M.

 5      Hughes, Certified Court Reporter, in and for the State of

 6      Nevada.

 7      APPEARANCES:

 8      For the Plaintiff:

 9              ZACHARY D. CLAYTON, ESQ.
                Law Office of Michael Beede
10              2300 West Sahara Avenue
                Suite 420
11              Las Vegas, Nevada 89102
                (702) 473-8406

12

13      For the Defendants, Nationstar Mortgage, LLC, Bank of
        America, N.A., U.S. Bank, N.A., solely as Successor
14      Trustee to Bank of America, N.A., as Successor to La Salle
        Bank, N.A., as Trustee for the Holders of the Merrill
15      Lynch First Franklin Mortgage Loan Trust, Mortgage Loan
        Asset-Backed Certificates, Series 2007-1, and U.S. Bank,
16      N.A., solely as Successor Trustee to Bank of America,
        N.A., as Successor Trustee to LaSalle Bank, N.A., as
17      Trustee for the Holders of the First Franklin Mortgage
        Loan Trust, Mortgage Loan Asset-Backed Certificates,
18      Series 2007-FFC:

19              NATALIE L. WINSLOW, ESQ.
                Akerman LLP
20              1160 Town Center Drive
                Suite 330
21              Las Vegas, Nevada 89144
                (702) 634-5000

22

23

24

25
```

Daunshari  Wong-Culotta     October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page 4

```
 1                        I N D E X

 2     Witness:  DAUNSHARI WONG-CULOTTA

 3                          Examination     Further Examination
       By Ms. Winslow            5                  --
 4

 5

 6

 7                    E X H I B I T S

 8     Defendants'                                    Page

 9     A - Notice of Deposition.........................    7
       B - Foreclosure Deed............................   13
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Daunshari  Wong-Culotta     October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page 5

```
 1      (In an off-the-record discussion held prior to the

 2      commencement of the deposition proceedings, counsel

 3      agreed to waive the court reporter requirements under

 4      Rule 30(b)(4) of the Nevada Rules of Civil Procedure.)

 5      Whereupon --

 6                     DAUNSHARI WONG-CULOTTA,

 7      being first duly sworn to tell the truth, the whole truth,

 8      and nothing but the truth, was examined and testified as

 9      follows:

10             THE WITNESS:  On the record, I am very hard of

11      hearing, so you'll have to speak up for me.

12                              EXAMINATION

13      BY MS. WINSLOW:

14         Q.  Okay.

15         A.  You're good.

16         Q.  And if you don't hear me --

17         A.  Okay.

18         Q.  -- just let me know and I'll --

19         A.  Okay.

20         Q.  I have a high voice, so --

21         A.  You're good.  That's why I can hear you.  I can't

22      hear him and I couldn't hear you.

23         Q.  Can you please state and spell your name for the

24      record?

25         A.  Yes.  It's Daunshari, D-a-u-n-s-h-a-r-i, last name
```

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1    is Wong, W-O-N-G, hyphen, Culotta, C-U-L-O-T-T-A.

 2        Q.   Have you had your deposition taken before?

 3        A.   Yes, I have.

 4        Q.   How many times?

 5        A.   A handful; five.

 6        Q.   Okay.  And were they all with respect to HOA

 7    foreclosure sales?

 8        A.   Yes.

 9        Q.   Okay.  So the oath that you just took would be the

10    same oath that you would have taken in a court of law, and

11    it carries with it the same penalties of perjury as if you

12    had taken it in a court of law.  Do you understand?

13        A.   Yes.

14        Q.   Okay.  I'm going to ask that you answer my

15    questions fully unless your attorney advises you not to,

16    okay?

17        A.   Yes.

18        Q.   Are you on any medications that would interfere

19    with your ability to provide complete and truthful

20    testimony today?

21        A.   No.

22        Q.   Is there any reason at all that you can't give

23    your best testimony today?

24        A.   No.

25        Q.   What did you do to prepare for your deposition
```

Daunshari  Wong-Culotta     October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page  7

```
 1    today?
 2       A.  Nothing.
 3       Q.  Did you review the deposition notice that my
 4    office served on your counsel?
 5       A.  No.
 6       Q.  Okay.  I'm going to mark that as Exhibit A, and
 7    what I want you to do is take a look at the topics listed
 8    in the deposition notice and let me know if you're
 9    prepared to testify on behalf of RJRN, LLC as to those
10    topics today, okay?
11       A.  Yes.
12            (Defendants' Exhibit A was marked for
13             identification.)
14    BY MS. WINSLOW:
15       Q.  The topics start on page 4.
16       A.  Okay.
17       Q.  Are you the -- are you prepared to testify to --
18       A.  I am.
19       Q.  -- those topics today?
20            Great.  Are you currently employed?
21       A.  I'm self-employed.
22       Q.  Do you own a business?
23       A.  I do.
24       Q.  And what is the name of your business?
25       A.  CSC Acquisitions And Holding Group, LLC.
```

Daunshari  Wong-Culotta     October 12, 2015
30(b)(6) Representative for RJRN, LLC

1        Q.  And what is the business address of CNC

2   Acquisition And Holdings Group (sic)?

3        A.  Okay.  It's CSC.

4        Q.  Oh, CSC?

5        A.  Yes.

6        Q.  Great.  Thank you.

7        A.  2920 North Green Valley Parkway, Building 2, Suite

8   218, Henderson, Nevada 89014.

9        Q.  And what is your role with CSC Acquisition And

10   Holdings (sic)?

11        A.  I'm the owner.

12        Q.  What does CSC Acquisition And Holdings do as a

13   business?

14        A.  It's a research vehicle, and it holds investments

15   that I would buy at the HOA auction or traditional auction

16   houses and then hold them and distribute them to

17   investors.

18        Q.  Okay.  And is one of the investors for CSC

19   Acquisition And Holdings RJRN Holdings, LLC?

20        A.  I am a member of RJRN.  They are not a member of

21   CSC.

22        Q.  Okay.  Who are the other members of RJRN?

23        A.  Rahoul Sharon, R-O-U-H-L (sic) S-H-A-R-A-N (sic),

24   Nevin Sangha and Ryan Hogge.

25        Q.  Can you spell those for our court reporter?

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

1        A.   Ryan Hogge, R-Y-A-N H-O-G-G-E, I believe.  Nevin,

2    N-E-V-I-N, Sangha --

3        Q.   I think it's S-A-N-G-H-A.

4        A.   Thank you.

5        Q.   What is the business purpose of RJRN Holdings,

6    LLC?

7        A.   They're an investment group that buys traditional

8    and HOA portfolio owned homes.

9        Q.   How many properties does RJRN own?

10       A.   That I know of, 32, but they could hold more.

11       Q.   Okay.  Generally how does RJRN become aware that

12   the property is for sale at an HOA foreclosure?

13       A.   Me, CSC Acquisitions.

14       Q.   And how does CSC Acquisition And Holdings become

15   aware that a property is for sale?

16       A.   Public notification.

17       Q.   What public notification?

18       A.   Foreclosureradar.com.

19       Q.   Anything besides foreclosureradar.com?

20       A.   NAS.

21       Q.   How do you learn from NAS?

22       A.   They publicly give you an e-mail.

23       Q.   Okay.

24       A.   If you've been a buyer before, they'll actually

25   send you another e-mail.

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page  10

1          Q.   And the e-mail would say what properties are --

2          A.   Correct.

3          Q.   -- going for sale at their foreclosures?

4          A.   Yes.

5          Q.   Is there any other way that you would learn that

6     properties were for sale?

7          A.   No.

8          Q.   Would this have been the same process in the year

9     2013?

10          A.   Yes.

11          Q.   How does RJRN prepare for the purchase of

12     properties?

13          A.   I do the research for the entity on

14     foreclosureradar.com and the assessor's page.

15          Q.   And when you do research on foreclosureradar.com,

16     what are you looking for?

17          A.   Primarily personally when I buy I look for the

18     chain of title, the history of chain of title.

19          Q.   Okay.

20          A.   I don't care about anything else but that.

21          Q.   And why is it that you care about the chain of

22     title?

23          A.   Because it's important for me to understand where

24     it is with the bank foreclosure notification process of

25     assignments if the bank is still around, a plethora of

Daunshari Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

1    different issues I look for.

2        Q.   Okay.  And you said a minute ago that RJRN learns

3    of properties for sale through -- by CSC Acquisition And

4    Holdings; correct?

5        A.   Correct.

6        Q.   How does CSC Acquisition And Holdings let RJRN

7    know that properties are for sale?

8        A.   After I bought them.  There was never any

9    preparation to them.  They would wire me money, they would

10   tell me what their expectations were in terms of cost per

11   unit and I did all the research.

12       Q.   Okay.  And when you say "they," you're talking

13   about RJRN?

14       A.   That's correct.

15       Q.   And was there a particular person at RJRN that

16   would tell you those sorts of things?

17       A.   No.  No.

18       Q.   Who at RJRN decides whether to purchase a

19   property?

20       A.   Me.

21       Q.   Do any of the other members have any input?

22       A.   No.

23       Q.   Okay.  How does RJRN determine how much to bid for

24   a property?

25       A.   Basically market research that I would provide.  I

Daunshari Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

 1    wouldn't go above a certain amount that I felt comfortable

 2    with paying for an HOA lien, because I never believed we

 3    would own them.  So my formula was to keep them for 18 to

 4    24 months to capture the rent, recapture the rent, and if

 5    the bank came in and foreclosed, no harm, no foul.

 6        Q.  Okay.  Now, the property at issue in this lawsuit

 7    is 6809 Cobre, C-O-B-R-E, Azul, A-Z-U-L, Avenue, #201.

 8    RJRN purchased this property at an HOA foreclosure sale;

 9    correct?

10        A.  Yes.

11        Q.  And did RJRN learn of this property -- well, how

12    did RJRN first learn about this property?

13        A.  I cannot say for sure.  It was either

14    foreclosureradar.com or it was from NAS.

15        Q.  Okay.

16        A.  Either of those.

17        Q.  Does RJRN buy properties from HOA trustees other

18    than NAS?

19        A.  Yes.

20        Q.  Okay.  Does RJRN discern at all between the HOA

21    trustees from whom it's going to --

22        A.  No.

23        Q.  -- purchase properties?

24            No?

25        A.  No.

All-American Court Reporters (702) 240-4393
www.aacrlv.com

Daunshari  Wong-Culotta     October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1       Q.  Do you recall when the HOA foreclosure sale for
 2  this property was?
 3       A.  No.
 4       Q.  If I showed you a foreclosure deed, would that
 5  give you an idea?
 6       A.  For the record, I did see in that stack NAS'
 7  purchase agreement, but I don't remember the date.
 8       Q.  Okay.  Let me give you the foreclosure deed and
 9  see if that will help.
10              (Defendants' Exhibit B was marked for
11               identification.)
12              THE REPORTER:  Exhibit B.
13  BY MS. WINSLOW:
14       Q.  So if we look at Exhibit B, about four lines from
15  the bottom --
16       A.  Uh-huh.
17       Q.  -- it says that the property was -- said property
18  was sold by said agent on behalf of Mariposa at public
19  auction on September 13th, 2013.  Do you have any reason
20  to doubt that that was the date of the foreclosure sale?
21       A.  No.
22       Q.  Okay.  Do you know where the foreclosure sale
23  occurred for this property?
24       A.  Yes.
25       Q.  Where was it?
```

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page  14

```
 1        A.  At their office, NAS' office.

 2        Q.  Okay.  And have you purchased -- have you

 3   purchased properties from NAS prior to this --

 4        A.  Yes.

 5        Q.  -- purchase?

 6        A.  Uh-huh.

 7        Q.  And are the properties always at NAS' office?

 8        A.  They were not.  They were downtown in the

 9   beginning, probably 2012, and then they switched over to

10   having it at their own facility.

11        Q.  Okay.  Do you recall who at NAS conducted the sale

12   for this property?

13        A.  Misty Blanchard.

14        Q.  Do you recall how many properties were for auction

15   on that date?

16        A.  I do not.

17        Q.  Did you bid on any other properties on that date?

18        A.  Yes.

19        Q.  How many other properties?

20        A.  I do not recall.

21        Q.  Were you the successful bidder for any other

22   properties on that date?

23        A.  I do not recall.

24        Q.  What was the maximum amount that you were willing

25   to pay for this property?
```

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1        A.   15,000.

 2        Q.   And how did you come up with that amount?

 3        A.   Whatever I felt comfortable purchasing it for.

 4        Q.   By looking at the documents recorded against the

 5   property?

 6        A.   No.

 7        Q.   Okay.

 8        A.   I did it by knowing the market in terms of rental,

 9   like condo rentals.  Recouping price, basically.

10        Q.   Do you recall how many bidders bid for this

11   property?

12        A.   I do not, but I did see today in that document

13   that I believe there was two.

14        Q.   And when you say "that document," you're talking

15   about the documents that NAS provided; correct?

16        A.   That's correct.  That's correct.

17        Q.   Was there anyone that you knew that bid on this

18   property?

19        A.   I cannot recall.

20        Q.   Did you talk to anyone at the HOA foreclosure sale

21   about this property prior to the sale?

22        A.   No.

23        Q.   Have you ever asked a bidder not to bid on a

24   particular property?

25        A.   No.
```

Daunshari Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

Page 16

```
 1       Q.  Has another bidder ever asked you not to bid on a
 2   particular property?
 3       A.  No.
 4       Q.  How much did you pay for this property?
 5       A.  13,100.
 6       Q.  And how did you pay?
 7       A.  Cashier's checks.
 8       Q.  After the sale of the property, did you go into
 9   the property?
10       A.  No.
11       Q.  Do you have -- do you hire someone to go into the
12   property?
13       A.  Yes.
14       Q.  And can you explain how that process works?
15       A.  Absolutely.  I buy the properties, and then I give
16   them over to a management company, which is Powerhouse
17   Platinum Management Company, and they do all of the
18   notices, basically, the rent-ready work and the property
19   management agreements.
20       Q.  Was the property occupied by anyone when you
21   purchased it?
22       A.  I can't -- I don't know.
23       Q.  Okay.
24       A.  I've never been in this property, just so you
25   know.
```

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

1       Q.   Does someone live in the property now?

2       A.   Yes.   There's a rental -- there's a renter in

3    there.

4       Q.   And RJRN has a rental agreement with the renter?

5       A.   I'm sorry?

6       Q.   RJRN has a rental agreement with the renter?

7       A.   Yes.   The property management does, yes.

8       Q.   Okay.   Have you had any contact with Regina Davis

9    regarding this property?

10       A.   No.

11       Q.   How many properties have you purchased from NAS?

12       A.   Hundreds.

13       Q.   Okay.

14       A.   Do you want me to say I don't recall or --

15       Q.   Well, it brings up a good point.   I'm entitled to

16    your best estimate of how many.   I don't want you to

17    guess, though.

18       A.   Well, NAS, not hundreds, but through the group --

19    I don't know.

20       Q.   Okay.

21       A.   I cannot tell you, honestly.

22       Q.   Do you have any sort of contract with NAS

23    regarding the purchase of properties?

24       A.   No.

25       Q.   Did you know anyone employed at NAS in 2013?

Daunshari  Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1        A.  Yes.

 2        Q.  Who did you know that was employed there?

 3        A.  I knew Misty Blanchard and Elissa Hollander.

 4        Q.  And how did you know Ms. Blanchard and

 5   Ms. Hollander?

 6        A.  Just through the auctions.

 7        Q.  Okay.  Did you speak to anyone at NAS about this

 8   property prior to the HOA foreclosure sale?

 9        A.  No.

10        Q.  Did you pay anything other than the $13,100 to NAS

11   for this property?

12        A.  No.

13        Q.  Have you purchased any other properties that are

14   part of the homeowners association called Mariposa

15   Homeowners Association?

16        A.  I do not know.

17        Q.  Did you know anyone employed at Mariposa in 2013?

18        A.  No.

19        Q.  Did you speak to anyone at Mariposa about this

20   property prior to the HOA foreclosure sale?

21        A.  No.

22        Q.  Did you pay anything other than the $13,000 --

23   $13,100 to Mariposa for this property?

24        A.  No.

25             MS. WINSLOW:  I don't have anything else.
```

Daunshari  Wong-Culotta     October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1                MR. CLAYTON:  I have nothing.  We're done.

 2                (Discussion off the record.)

 3                (Thereupon, the taking of the deposition was

 4                 concluded at 3:01 p.m.)

 5                        *   *   *   *   *

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Daunshari Wong-Culotta    October 12, 2015
30(b)(6) Representative for RJRN, LLC

```
 1                         CERTIFICATE OF REPORTER

 2

 3      STATE OF NEVADA   )
                          )  ss:
 4      COUNTY OF CLARK   )

 5

 6              I, Terri M. Hughes, CCR No. 619, do hereby
        certify:  That I reported the Deposition of DAUNSHARI
 7      WONG-CULOTTA, 30(b)(6) Representative of RJRN, LLC,
        commencing on Monday, October 12, 2015, at 2:44 p.m.
 8              That prior to being deposed, the witness was
        duly sworn by me to testify to the truth, the whole truth
 9      and nothing but the truth.  That I thereafter transcribed
        my said shorthand notes into typewritten form, and that
10      the typewritten transcript of said deposition is a
        complete, true and accurate transcription of my said
11      shorthand notes.  That prior to the conclusion of the
        proceedings, pursuant to NRCP 30(e) the reading and
12      signing of the transcript was not requested by the witness
        or a party.
13              I further certify that I am not a relative or
        employee of counsel of any of the parties, nor a relative
14      or employee of the parties involved in said action, nor a
        person financially interested in said action.
15              IN WITNESS WHEREOF, I have set my hand in my
        office in the County of Clark, State of Nevada, this 26th
16      day of October, 2015.

17

18

19

20

21

22                                      _____
                                        Terri M. Hughes, CCR No. 619
23

24

25
```

# Exhibit M –
## Real Estate Purchase and Sale Agreement

# REAL ESTATE PURCHASE AND SALE AGREEMENT

This Real Estate Purchase and Sale Agreement ("Agreement") hereby executed and effective on this _____ day of _____, 2015 and between _RJRN, LLC_, a limited liability company, ("Seller") and, _RH Kids, LLC_, A Nevada Limited Liability Company. ("Purchaser").

Seller shall sell and convey and Purchaser shall purchase the real property identified in the attached addendum entitled "Exhibit A." This sale includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below.

A. The total purchase price for each property is that which identified in "Exhibit A" shall be paid by Purchaser. The total amount to be paid for all properties described in this agreement shall be $70,000.00 to be payable by cashier's check or wire at the time of closing, to Seller or to the Seller's Attorney.

B. Rent, Escrows & Security Deposits

Each party shall bear the risk of loss and burden of insurance while in possession of the property. Property taxes and HOA fees shall be the responsibility of the buyer. Seller warrants that all property taxes and HOA fees are current at the time of the execution of this agreement. Any amounts for HOA fees or property taxes which remain outstanding at the time of execution shall be paid in full within 5 days of the agreement.

C. Conditions of Property

All mechanical systems and fixtures thereon, including, but not limited to, appliances are sold "as is". Purchaser acknowledges that Seller makes no warranties as to the physical condition, marketable title, or value of the property.

D. Assignment of Leases and Proration of Rents

Seller and Buyer agree and covenant that Seller shall assign and convey to buyer all rights to any lease or other beneficial contract associated with the subject properties. For each property which is subject to a lease or other beneficial contract, Seller and Buyer agree that buyer shall be entitled to the prorated amount of all rents paid on the subject properties for the rental period in which this agreement is executed. The amounts due shall be identified in the addendum entitled "Exhibit B"

E. Assignment of Causes of Action
Seller conveys and assigns to Buyer any and all causes of action which may be associated with the subject property, without limitation.

F. Broker

Each party warrants to the other that it has not dealt with any real estate broker in connection with this sale and that any fees associated with a real estate broker shall be borne by the party which failed to disclose same.

G. Successors and Assignees

The terms and conditions of this Agreement shall bind all successors, heirs, administrators, trustees, executors, and/or assignees of the Parties, and shall not be voidable for any reason not expressly discussed in this agreement.

H. Execution in Counterparts

This Agreement may be executed in counterparts and by facsimile signatures. This Agreement shall become effective as of the date of the last signature.

I. Additional Terms and Conditions

Seller and Purchaser acknowledge the following: **There are one or more clouds on title. No title insurance is provided with this sale. No warranties or representations are provided with this sale.** Buyer and Seller agree that Buyer is taking title to the property subject to any and all encumbrances which are currently recorded against the property, including deeds of trust, HOA assessments, and other liens. This is a direct sale between the seller and the buyer. No real estate broker represents either party. There are no commissions or closing costs or fees. The Buyer pays the Clark County transfer tax. Ownership is conveyed through a Quitclaim Deed ready to be recorded. The buyer will pay in full on or before recording at the County Recorder's Office. The buyer is responsible for recording the Quitclaim Deed at the Clark County Recorder's office.

J. Hold Harmless and Indemnification

Purchaser undertakes to indemnify Seller from any and all liability, loss, or damage Seller may suffer as a result of claims, demands, costs, or judgments against Seller arising from the sale of this real property, or any substantially related matter.

K. Attorney Conflict Waiver

Each party acknowledges that the Law Office of Mike Beede, PLLC represents both parties to this transaction in a variety of matters. Each party expressly waives any and all conflicts which may arise as a result of this concurrent representation. Each party has been afforded an opportunity to see fully independent legal counsel to evaluate this transaction. Each party assumes full and complete responsibility and liability for any

RHK0270

result of this potential conflict and expressly indemnifies the Law Office of Mike Beede, PLLC for any error, act, or omission arising from this transaction.

Seller Signature _____

Buyer Signature _____

L.  Governing Law and Consent to Jurisdiction

This legal and binding Agreement will be construed under the laws of the State of Nevada, regardless of conflict of law principles. Parties voluntarily consent to the jurisdiction of all courts in the State of Nevada to interpret, enforce, and resolve any disputes arising from or related to this Agreement.

M.  Miscellaneous

1.  Neither this Agreement nor any provision herein may be waived, changed amended, or cancelled except by signed written instrument.
2.  Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this Agreement may require it.
3.  The captions in this Agreement are for convenience or reference only and in no way define, limit, or describe the scope of this Agreement and shall not be considered in the interpretation of this Agreement or any provision hereof.
4.  Each party shall, at any time and from time to time, execute and acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry

N.  Entire Agreement

There are no other agreements, promises, or understandings between these parties, except as specifically set forth in this Agreement.

By signing this Agreement the parties hereto certify that they have read, understood, and agreed to the terms as set forth in this Agreement. If any part of this Agreement was not understood by a party, that party sought competent legal advice prior to signing this Agreement.

Dated: _____

RJRN , LLC
By Daunshari Wong-Culotta

Dated: _____

RH Kids, LLC
By:  Ron Hakakian

RHK0271

# **Exhibit A**

In reference to the Real Estate Purchase and Sale Agreement executed between RJRN, LLC and RH Kids, LLC, the following properties shall be sold by RJRN, LLC to RH Kids, LLC. These properties are sold as-is, without warranty. The total purchase price for all properties identified herein is $70,000. A separate deed will be executed by RJRN, LLC for the property that follows.

**5234 Fire Night Ave., Las Vegas, NV, 89122**

APN 161-28-316-025

Purchase Price: $70,000

RHK0272

# **Exhibit B**

In reference to the Real Estate Purchase and Sale Agreement executed between RJRN, LLC and RH Kids, LLC, the following properties are subject to lease agreements which are managed by Powerhouse Platinum Realty. The parties agree that Powerhouse Platinum Realty shall remain as the property manager for each of these properties until at least the end of the current lease term. Identified below are the current lease payment amounts for each property. Leases shall be provided at the time of closing. Buyer shall be entitled to a payment equal to the pro-rated rent amounts for each property for the month of November at a rate of 50%, less month costs, including, but not limited to HOA Assessments and Management Fees.

**5234 Fire Night Ave., Las Vegas, NV, 89122**

Monthly Rent: $850.00

RHK0273

# Exhibit N –

*Stone Hollow Avenue Trust v. Bank of America, N.A.,* Order Vacating and Remanding

IN THE SUPREME COURT OF THE STATE OF NEVADA

STONE HOLLOW AVENUE TRUST,
Appellant,
vs.
BANK OF AMERICA, NATIONAL
ASSOCIATION,
Respondent.

No. 64955

**FILED**

MAR 1 8 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER VACATING AND REMANDING*

This is an appeal from a district court summary judgment, certified as final under NRCP 54(b), in a quiet title action. Eighth Judicial District Court, Clark County; Susan Scann, Judge.

The district court found that respondent had tendered the superpriority lien amount to Heritage Estates Homeowners Association, but that Heritage nevertheless conducted a foreclosure sale at which appellant purchased the subject property for $6,700. Over appellant's objection that it was a bona fide purchaser, the district court granted summary judgment in favor of respondent, reasoning that Heritage's rejection of respondent's tender resulted in appellant taking title to the property subject to respondent's deed of trust.

This court addressed a similar fact pattern in *Shadow Wood Homeowners Ass'n, Inc. v. New York Community Bancorp, Inc.*, 132 Nev., Adv. Op. 5, ___ P.3d ___ (2016). In *Shadow Wood*, we recognized that a quiet title action is equitable in nature and, as such, a court must consider the "entirety of the circumstances that bear upon the equities." *Id.* In particular, we noted that when a putative bona fide purchaser has no notice of a pre-sale dispute between a tendering party and an HOA, the district court must take into account the potential harm to the bona fide purchaser when fashioning its equitable remedy.

16-08656

Here, as in *Shadow Wood*, appellant proclaimed to be a bona fide purchaser, and there is no evidence in the record to suggest that appellant had notice of the pre-sale dispute between respondent and Heritage. Because the district court did not take into account appellant's putative status as a bona fide purchaser when it granted summary judgment, we conclude that summary judgment in respondent's favor may not have been proper. Accordingly, we

ORDER the judgment of the district court VACATED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Hardesty

_____, J.      _____, J.
Saitta                             Pickering

cc:   Hon. Susan Scann, District Judge
      Kerry P. Faughnan
      Greene Infuso, LLP
      Akerman LLP/Las Vegas
      Eighth District Court Clerk

# Exhibit O –

*Stone Hollow Avenue Trust v. Bank of America, N.A.*, Order Granting Petition for Rehearing, Vacating Prior Order, and Affirming

# IN THE SUPREME COURT OF THE STATE OF NEVADA

STONE HOLLOW AVENUE TRUST,
Appellant,
vs.
BANK OF AMERICA, NATIONAL
ASSOCIATION,
Respondent.

No. 64955

**FILED**

AUG 1 1 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER GRANTING PETITION FOR REHEARING, VACATING PRIOR ORDER, AND AFFIRMING

Having considered the petition for rehearing and answer to the petition, we have determined that rehearing of this matter is warranted, as this court gave undue significance to the fact that respondent's $198 tender was rejected by Heritage Estates Homeowners Association. *See* NRAP 40(c)(2)(A). Specifically, because appellant did not dispute that $198 was adequate to pay off the superpriority portion of Heritage Estates' lien, it follows that Heritage Estates was unjustified in rejecting respondent's tender of that amount.[1] When rejection of a tender is unjustified, the tender is effective to discharge the lien. *See, e.g., Hohn v. Morrison*, 870 P.2d 513, 516-17 (Colo. App. 1993); *Lanier v. Mandeville Mills*, 189 S.E. 532, 534-35 (Ga. 1937); *Fed. Disc. Corp. v. Rush*, 257 N.W. 897, 899 (Mich. 1934); *Segars v. Classen Garage & Serv. Co.*, 612 P.2d 293, 295-96 (Okla. Civ. App. 1980); *Reynolds v. Price*, 71 S.E. 51, 53 (S.C. 1911);

---

[1]Appellant argues in its answer to the rehearing petition that Heritage Estates was justified in rejecting the tender because respondent made the tender conditional. We decline to consider this argument because it was not raised either in district court or on appeal.

16-24873

*Karnes v. Barton*, 272 S.W. 317, 319 (Tex. Civ. App. 1925); *Hilmes v. Moon*, 11 P.2d 253, 260 (Wash. 1932); *see also* 59 C.J.S. *Mortgages* § 582 (2016).

Therefore, at the time of Heritage Estates' foreclosure sale, the superpriority portion of Heritage Estates' lien had been discharged, leaving only the subpriority portion of the lien to be foreclosed. Because respondent's deed of trust was superior to that portion of Heritage Estates' lien, the deed of trust was not extinguished by virtue of the sale to appellant. Accordingly, the district court correctly determined as a matter of law that appellant took title to the property subject to respondent's deed of trust. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (reviewing a district court's summary judgment de novo). We therefore vacate our March 18, 2016, disposition and in its place enter this order affirming the district court's summary judgment.

It is so ORDERED.

_____, J.
Hardesty

_____, J.                    _____, J.
Saitta                                          Pickering

cc:    Eighth Judicial District Court Dept. 29
       Kerry P. Faughnan
       Greene Infuso, LLP
       Akerman LLP/Las Vegas
       Eighth District Court Clerk



# Exhibit P –

*RJRN Holdings LLC v. Rhonda Davis,* Third-Party Plaintiff RH Kid's Response to Defendant Bank of America, N.A.'s First Set of Interrogatories

1

**LAW OFFICE OF MIKE BEEDE, PLLC**
MICHAEL N. BEEDE, ESQ.

2

Nevada Bar No. 13068
CHERYL A. GRAMES, ESQ.

3

Nevada Bar No. 12752
2300 W. Sahara Ave. #420

4

Las Vegas, NV 89102

5

T: 702-473-8406
F: 702-832-0248

6

eservice@LegalLV.com

7

*Attorneys for Plaintiff/Counter-defendant RJRN HOLDINGS, LLC,*
*Third-Party Plaintiff/Counter-defendant RH KIDS, LLC, and Rex*

8

*Archambault*

9

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

10

11

RJRN HOLDINGS LLC,

CASE NO. 2:15-CV-01257-JCM-NJK

12

                    Plaintiff,

13

vs.

**THIRD-PARTY PLAINTIFF RH KID'S RESPONSE TO DEFENDANT BANK OF AMERICA, N.A.'S FIRST SET OF INTERROGATORIES**

14

RHONDA DAVIS; BAC HOME LOANS

15

SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP;

16

CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS'

17

ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through

18

10, inclusive,

19

                    Defendants,

20

RH KIDS, LLC,

21

                    Third-Party Plaintiff,
vs.

22

23

RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE

24

HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES;

25

HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10,

26

inclusive; ROE CORPORATIONS 1 through

27

10, inclusive,

28

                    Third-Party Defendants,

1

1  BAC HOME LOANS SERVICING, LP
   FKA COUNTRYWIDE HOME LOANS
2  SERVICING, LP

3                    Counterclaimant,

4           vs.

5  RH KIDS, LLC, a limited liability company
6  of unknown origin; RJRN HOLDINGS,
   LLC, a Nevada limited liability company;
7  REX ARCHAMBAULT, an individual,

8                    Counter-Defendants.
9

10

11         Pursuant to Rules 26 and 33 of the Nevada Rules of Civil Procedure, in answer to Bank

12  of America, N.A., fka BAC Home Loans Servicing, LP (hereinafter "BANA" or "Defendant")

13  Interrogatories, Third Party Plaintiff RH Kids, LLC (hereafter "RH Kids" or "Third Party

14  Plaintiff") hereby states as follows:

15                          **PRELIMINARY STATEMENT**

16         In responding to these interrogatories, you have been furnished with such information as

17  is presently available to RH Kids.  This may include hearsay and other forms of evidence that are

18  neither reliable nor admissible in evidence.  These answers and objections are not intended to be,

19  and should not be interpreted as, a waiver of any objection to the admissibility of any such

20  information on the grounds of privilege, work product doctrine, hearsay, relevance or any other

21  objection.

22         RH Kids has not yet completed discovery or trial preparation of this action with respect

23  to each and every claim.  The answers below provide the information currently known or

24  believed by RH Kids as a result of discovery and investigation completed to date.  RH Kids

25  reserves the right to produce or rely upon additional documents or facts subsequently recalled or

26  discovered and to assert additional objections and privileges as may be deemed necessary.

27         Additionally, these responses are given without prejudice to RH Kids right to produce at

28  trial subsequently discovered information omitted from these answers provided herein as a result

                                        2

of RH Kids's good faith mistake or oversight.  In addition, RH Kids hereby objects to each interrogatory to the extent that it calls for information protected by the attorney-client privilege and/or work product doctrine.

## **RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify any person providing substantive information to respond to Defendant's First Set of Requests for Production and/or these Interrogatories, including name, address, phone number, and identification of the requests with which the person assisted.

**ANSWER TO INTERROGATORY NO. 1:**

Ron Hakakian
c/o Law Office of Mike Beede, PLLC
2300 West Sahara Ave. Suite 420, Las Vegas, NV
702-473-8406

**INTERROGATORY NO. 2:**

Provide a summary of Your business purposes, if any. Your response should Identify, *inter alia,* what Your business does to generate revenue, income, and profit; how Your business does it; and whether You perform any services other than purchasing real estate.

**ANSWER TO INTERROGATORY NO. 2:**

Objection, this interrogatory is overly broad as it is not limited in time or scope, and is not likely to lead to the discovery of information related to the claims and defenses in this matter. Without waiving said objection, RH Kids responds as follows: RH Kids, LLC is a California limited liability company whose purpose is set forth in its Articles of Incorporation (which is being produced concurrently in response to Defendant's Requests for Production of Documents), and, generally, whose business purpose is the buying, selling, and leasing of real estate.

**INTERROGATORY NO. 3:**

Identify each of Your managers, officers, directors, owners, members, trustees, beneficiaries, and employees.

/ / /

/ / /

3

**ANSWER TO INTERROGATORY NO. 3:**

Objection, this request is overly broad as it is not limited in time or scope, and is not likely to lead to the discovery of information related to the claims and defenses in this matter. Without waiving said objections, RH Kids responds as follows: Ron Hakakian is the sole manager of RH Kids, LLC, and he resides in California.

**INTERROGATORY NO. 4:**

Identify whether You or any of Your managers, officers, directors, owners, members, trustees, beneficiaries, and/or employees are also managers, officers, directors, owners, members, trustees, beneficiaries, and/or employees of any of the following entities: (1) Hacienda North Homeowners Association, (2) Absolute Collection Services, LLC, and/or (3) RJRN Holdings, LLC.

**ANSWER TO INTERROGATORY NO. 4:**

Objection, this interrogatory is overly broad in that it is not limited in time or scope. Without waiving said objection, RH Kids responds as follows: RH Kids and its members has no affiliation with any of the other entities described in this interrogatory.

**INTERROGATORY NO. 5:**

State in detail all Facts that support Your contention that Defendant's security interest in the Property was extinguished by the HOA Foreclosure Sale.

**ANSWER TO INTERROGATORY NO. 5:**

Objection, this interrogatory calls for a legal conclusion regarding the extinguishment of Defendant's security interest. Without waiving said objection, RH Kids responds as follows: RH Kids refers Defendant to the Clark County Recorder's records for this parcel, which do not contain any recorded document prior to the HOA Foreclosure Sale indicating that Defendant paid the HOA lien amount to the HOA trustee prior to the sale.

Discovery continues, and RH Kids will supplement its Response should additional information become known to it that is responsive to this request.

/ / /

/ / /

4

**INTERROGATORY NO. 6:**

State in detail all Facts that support Your contention that the HOA Foreclosure Sale was properly noticed.

**ANSWER TO INTERROGATORY NO. 6:**

Objection, this interrogatory calls for a legal conclusion regarding whether the HOA Foreclosure Sale was properly noticed. Without waiving said objection, RH Kids responds as follows: the Trustee's Deed Upon Sale executed as a result of the HOA Foreclosure Sale contains recitals that are conclusive proof that all requirements of NRS 116 were complied with, including the mailing of all required notices. Moreover, the recording of the required notices with the Clark County Recorder indicate compliance with all statutory requirements under NRS 116.

Discovery continues, and RH Kids will supplement its Response should additional information become known to it that is responsive to this request.

**INTERROGATORY NO. 7:**

State in detail all Facts that support Your contention that the HOA Foreclosure Sale was properly conducted.

**ANSWER TO INTERROGATORY NO. 7:**

Objection, this interrogatory calls for a legal conclusion regarding whether the HOA Foreclosure Sale was properly conducted. Without waiving said objection, RH Kids responds as follows: the Trustee's Deed Upon Sale executed as a result of the HOA Foreclosure Sale contains recitals that are conclusive proof that all requirements of NRS 116 were complied with, including the mailing of all required notices. Moreover, the recording of the required notices with the Clark County Recorder indicate compliance with all statutory requirements under NRS 116.

Discovery continues, and RH Kids will supplement its Response should additional information become known to it that is responsive to this request.

/ / /

/ / /

1   **INTERROGATORY NO. 8:**

2       Identify whether You conducted any research or made any attempt to determine whether

3   any entity had satisfied or attempted to satisfy the super-priority portion of the HOA's lien prior

4   to the HOA Foreclosure Sale.

5   **ANSWER TO INTERROGATORY NO. 8:**

6       Objection, this interrogatory is overly broad as it is not limited by time, it is ambiguous,

7   and it seeks information not related to the claims and defenses in this matter.  Without waiving

8   said objections, RH Kids responds as follows:  RH Kids did not research whether any entity had

9   satisfied or attempted to satisfy the superpriority portion of the HOA's lien prior to the

10   foreclosure sale.

11   **INTERROGATORY NO. 9:**

12       Identify the consideration provided by You to RJRN Holdings, LLC for the purchase of

13   the Property.

14   **ANSWER TO INTERROGATORY NO. 9:**

15       Objection, this interrogatory is vague as to "consideration." Without waiving said

16   objection, RH Kids purchased the Property from RJRN Holdings, LLC for $70,000.00.

17   **INTERROGATORY NO. 10:**

18       Identify the number of properties You have purchased at HOA foreclosure sales or from

19   individuals or entities that purchased the respective property at an HOA foreclosure sale.

20   **ANSWER TO INTERROGATORY NO. 10:**

21       Objection, this interrogatory is overly broad and unduly burdensome as it is not limited

22   by time, and because it seeks information not related to the claims and defenses in this matter,

23   and it seeks information that is readily available to Defendant through public records.  Without

24   waiving said objections, to the best of its recollection, RH Kids has not ever purchased a

25   property at an HOA foreclosure sale.

26   / / /

27   / / /

28   / / /

6

**INTERROGATORY NO. 11:**

Provide a summary of any funds or resources You have expended in regard to the Property, including listing the date of each expenditure, the amount, and the reason for the expenditure.

**ANSWER TO INTERROGATORY NO. 11:**

RH Kids refers Defendant to RHK 19, which documents RH Kids' maintenance expenditures for the Property.

Discovery continues, and RH Kids reserves its right to supplement this response accordingly.

**INTERROGATORY NO. 12:**

Provide a summary of any rent or other income received by You related to the Property, including the date any income was received, the amount of the income, and the source of the income.

**ANSWER TO INTERROGATORY NO. 12:**

Objection, this interrogatory is vague and ambiguous with respect to the term "other income" and not likely to lead to the discovery of information related to the claims and defenses in this matter.   Without waiving said objections, RH Kids states as follows: Please see Residential Lease Agreement at RHK0274-285, from which Defendant can calculate the rent.

**INTERROGATORY NO. 13:**

State whether the Property is currently inhabited, and if so, Identify the following information:

(a)      by whom the Property is inhabited,

(b)      the terms of any rental agreement or lease by any current inhabitant, including:

(i)      the date the agreement or lease began,

(ii)      when it expires,

(iii)      the amount of rent paid, and

(iv)      how often the rent is paid.

/ / /

1  **ANSWER TO INTERROGATORY NO. 13:**

2    RH Kids refers Defendant to the Residential Lease Agreement at RHK0274-85.

3  **INTERROGATORY NO. 14:**

4    State and/or Identify the following with regard to the value of the Property at the time of

5  the HOA Foreclosure Sale:

6    (a) State in detail Your understanding of the fair market value of the Property;

7    (b) Identify the principal and material documents You relied on to support Your fair

8  market value calculation;

9    (c) State in detail whether You made a fair market value calculation in connection

10  with the HOA Foreclosure Sale or Your purchase of the Property from RJRN Holdings, LLC;

11  and

12    (d) Identify the person(s) with personal knowledge of Your responses to 11 (a)-(c).

13  **ANSWER TO INTERROGATORY NO. 14:**

14    Objection, this interrogatory is vague and confusing, and compound as to whether it

15  seeks information contemporaneous to the time of the HOA foreclosure sale (which RH Kids did

16  not attend) or to the time at which RH Kids purchased the Property from RJRN Holdings.

17  Furthermore, to the extent it seeks information contemporaneous to the HOA foreclosure sale, it

18  seeks information no relevant to the claims and defenses in this matter.  Without waiving said

19  objections, RH Kids purchased the Property for $70,000.00.   Mr. Hakakian has personal

20  knowledge of this.

21  **INTERROGATORY NO. 14 (labeled a second Interrogatory No. 14):**

22    If You contend that Defendant had actual or constructive knowledge of any assessments

23  or costs allegedly owed to the HOA related to the Property prior to the HOA Foreclosure Sale,

24  state all Facts that support such contention.

25  **ANSWER TO INTERROGATORY NO. 14 (labeled a second Interrogatory No. 14):**

26    Objection, this interrogatory calls for legal conclusions regarding notice given to

27  Defendant.  Without waiving said objections, RH Kids responds as follows:  NRS 116 provides

28  for a lien for regular assessments which attaches and perfects at the recording of the NRS 116

declaration.  NRS 116 was in effect at the time Defendant's deed of trust came into existence. Defendant has been constructively aware of amounts owed to the HOA from the granting of its deed of trust. Furthermore, Defendant has provided no evidence that would challenge anything in the deed recitals. Specifically, the Trustee's Deed Upon Sale executed as a result of the HOA Foreclosure Sale contains recitals that are conclusive proof that all requirements of NRS 116 were complied with, including the mailing of all required notices. Moreover, the recording of the required notices with the Clark County Recorder indicate compliance with all statutory notice requirements under NRS 116.

Discovery continues and RH Kids reserves its right to supplement this response accordingly.

**INTERROGATORY NO. 15:**

Identify all Communications between You and the HOA concerning the Property, whether verbal or in writing, including the date of the communication, the parties to the communication, and the substance of the communication.

**ANSWER TO INTERROGATORY NO. 15:**

Objection, this interrogatory is overly broad as it is not limited in time or scope.  Without waiving said objection, RH Kids responds as follows: RH Kids had no communication with the HOA concerning the Property prior to its purchasing the Property.

Discovery continues and RH Kids reserves its right to supplement this response accordingly.

**INTERROGATORY NO. 16:**

Identify all Communications between You and Absolute Collection Services, LLC concerning the Property, whether verbal or in writing, including the date of the Communication, the parties to the Communications, and the substance of the Communication.

**ANSWER TO INTERROGATORY NO. 16:**

Objection, this interrogatory is overly broad as it is not limited in time or scope.  Without waiving said objection, RH Kids responds as follows: RH Kids has had no communication with Asset Recovery Service concerning the Property.

**INTERROGATORY NO. 17:**

Identify all Communications between You and RJRN Holdings, LLC, concerning the Property, whether verbal or in writing, including the date of the Communication, the parties to the Communications, and the substance of the Communication.

**ANSWER TO INTERROGATORY NO. 17:**

Objection, this interrogatory is overly broad as it is not limited in time or scope. Without waiving said objection, RH Kids refers Defendant to the Quitclaim Deed between RH Kids, LLC and RJRN Holdings, LLC, at RHK0001-2.

Discovery continues, and RH Kids will supplement its Response should additional information become known to it that is responsive to this request.

**INTERROGATORY NO. 18:**

State in detail all Facts that RJRN Holdings, LLC conveyed to You regarding the Property including, but not limited to, the quality of the title conveyed to RJRN Holdings, LLC from the HOA, and the quality of title RJRN Holdings, LLC conveyed to You.

**ANSWER TO INTERROGATORY NO. 18:**

Objection, this interrogatory is vague as to what the conveyance of facts means. RH Kids also objects on the grounds that this interrogatory is overly broad as it seeks information not relevant to the claims and defenses in this matter, and because it is not limited by time. Without waiving said objections, RH Kids does not recall discussing title with RJRN Holdings, LLC regarding this Property.

**INTERROGATORY NO. 19:**

State in detail all Facts that support Your contention, if any, that You are a bona fide purchaser of the Property.

**ANSWER TO INTERROGATORY NO. 19:**

Objection, this interrogatory calls for a legal conclusion regarding RH Kids' status as a bona fide purchaser. Without waiving said objection, RH Kids answers as follows:

Rex Archambault purchased the Property at the properly-conducted HOA Foreclosure Sale. Furthermore, Mr. Archambault gave valuable consideration for the Property at that time,

10

and had no knowledge of any defect in the Property.  There is no evidence to suggest that Mr. Archambault or RJRN Holdings engaged in any fraud, oppression, or unfairness related to the sale.  Therefore, under the standard articulated by the Nevada Supreme Court in *Shadow Wood Homeowners Ass'n v. N.Y. Cmty. Bancorp. Inc*, 366 P.3d 1105 (Nev. 2016), Mr. Archambault and RJRN Holdings, LLC were bona fide purchasers of the Property.

RH Kids then obtained title to the Property by way of a Quitclaim Deed, for consideration deemed proper between the two parties. Thus, RH Kids is also a bona fide purchaser of the Property.

Discovery continues and RH Kids reserves the right to supplement this response accordingly.

**INTERROGATORY NO. 20:**

Identify any research You performed prior to the HOA Foreclosure Sale and/or Your purchase of the Property to determine the value of the Property, all steps performed as part of that research, any Documents You created as a result of that research, and the present location of those Documents.

**ANSWER TO INTERROGATORY NO. 20:**

Objection, this interrogatory is vague and ambiguous with respect to the terms "research," "value of the Property," and "performed," and is overly broad as it is not limited in scope.  Without waiving said objections, RH Kids answers as follows: RH Kids does not recall conducting research specific to the Property or creating any documents related to any research efforts conducted relevant to the Property.

**INTERROGATORY NO. 21:**

Identify all Documents or Communications provided to You by RJRN Holdings, LLC from Absolute Collections Services, LLC or the Auctioneer at the HOA Foreclosure Sale, including, but not limited to, any Documents or Communications related to quality of title that would be conveyed to the winning bidder at the HOA Foreclosure Sale.

/ / /

/ / /

**ANSWER TO INTERROGATORY NO. 21:**

Objection, this interrogatory is overly broad as it seeks information not relevant to the claims and defenses in this matter, and because it is not limited by time.  Without waiving said objections, RH Kids does not recall discussing title with RJRN Holdings, LLC regarding this Property, and, with the exception of the quit claim deed previously disclosed, has no documents related to this interrogatory.

**INTERROGATORY NO. 22:**

Identify each person or entity that requested notice of the HOA Foreclosure Sale, including the notice of default or notice of sale in connection therewith including, but not limited to, pursuant to Nevada Revised Statute 107.090, 116.3116 and/or 116.311635.

**ANSWER TO INTERROGATORY NO. 22:**

Objection, this interrogatory is unduly burdensome because it seeks information from recorded documents equally available to Defendants, and is not limited by time.  Without waiving said objection, RH Kids responds as follows:  RH Kids is not aware of any such persons or entities.

**INTERROGATORY NO. 23:**

State in detail all Facts that relate to any request for notice of the HOA Foreclosure Sale, including the notice of default or notice of sale in connection therewith, including but not limited to pursuant to Nevada Revised Statute 107.090, 116.3116 and/or 116.311635.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12

**ANSWER TO INTERROGATORY NO. 23:**

Objection, this interrogatory in unduly burdensome because it seeks information from recorded documents equally available to Defendants, and is not limited by time.   Without waiving said objection, RH Kids responds as follows:   RH Kids is not aware of any such requests for notice.

DATED:  this 16th day of August 2016.

THE LAW OFFICE OF MIKE BEEDE, PLLC

_  /s/Cheryl Grames_____
By: MICHAEL BEEDE, Esq.
    Nevada Bar No. 13068
    CHERYL A. GRAMES, Esq.
    Nevada Bar No .12752
    2300 W. Sahara Ave. #420
    Las Vegas, NV 89102
    T: 702-473-8406
    F: 702-832-0248
    eservice@LegalLV.com
    *Attorneys for Plaintiff/Counter-defendant*
    *RJRN HOLDINGS, LLC, Third-Party*
    *Plaintiff/Counter-defendant RH KIDS,*
    *LLC, and Rex Archambault*

STATE OF _____ )
                      :ss
COUNTY OF _____ )

       Ron Hakakian, Manager of RH Kids LLC, being first duly sworn, deposes and says:

       That he is the Third-Party Plaintiff in the above-entitled action; that he has read the foregoing Answers to Interrogatories and knows the contents thereof, and that the same is true of his own knowledge except for those matters therein stated on information and belief, and as for those matters he believes them to be true.

_____
Ron Hakakian
Manager

SUBSCRIBED and SWORN to before me
this _____ day of _____, 20___.


_____
NOTARY PUBLIC in and for said
County and State.

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          **GOVERNMENT CODE § 8202**

☐ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____          _____
*Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_

DANIEL PUNO CANDELOZA
Commission # 2053465
Notary Public - California
Los Angeles County
My Comm. Expires Jan 13, 2018

Subscribed and sworn to (or affirmed) before me

on this _15th_ day of _August_, 20 _16_,
       Date      Month      Year
by
(1) _Ron Hakakian_

(and (2)_____ ),
       *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature_____
      *Signature of Notary Public*

*Seal*
*Place Notary Seal Above*

─────────── **OPTIONAL** ───────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____     Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, not interested in, this action. On August 16, 2016 I caused to be served a true and correct copy of the foregoing **THIRD-PARTY PLAINTIFF RH KID'S RESPONSE TO DEFENDANT BANK OF AMERICA, N.A.'S FIRST SET OF INTERROGATORIES** by the method indicated:

____X____ U.S. Mail

_____ U.S. Certified Mail

_____ Facsimile Transmission

_____ Federal Express

_____ Electronic Service via CM/ECF

_____ E-Mail

And addressed to the following:
Darren T. Brenner, Esq.
Thera A. Cooper, Esq.
Akerman LLP
1160 N. Town Center Dr. Suite 330
Las Vegas, NV 89144

By: __/s/Amanda Abril_____
An Employee of the Law Offices of  Mike Beede, PLLC

14

# Exhibit Q –

*Christina Trust v. K&P Homes et al.*, Order

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

_____

CHRISTINA TRUST,

               Plaintiff,

      vs.

K&P HOMES et al.,

               Defendants.

_____

2:15-cv-01534-RCJ-VCF

ORDER

This case arises out of a homeowners' association foreclosure sale. Pending before the Court is a Motion to Dismiss the Counterclaim (ECF No. 11) and a Counter-Motion for Summary Judgment (ECF No. 14). For the reasons given herein, the Court grants the motion to dismiss and denies the motion for summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

On or about July 25, 2007, Rita Wiegand purchased real property located at 7461 Glimmering Sun Avenue, Las Vegas, Nevada, 89178 (the "Property"), giving lender Universal American Mortgage Co., LLC ("UAMC") a promissory note for $284,200 (the "Note"), secured by a deed of trust (the "DOT") against the Property. (Compl. ¶¶ 5, 9–10, ECF No. 1). On January 30, 2014, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, f.k.a. Countrywide Home Loans Servicing, LP ("BOA"), assigned the Note and DOT to

Plaintiff Christina Trust. (*Id.* ¶ 13; Assignment, ECF No. 1-1, at 29).[1] After recording a Notice of Delinquent Assessment Lien (the "NDAL"), a Notice of Default and Election to Sell ("the "NOD"), and a Notice of Foreclosure Sale (the "NOS"), the Tuscalante Homeowners Association (the "HOA"), through its agent Nevada Association Services, Inc. ("NAS"), sold the Property at auction to Defendant K&P Homes ("K&P") for $40,000 on May 31, 2013. (Compl. ¶¶ 6, 11–12, 14–17). None of the pre-sale notices identified what portion of the HOA lien was for superpriority versus subpriority amounts, such as late fees, collection costs, interest, fines, etc., or provided any notice of a right to cure. (*Id.* ¶¶ 19–22). Furthermore, the HOA and NAS did not comply with notice requirements under Chapter 116 of the Nevada Revised Statutes ("NRS"). (*Id.* ¶ 26).

Plaintiff sued Defendant in this Court for unjust enrichment and to quiet title to the Property, i.e., for a declaration that the DOT still encumbers the Property because the HOA sale was not in accordance with Chapter 116, did not provide an opportunity to cure the default, was commercially unreasonable, and did not comport with due process.[2] K&P answered and filed a Counterclaim to quiet title to the Property, i.e., for a declaration that K&P is the title owner of the Property, that its deed is valid and enforceable, that the HOA sale extinguished Plaintiff's DOT, and that K&P's title is superior to any adverse interest in the Property. K&P also filed a Third-Party Complaint against Wiegand for the same declarations. Plaintiff has moved to

---

1 The Complaint contains no allegation of any assignment from UAMC to BOA, and neither the Assignment attached as Exhibit 3 or any other attachment indicates any such transfer. Plaintiff has sufficiently alleged beneficial ownership of the Note and DOT (reading the allegation that Plaintiff is the beneficiary of the DOT favorably to Plaintiff to imply that she is also the beneficiary of the Note), (*see* Compl. ¶ 5), but without further proof of the chain of assignment, the Complaint could probably not survive a summary judgment motion as to Plaintiff's standing.

2 The claim for a preliminary injunction is not a separate cause of action, and no motion for a preliminary injunction has been filed.

1    dismiss the Counterclaim.  K&P has opposed the motion and has moved for offensive summary

2    judgment on the Counterclaim.

3    **II.    LEGAL STANDARDS**

4            Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

5    claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

6    what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

7    (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

8    that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

9    12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

10   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

11   failure to state a claim, dismissal is appropriate only when the complaint does not give the

12   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

13   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

14   sufficient to state a claim, the court will take all material allegations as true and construe them in

15   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

16   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

17   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

18   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

19           A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a

20   plaintiff must plead facts pertaining to his own case making a violation "plausible," not just

21   "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556)

22   ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

23   draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is,

24

under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

///

### III.    ANALYSIS

Plaintiff argues against the Counterclaim on five bases: (1) NRS 116.3116 *et seq.* are unconstitutional under the Due Process Clause for lack of notice; (2) NRS 116.3116 is unconstitutional under the Takings Clause; (3) NRS 116.3116 is unconstitutional under the substantive component of the Due Process Clause of the federal and state Constitutions; (4) the interpretation of NRS 116.3116 by the Nevada Supreme Court in *SFR Invs. Pool I, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) is contrary to public policy; and (5) *SFR Invs. Pool I, LLC* should be applied only prospectively, i.e., only to HOA foreclosures occurring after the announcement of that opinion. The Court recently addressed each of these arguments (except the substantive due process argument) in a published case with similar facts. *See US Bank, N.A. v. SFR Invs. Pool 1, LLC*, --- F. Supp. 3d ----, 2015 WL 5023450 (D. Nev. 2015) (Jones, J.). In dismissing (with leave to amend) a similar quiet title Counterclaim by the buyer at the HOA sale against the first deed of trust holder, the Court rejected the second, fourth, and fifth arguments made here, *id.* at *5–7, accepted the first argument, *id.* at *8–14, and invited the third argument upon potential amendment, *id.* at *5–7.

The basis for the Court's dismissal of the Counterclaim in *US Bank* was that although Circuit law made clear that a litigant must allege direct state or local government involvement in a non-judicial foreclosure sale beyond mere creation of the non-judicial remedy to invoke the Due Process Clause as to his own claims and could not invoke the rule of *Shelley v. Kraemer*, 334 U.S. 1 (1948), such a litigant could invoke the rule of *Shelley* and the Due Process Clause in his capacity as a defendant or counterdefendant. *Id.* at *10–11. In cases such as *US Bank* and the present case, that means claims or counterclaims seeking judicial validation of non-judicial foreclosure sales are amenable to attack under the Due Process Clause (of the Fourteenth or Fifth

Amendments, respectively, depending on whether the case is decided in state or federal court) for lack of notice. *See id.* The Court determined that the notice requirements of Chapter 116 did not satisfy due process. *Id.* at *11–13. Because the counterplaintiff had alleged only compliance with Chapter 116 and had not further alleged having provided notice in a way that would satisfy due process, the Court dismissed the counterclaim with leave to amend. *Id.* at *14 ("In summary, the relevant statutes do not satisfy due process where a sale can be characterized as government action. SFR's Counterclaim for a declaration by this Court of the extinguishment of U.S. Bank's interest via the HOA foreclosure sale implicates government action under the rule of *Shelley* and the Due Process Clause of the Fifth Amendment. The Court therefore dismisses SFR's Counterclaim, with leave to amend. If SFR can affirmatively allege that it or its agent gave U.S. Bank constitutionally sufficient notice, i.e., personal or mailed notice, the Counterclaim should be permitted to proceed to summary judgment. As the Court has explained, *supra*, U.S. Bank's own quiet title claim cannot succeed on the due process issue without a showing of state action in the non-judicial foreclosure sale itself, but that issue is not now before the Court.").

Here, however, K&P has alleged more than mere compliance with Chapter 116's requirements. K&P has alleged that Christina Trust was "mailed by certified or registered mail, return receipt requested, a notice of sale for the Property." (Countercl. ¶ 15, ECF No. 8). Because K&P has sufficiently alleged having mailed Christina Trust notice of the sale, the Court will not dismiss the Counterclaim for a declaration that the sale extinguished Christina Trust's interest in the Property for lack of notice under *Shelley* and the Due Process Clause of the Fifth Amendment.

The Court now addresses the substantive due process issue. As the Court noted in *US Bank*, a federal court may strike down a state statute under the "substantive due process"

component of the Due Process Clause of the Fourteenth Amendment where a law deprives a

person of a right to life, liberty, or property that a court in its "reasoned judgment" believes is

"fundamental," even if the proffered right is not specifically listed in the Constitution, so long as

the right can be perceived from history, tradition, or "new insight." *Obergefell v. Hodges*, 135 S.

Ct. 2584, 2605 (2015) (liberty interest) ("[T]he Constitution contemplates that democracy is the

appropriate process for change, so long as that process does not abridge fundamental rights. . . .

[But] when the rights of persons are violated, the Constitution requires redress by the courts,

notwithstanding the more general value of democratic decisionmaking." (citations and internal

quotation marks omitted)); *see also Lochner v. New York*, 198 U.S. 45, 56–57 (1905) (liberty and

property interests) ("This is not a question of substituting the judgment of the court for that of the

legislature. . . . It is a question of which of two powers or rights shall prevail, the power of the

state to legislate or the right of the individual to liberty of person and freedom of contract."). A

court should only exercise its reasoned judgment to invalidate a democratically enacted law in

the absence of any clear constitutional requirement to do so after there has been "a quite

extensive discussion" concerning the right at issue in the halls of government and amongst the

general public. *Obergefell*, 135 S. Ct. at 2596.

Plaintiff argues that Chapter 116, or at least the Nevada Supreme Court's interpretation of

it contrary to how a reasonable lender would have understood it when giving his loan, deprives

Plaintiff and others of their fundamental right to property. Under that recent interpretation, a

first mortgage recorded before an HOA lien even arises is extinguished by a foreclosure of the

HOA lien so long as the declaration creating the HOA was recorded before the first mortgage

was. In other words, the mere recordation of an HOA declaration that could in theory give rise

to future HOA liens is treated under Chapter 116 as essentially constituting record notice of yet-nonexistent HOA liens.

The Court reserves judgment on the substantive due process issue and determines the motion under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) (recognizing limitations on the retroactive application of judicial rulings as a matter of common law equity), *abrogated in part by Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993) (holding that when the Supreme Court interprets federal law, inferior courts should as a default apply that interpretation retroactively). In *Huson*, the plaintiff sued his employer in 1968 for injuries sustained on the job in 1965. *Id.* at 98. Because the injury occurred on the Outer Continental Shelf, it was initially thought that the action was limited only by the laches doctrine under federal admiralty law, and that no state statute of limitations applied. *Id.* at 98–99. Before trial, however, the Supreme Court ruled in another case that admiralty law did not apply in cases such *Huson*, and state statutes of limitations applied. *Id.* at 99. The district court therefore applied a one-year state limitations period and granted summary judgment to the defendant. *Id.* The plaintiff argued on appeal that the intervening Supreme Court case should not be applied retroactively to bar actions before the holding was announced. *Id.* The Court of Appeals ruled that the district court had misread the intervening Supreme Court case, holding that laches, not any state statute of limitations was the only potential time-bar, and remanding for trial. *Id.* The Supreme Court granted certiorari and ruled that the district court had in fact read the disputed case properly but affirmed the Court of Appeals because the rule should not have been applied retroactively. *Id.*

In reaching that conclusion, the Court cited ten of its own cases dating as far back as the Civil War for the rule limiting the retroactivity of "judicial decisions" not only in criminal cases but also "in cases of nonconstitutional, noncriminal state law." *Id.* at 106 (collecting cases). The

Court identified three factors used to determine whether a rule of law should be applied by a court only prospectively, i.e., "nonretroactively":

> [(1)] the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed[; (2)] we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation[; and (3)] we have weighed the inequity imposed by retroactive application, for [w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* (citations and internal quotation marks omitted; final alteration in original).

Because the interpretation of the relevant statute in that case was a matter of first impression and overruled a long line of decisions by the Fifth Circuit, the first factor favored nonretroactivity. *Id.* at 107. The Court noted, "We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights." *Id.* (quoting *Griffin v. Illinois*, 351 U.S. 12, 26 (1956) (Frankfurter, J., concurring in the judgment)). The Court then noted that the purpose of the statute, as interpreted by the Court in the intervening case, was to afford comprehensive remedies to injured employees, and retroactive application in that case would have thwarted that purpose. *Id.* at 107–08. Finally, the results of retroactive application would have been inequitable because it would have punished the plaintiff for having purportedly slept on his rights at a time when he had no reason to suspect his remedy would be imperiled by delay. *Id.* at 108.

In the present case, the first factor weighs heavily against the retroactive application of *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014). It is not disputed that both the state and federal trial courts were in sharp disagreement as to whether an HOA foreclosure sale under NRS 116.3116 extinguished a prior-recorded first mortgage, *see id.* at 412

1  ("Nevada's state and federal district courts are divided on whether NRS 116.3116 establishes a

2  true priority lien."), and that the practice in the real estate industry prior to the announcement of

3  the Nevada Supreme Court's controversial decision was to treat such sales as not extinguishing

4  first mortgages, such that traditional investors would not bother to bid at such sales where the

5  home was worth less than the first mortgage.  At best, the decision "decid[ed] an issue of first

6  impression whose resolution was not clearly foreshadowed."

7          The second factor also weighs in favor of nonretroactivity.  The retroactive application of

8  the rule would not further the purpose of the rule—to ensure HOAs are quickly made whole on

9  the superpriority portions of their liens by pressuring banks to pay that amount before the HOA

10  foreclosure, on pain of losing their own security interests—beyond mere prospective application.

11  Indeed, in no case of which the Court is aware has an HOA failed to obtain a bid at auction

12  sufficient to cover its entire lien, not just the relatively small superpriority amount.  The real fight

13  is between mortgagees and speculators who gambled on an improbable interpretation of NRS

14  116.3116 and were able to capitalize on the confusion before banks caught on to the issue and

15  the Nevada Legislature imposed more stringent notice requirements.

16          The third factor also favors nonretroactivity.  The extinguishment of a first-recorded

17  mortgage via the foreclosure of a lien worth a tiny fraction of that mortgage, particularly where

18  notice to the mortgagee is not robust enough to satisfy basic principles of due process were the

19  foreclosing entity a state actor and where the extinguishment rule was not only unclear but

20  presumed within the relevant industry at the time of the foreclosure sale to be to the contrary,

21  would be an extremely, not just a substantially, inequitable result.

22           In summary, the Court cannot sanction the retroactive application of *SFR Investments*

23  *Pool 1* under the *Huson* test.  The remaining questions, although they are in realty antecedent

24

questions, are whether *Huson* presents a federal constitutional rule or merely a rule of federal common law that the Court should not apply in diversity under *Erie*, and, if *Huson* is only a matter of federal common law, whether an identical or similar rule is nevertheless supported as against the states under the substantive component of the Due Process Clause of the Fourteenth Amendment, or, if not, whether the Nevada Supreme Court nevertheless respects a similar rule under state common law.

*Huson* does not mention due process or the Fifth or Fourteenth Amendments and must therefore be considered as a rule of federal common law. The Court finds it need not address the substantive due process issue, however, because the Nevada Supreme Court itself has quoted the *Huson* rule in approval, such that the Court perceives no *Erie* problem with applying *Huson* here. *See Breithaupt v. USAA Prop. & Cas. Ins. Co.*, 867 P.2d 402, 405 (Nev. 1994). The Court in *US Bank, N.A. v. SFR Invs. Pool 1, LLC* resolved the motions before it on different grounds and therefore did not address the issue closely; rather, it assumed the Nevada Supreme Court would apply its ruling retroactively. A closer look, however, shows both that *SFR Investments Pool 1* is silent on retroactivity and that the Nevada Supreme Court approves the *Huson* rule. In conclusion, the Court finds that *SFR Investments Pool 1* does not apply retroactively in this case under the *Huson* rule, as approved in *Breithaupt*, and therefore grants the motion to dismiss the Counterclaim on that basis.

In response, K&P argues that because NRS 116.3116 was enacted in 1991, Plaintiff cannot have been surprised when the Nevada Supreme Court enforced it in 2014. But that misperceives Plaintiff's argument and the case law, which concerns the fairness of retroactively applying changed or first-impression interpretations of law. Plaintiff does not argue that NRS 116.3116 was clear in 1991 but that its 2014 interpretation in accordance therewith should not

apply except to HOA foreclosures occurring after the date of interpretation. That would indeed be a frivolous argument. Such a plaintiff could not claim inequitable surprise. But Plaintiff does not make that argument. Rather, Plaintiff argues that NRS 116.3116 was (at best) unclear until the Nevada Supreme Court first interpreted it in 2014. That argument is fair and requires an analysis under *Huson* and *Breithaupt*. K&P does not argue under the *Huson*/*Breithaupt* factors but essentially proposes a rule that necessarily favors retroactive application where the statute being interpreted predates a court's interpretation of it. Such a rule would of course obviate any retroactivity analysis, because under the rule against advisory opinions, the American courts do not generally interpret statutes that have not yet been adopted. The Court rejects this line of argument. Finally, because the Court dismisses the Counterclaim, it also denies the counter-motion for summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 11) is GRANTED.

IT IS FURTHER ORDERED that the Counter-Motion for Summary Judgment (ECF No. 14) is DENIED.

IT IS SO ORDERED.

Dated this 9th day of November, 2015.

_____
ROBERT C. JONES
United States District Judge