**THE LAW OFFICE OF MIKE BEEDE, PLLC**
MICHAEL N. BEEDE, ESQ.
Nevada Bar No. 13068
CHERYL A. GRAMES, ESQ.
Nevada Bar No. 12752
2300 W. Sahara Ave. #420
Las Vegas, NV 89102
T: 702-473-8406
F: 702-832-0248
eservice@LegalLV.com
*Attorneys for Plaintiff/Counter-defendant RJRN HOLDINGS, LLC,*
*Third-Party Plaintiff/Counter-defendant RH KIDS, LLC, and*
*Counter-defendant Rex Archambault*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RJRN HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:15-CV-1257-JCM-NJK<br><br><br><br>**RH KIDS, LLC'S MOTION FOR SUMMARY JUDGMENT** |
| RH KIDS, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RHONDA DAVIS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; CARRINGTON MORTGAGE SERVICES; HACIENDA NORTH HOMEOWNERS' ASSOCIATION; and DOES 1 through 10, inclusive; ROE CORPORATIONS 1 through 10, inclusive,<br><br>Third-Party Defendants. | |

BAC HOME LOANS SERVICING, LP
FKA COUNTRYWIDE HOME LOANS
SERVICING, LP

Counterclaimant,

v.

RH KIDS, LLC, a limited liability company
of unknown origin; RJRN HOLDINGS,
LLC, a Nevada limited liability company;
REX ARCHAMBAULT, an individual,

Counter-Defendants.

Third-Party Plaintiff RH KIDS, LLC ("Third-Party Plaintiff" or "RH Kids"), by and through its attorney of record, The Law Office of Mike Beede, PLLC, hereby files its Motion for Summary Judgment on each of the Claims for Relief plead in Third-Party Plaintiff's complaint.

This motion is made and based upon the attached memorandum of Points and Authorities, all papers and pleadings on file herein, all facts judicially noticed, and any oral argument this Court may entertain.

Dated this 23rd of September 2016.

THE LAW OFFICE OF MIKE BEEDE, PLLC

By:      /s/ Cheryl A. Grames
MICHAEL N. BEEDE, ESQ.
Nevada Bar No. 13068
CHERYL A. GRAMES, ESQ.
Nevada Bar No. 12752
2300 W. Sahara Ave. #420
Las Vegas, NV 89102
T: 702-473-8406
F: 702-832-0248
eservice@legallv.com
*Attorneys for Third-Party Plaintiff/*
*Counter-defendant RH KIDS, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

RH Kids is the owner of the real property commonly known as 5234 Fire Night Ave., Las Vegas NV 89122 (the "Property"). RH Kids obtained title to the Property from its predecessor in interest, RJRN Holdings, LLC ("RJRN") who had obtained title to the Property from Rex Archambault ("Third-Party Plaintiff's predecessor in interest" or "Mr. Archambault"). Third-Party Plaintiff's predecessor in interest obtained title by way of a Trustee's Deed Upon Sale issued pursuant to NRS Chapter 116 on April 17, 2012 at a sale conducted by Absolute Collection Services, LLC ("ACS" or "foreclosure trustee"). Mr. Archambault paid $5,000.00 for the Property at the foreclosure sale. A copy of the Trustee's Deed Upon Sale, recorded on April 18, 2012 as instrument number 201204180001665, is attached hereto as Exhibit 1. His title derived from a deed arising from a delinquency in assessments due from the former owner, Rhonda Davis (the "Previous Owner"), to Hacienda North HOA (the "HOA").  The total amount of unpaid debt together with costs due to the association was $3,530.72. (See Exhibit 7). The Trustee's Deed Upon Sale explicitly states that:

> This conveyance is made pursuant to the powers granted to Hacienda North HOA and conferred upon appointed trustee by the provisions of the Nevada Revised Statutes, the Hacienda North HOA governing documents (CC&R's) recorded as instrument number 0002468 Book 20060526 on MAY 26, 2006 and that certain Notice of Delinquent Assessment Lien recorded on APRIL 12, 2011 instrument number 0001764 Book 20110412 Official Records of CLARK County; and pursuant to NRS 117.070 et Seq. or NRS 116.3115 et Seq and NRS 1163116 [sic] through 116.31168 et Seq. The name of the owner(s) of the property (trustor) was: RHONDA DAVIS
>
> Default occurred as set forth in a Notice of Default and Election to Sell, recorded on JULY 18, 2011 as instrument 0000857 Book 20110718 which was recorded in the office of the recorder of said county. Absolute Collection Services, LLC. Has [sic] complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of HACIENDA NORTH HOA at public auction on APRIL 17, 2012 at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid

$5,000.00 in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

Exhibit 1.

Mortgage Electronic Registration Systems Inc. ("MERS") was named beneficiary of a deed of trust granted by the Previous Owner to Pulte Mortgage LLC, which was recorded as an encumbrance to the Property on January 6, 2009 as instrument number 20090106-0000999. On August 11, 2010, an assignment of this deed of trust in favor of BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Servicing, LP was recorded with the Clark County Recorder. A copy of the Deed of Trust, and the subsequent assignment thereof, are attached hereto as Exhibits 2 and 3, respectively. The interests under the deed of trust were extinguished as encumbrances to the Property by way of the foreclosure sale, pursuant to *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408 (2014), and NRS 116.3116.

Third-Party Defendants have not made any substantiated allegations that they were not properly served with notice of the sale, nor have any substantiated allegations been made that the sale was not made in compliance with the statutory requirements found in NRS Chapter 116. No allegation has been made that any attempt was made to pay the "super-priority" portion of the association's lien. In fact, Third-Party Defendants have made no relevant factual allegations whatsoever regarding the instant facts. Moreover, RH Kids is a bona fide purchaser of the property, as was Third-Party Plaintiff's predecessor in interest. Accordingly, under the Court's decision in *Shadow Wood Homeowners Association Inc. v. New York Community Bancorp*, 366 P.3d 1105 (2016), the Court cannot grant equitable relief to the detriment of an innocent third-party, such as Third-Party Plaintiff RH Kids. Third-Party Defendants have not and cannot raise any issue or dispute as to any material fact which would prevent a ruling in favor of RH Kids as a matter of law.

*SFR Investments Pool 1 v. U.S. Bank* has made expressly clear that a portion of a lien created under NRS Chapter 116 which is equal to the amounts which have come due for regular assessments in the 9 months prior to the initiation of the action to enforce the lien, are prior to a first deed of trust and can extinguish the security interest on the Property so long as that super-

priority portion remains unpaid. *SFR Invs. Pool 1, LLC*, 334 P.3d at 411, 414, 416, 419. The super-priority portion of the lien was not paid by any entity in the instant case.

In short, the instant case is exactly the kind which is ripe for adjudication by way of Summary Judgment. There are no disputed material facts, nor is there any question as to matters of controlling law. As such, RH Kids respectfully requests the Court to grant summary judgment in its favor and quiet title of this property.

## II.   **STATEMENT OF UNDISPUTED FACTS**

1. Third-Party Plaintiff's predecessor in interest, Rex Archambault, purchased this property at a public foreclosure auction on April 17, 2012, conducted by the foreclosure trustee, Absolute Collection Services, LLC. (Exhibit 1)

2. A Trustee's Deed Upon Sale was granted in favor of Rex Archambault on April 18, 2012. (Ex. 1)

3. This deed was recorded on April 18, 2012. (Id.)

4. This deed contained the following recital:

This conveyance is made pursuant to the powers granted to Hacienda North HOA and conferred upon appointed trustee by the provisions of the Nevada Revised Statutes, the Hacienda North HOA governing documents (CC&R's) recorded as instrument number 0002468 Book 20060526 on MAY 26, 2006 and that certain Notice of Delinquent Assessment Lien recorded on APRIL 12, 2011 instrument number 0001764 Book 20110412 Official Records of CLARK County; and pursuant to NRS 117.070 et Seq. or NRS 116.3115 et Seq and NRS 1163116 [sic] through 116.31168 et Seq. The name of the owner(s) of the property (trustor) was: RHONDA DAVIS

Default occurred as set forth in a Notice of Default and Election to Sell, recorded on JULY 18, 2011 as instrument 0000857 Book 20110718 which was recorded in the office of the recorder of said county. Absolute Collection Services, LLC. Has [sic] complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of HACIENDA NORTH HOA at public auction on APRIL 17, 2012 at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid

$5,000.00 in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

5

(Id.)

5.  The amount paid by Rex Archambault at the foreclosure sale was $5,000.00. (Id.)

6.  The total amount due on the lien was $3,530.72. (Id.)

7.  RJRN purchased the Property from Rex Archambault by way of a Quitclaim Deed recorded on February 10, 2014 as instrument number 201402100001086. (Exhibit 10)

8.  RH Kids purchased the Property from RJRN by way of a Quitclaim Deed recorded on December 23, 2015 as instrument number 20151223-0003934. (Ex. 10)

9.  The Previous Owner, Rhonda Davis, granted a deed of trust in favor of Pulte Mortgage LLC, naming MERS as beneficiary, which was recorded as an encumbrance to the Property on January 6, 2009 as instrument and book number 20090106-0000999. (Exhibit 2)

10. On August 11, 2010, an assignment of the aforementioned Deed of Trust was recorded which purported to transfer the beneficial interest thereof to BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Servicing, LP. (Exhibit 3)

11. A Notice of Lien for Delinquent Assessments claimed by the HOA, Hacienda North HOA, which complies with NRS 116.31162, was recorded on April 12, 2011 and mailed by certified mail to the Previous Owner. (Exhibit 5)

12. The Notice of Default and Election to Sell was recorded on July 18, 2011, and was mailed pursuant to NRS 116 to all parties entitled to receive notice. (Exhibit 6)

13. The Notice of Foreclosure Sale was recorded on November 10, 2011, and was mailed to all required parties including Defendants. (Ex. 7)

14. The HOA foreclosure sale occurred on or about April 17, 2012, and a Trustee's Deed Upon Sale was recorded against the property shortly thereafter. (Ex. 1)

15. Plaintiff filed its complaint for quiet title on June 16, 2015, and recorded a lis pendens against the Property on June 25, 2016, as instrument number 201506250003233. (Exhibit 8)

/ / /

/ / /

### III.   SUMMARY JUDGEMENT STANDARD

"That an action seeks declaratory or equitable relief does not prevent its adjudication on summary judgment." *Shadow Wood*, 366 P.3d at 1109. Summary judgment "is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party." *Alberter v. McDonald's Corp.*, 70 F. Supp. 2d 1138, 1141 (D.Nev. 1999); *Maes v. Henderson*, 33 F. Supp. 2d 1281, 1285–86 (D.Nev. 1999). FRCP 56(a) establish two basic substantive requirements for the entry of summary judgment: (1) there must be no genuine issue as to any material fact; and (2) the moving party must be entitled to judgment as a matter of law. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Notably, the mere existence of some issue of fact does not necessarily preclude summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Court is required to view the facts in the light most favorable to the non-moving party only if there is a "genuine" dispute with respect to those facts. *Farrakhan v. Gregoire*, 590 F.3d 989, 1014 (9th Cir. 2010). A trial court is not obligated to draw all *possible* inferences in the nonmoving party's favor—only all *reasonable* inferences. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) (emphasis added). Where the only evidence presented of fact issues is self-serving and uncorroborated, the court is not bound to find the issues to be "genuine." *See DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1180 (9th Cir. 2006); *Villiarimo*, 281 F.3d at 1061 (9th Cir. 2002).

### IV.   AUTHENTICATION OF DOCUMENTS

#### A.   Request for Judicial Notice

RH Kids relies on a number of documents related to the Property that are recorded with the Clark County Recorder's Office.  Pursuant to Federal Rule of Evidence 201[1], RH Kids respectfully requests that this Court take judicial notice of the following official records which were recorded in the Office of the County Recorder for Clark County, Nevada, copies of which are attached hereto.  They bear a recording number, date of recording, and the name and office of the Clark County Recorder:

---

[1] Federal Rule of Evidence 201(c) specifically states: "The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information. Fed. R. Evid. 201(c)

1.  Foreclosure Deed, recorded on April 18, 2012 as Clark County Recorder's instrument number 201204180001665. (Exhibit 1)

2.  Deed of Trust, recorded on January 6, 2009 as Clark County Recorder's instrument number 20090106-0000999. (Exhibit 2)

3.  Assignment of Deed of Trust, recorded on August 11, 2010 as Clark County Recorder's instrument number 201008110002623. (Exhibit 3)

4.  Notice of Delinquent Assessment Lien, recorded on April 12, 2011 as Clark County Recorder's instrument number 201104120001764. (Exhibit 5)

5.  Notice of Default and Election to Sell Under Homeowners Association Lien, recorded on July 18, 2011 as Clark County Recorder's instrument number 201107180000857. (Exhibit 6)

6.  Notice of Foreclosure Sale, recorded on November 10, 2011 as Clark County Recorder's instrument number 201111100002405. (Exhibit 7)

Judicial notice may be taken of any fact so long as it "is not subject to reasonable dispute because it […] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Specifically, facts that are not subject to reasonable dispute include "the records of state agencies and other undisputed matters of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004); *see also Harlow v. MTC Fin. Inc.*, 865 F. Supp. 2d 1095, 1097 (D. Nev. 2012) ("When ruling on a motion for summary judgment, the Court may take judicial notice of matters of public record, including recorded documents"). Since these documents all bear the stamp of the Clark County Recorder's Office, they are considered to be matters of public record, and accordingly are appropriate facts of which this Court may take judicial notice.

**B.    The documents received from NAS are authentic under Fed. R. Evid. 902(11).**

RH Kids also relies on documents received from Absolute Collection Services, LLC in response to a Subpoena Duces Tecum relating to the subject Property. Under Federal Rule of Evidence 902, "[t]he original or a copy of a domestic record […] as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed

by the Supreme Court" is self-authenticating. Fed. R. Evid. 902(11). The party offering up such evidence must make sure that the documents or records were: "made at or near the time by--or from information transmitted by--someone with knowledge;" "kept in the course of a regularly conducted activity of a business [or] organization;" and that the "making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(A)-(C). Additionally, the party offering such evidence must give adverse parties "reasonable written notice of the intent to offer the record-- and must make the record and certification available for inspection--so that the [parties have] a fair opportunity to challenge them." Fed R. Evid. 902(11). The records attached to an affidavit adhering to these requirements is considered to be authentic.

In the present case, this Motion for Summary Judgment relies on the following documents:

1. Mailing Records and Accompanying Letter for the Notice of Delinquent Assessment Lien (Exhibit 5).

2. Mailing, Publication, and Posting Records for the Notice of Sale (Exhibit 7).

These documents came from the records of Absolute Collection Services, LLC and were kept in reference to the subject Property and HOA foreclosure sale at issue in this case. It was, and continues to be, the regular business practice of ACS to keep the records surrounding the properties they are asked to non-judicially foreclose on behalf of various homeowners associations.

Absolute Collection Services, LLC included as a part of the response to RH Kids' Subpoena Duces Tecum a Certificate of Custodian of Records for their disclosed file. This Certificate of Custodian of Records (attached hereto as Exhibit 4) is signed by Kelly Mitchell and dated January 19, 2016. Within this certificate, Kelly Mitchell identifies herself as the custodian of records of Absolute Collection Services, LLC and declares that the records returned pertain to 5234 Fire Night Ave., Las Vegas, NV 89122, the Property. The affidavit contains the required language stipulating that the deponent has made an exact copy of the original records that is true and complete, and that the original records were made at or near the time of the act and were made by a person with knowledge in the course of Absolute Collection Services, LLC's regularly conducted activities. This document is then signed by Ms. Mitchell and is notarized by Notary

Public Richard Kaye (Appointment No: 15-1318-1). Additionally, these documents were disclosed by RH Kids to Third-Party Defendants, thereby satisfying the requirement that these documents be shared. Third-Party Defendants have offered no complaint about the authenticity of these records. Additionally, an examination of these documents will demonstrate consistency with the Property and with the documents on record with the Clark County Recorder's Office.

Therefore, under Federal Rules of Evidence 803 and 902, the documents accompanied by the Certificate of Custodian of Records are authentic and admissible in this Court.

## V.  **LEGAL ARGUMENT**

Defendants have failed to provide any evidence to refute Plaintiff's position that it is a bona fide purchaser of the Property. Moreover, all procedures required under NRS 116 were complied with and documented, and Defendants have not provided any evidence of a defect in the underlying foreclosure sale. Accordingly, no issue exists which would preclude summary judgment in favor of Plaintiff.

### A.  **NRS 116.3116 Granted A Super Priority Lien That Takes Priority Over The Deed Of Trust To The HOA.**

NRS 116.3116 provides in part:

**Liens against units for assessments.**
1. **The association has a lien on a unit for** any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, **any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due**. Unless the declaration otherwise provides, any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.
2. A lien under this section is prior to all other liens and encumbrances on a unit except:
(a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;
(b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

**The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien,** unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. If federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien, the period during which the lien is prior to all security interests described in paragraph (b) must be determined in accordance with those federal regulations, except that notwithstanding the provisions of the federal regulations, the period of priority for the lien must not be less than the 6 months immediately preceding institution of an action to enforce the lien. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association.

NRS 116.3116 (emphasis added).

By its clear terms, NRS 116.3116 (2) provides that the super-priority lien for assessments which have come due in the nine months prior to the initiation of an action to enforce the lien are "prior to all security interests described in paragraph (b)." The deed of trust held by Defendants falls squarely within the language of paragraph (b). The statutory language does not limit the nature of this "priority" in any way.  In *SFR Invs. Pool 1, LLC,* the Nevada Supreme Court held that the foreclosure of the HOA lien extinguishes first trust deeds:

NRS 116.3116 gives a homeowners' association (HOA) a superpriority lien on an individual homeowner's property for up to nine months of unpaid HOA dues. With limited exceptions, this lien is "prior to all other liens and encumbrances" on the homeowner's property, even a first deed of trust recorded before the dues became delinquent. NRS 2116.3116(2). We must decide whether this is a true priority lien such that its foreclosure extinguishes a first deed of trust on the property and, if so, whether it can be foreclosed nonjudicially. We answer both questions in the affirmative and therefore reverse.

The Court went on to hold:

NRS 116.3116(2) gives an HOA true superpriority lien, proper foreclosure of which will extinguish a first deed of trust. Because Chapter 116 permits non-judicial foreclosure of HOA liens, and because SFR's complaint alleges that proper notices

were sent and received, we reverse the district court's order of dismissal. In view of this holding, we vacate the order denying preliminary injunctive relief and remand for further proceedings consistent with this opinion.

*SFR Invs. Pool 1, LLC*, 334 P.3d at 411-12.

Thus, a nine month HOA "super priority" lien has precedence over the mortgage lien, and that foreclosure of the HOA lien extinguishes a first trust deed.

**B.      The Instant Foreclosure Sale Complies with NRS 116.**

Here, the underlying foreclosure was conducted properly and in accordance with all relevant provisions of NRS 116. Furthermore, RH Kids has demonstrated, with support from the information gained through discovery, full compliance with the statutory provisions of NRS 116:

Pursuant to NRS 116.31162, A Notice of Delinquent Assessment (NODA) must be mailed (by certified/registered mail, return receipt requested) to the unit/property's owner or his/her successor in interest. This notice must also contain a description of the unit/property against which the lien is imposed and the name of the record owner of the unit/property.  See: Exhibit 5 attached hereto for a copy of the NODA which complies with NRS 116.31162, recorded on April 12, 2011. The NODA is accompanied by mailing receipts and other relevant proof of service (See: Exhibit 4 attached hereto for a copy of the Certificate of Custodian of Records which validates the service documents).

Pursuant to NRS 116.31163, after recording the Notice of Default and Election to Sell, the HOA is required to mail a copy of the Notice of Default and Election to Sell to any person which falls into any of the three categories described therein.  See Exhibit 6 attached hereto for the Notice of Default and Election to Sell, recorded on July 18, 2011.

After the 90-day period has expired, but before selling the unit/property, the HOA must also give notice of the time and place of the sale. Once the NRS 116.31163 requirements are met, if the lien has not been paid off within 90 days, the HOA may continue with the foreclosure process. See NRS 116.31162(1)(c). As a prerequisite to sale, the HOA must mail a Notice of Sale to all parties with a recorded interest. Additionally, the association must mail the notice of the sale to: each person entitled to receive a copy of the notice of default and election to sell under NRS 116.31163, any holder of a recorded security interest or the purchaser of the unit/property,

and the Ombudsman. See Exhibit 7 attached hereto for the Notice of Sale (recorded November 10, 2011) accompanied by all relevant proofs of service to each relevant party.

Rex Archambault acquired the subject property on April 17, 2012 at a public lien foreclosure sale conducted by Absolute Collection Services, LLC on behalf of the HOA. (See Exhibit 1). RJRN purchased the Property from Rex Archambault by way of a Quitclaim Deed recorded on February 10, 2014 as instrument number 201402100001086. (See Exhibit 10). RH Kids subsequently purchased the Property from RJRN by way of a Quitclaim Deed recorded on December 23, 2015 as instrument number 20151223-0003934, and filed this quiet title action on June 16, 2015.

NRS 116.3116 grants HOA liens priority over a first deed of trust for at least the "assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3116 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien"  The Nevada Supreme Court defined "an action to enforce the lien" as the mailing of the notice of delinquent assessment when it stated that "NRS 116 does not require an association to take any particular action to enforce its lien, but [only] that it institutes an action, which includes the HOA taking action under NRS 116.31162 to initiate the nonjudicial foreclosure process." *SFR*, 334 P.3d at 417 (internal citations and quotations omitted). As demonstrated above, the NODA was recorded on April 12, 2011.  The monthly assessments due at the time were $138.00. (See Exhibit 9 – HOA Account Ledger). Thus, the total amount which came due in the nine months preceding the mailing and recording of the NODA was $1,242.00.

Despite having all notice required under NRS 116, Third-Party Defendants never sought injunctive relief or filed a lis pendens as is required under *Shadow Wood*. Simply put, Third-Party Defendants did not take sufficient action to protect their lien.  Under the standards defined in *Shadow Wood* and *SFR,* the instant case is exactly the kind which is ripe for adjudication by way of Summary Judgment in favor of RH Kids. There are no disputed material facts, nor are there any questions as to matters of controlling law. Third-Party Defendants now seek to invalidate a properly held NRS 116 sale to seek to avoid the consequences of their own abject failure to act.

As such, RH Kids respectfully requests that this Court grant summary judgment in its favor and quiet title of the Property.

### C. There Is No Factual Dispute That Plaintiff RJRN Is A Bona Fide Purchaser Who Is Entitled To A Quiet Title Under Nevada Law.

*Shadow Wood* defined bona fide purchasers:

> A subsequent purchaser is bona fide under common-law principles if it takes the property 'for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry.'

*Shadow Wood*, 366 P.3d at 1115 (citing *Bailey v. Butner*, 64 Nev. 1, 19, 176 P.2d 226, 234 (1947)).

Given that, by statute, an NRS Chapter 116 super-priority lien is superior to a first deed of trust, in order for a purchaser to be on notice of a superior deed of trust, a bank defendant is obligated to demonstrate that there was a defect in the underlying sale AND that the purchaser was on notice (actual, constructive, or inquiry) of the defect. In light of the undisputed facts of this case, RH Kids is a bona fide purchaser, and therefore entitled to judgment as a matter of law. Given that an NRS Chapter 116 super-priority lien is superior to a first deed of trust, in order for a purchaser to be on notice of a superior deed of trust, a bank defendant is obligated to demonstrate that there was a defect in the underlying sale AND that the purchaser was on notice (actual, constructive, or inquiry) of the defect. In light of the undisputed facts of this case, Third-Party Plaintiff is a bona fide purchaser, and therefore entitled to judgment as a matter of law.

Here, it is undisputed that both Third-Party Plaintiff and Rex Archambault gave value for the Property. (See Exhibits 1 and 10). There are no allegations to the contrary. It is also undisputed that Third-Party Plaintiff and Rex Archambault took title to the Property without any notice of a defect in the underlying sale. Thus, Third-Party Plaintiff as a bona fide purchaser.

Indeed, the Nevada Supreme Court in *Shadow Wood* made clear that a lender faces a steep uphill battle to show that equity favors a knowledgeable lender that made regrettable choices not to protect its interests instead of a third-party purchaser with no knowledge of a dispute between the lender and the HOA or its foreclosure trustee.

*Shadow Wood* requires that before a court sitting in equity can divest a property interest from a third party purchaser, it must "consider the entirety of the circumstances that bear upon the

equities. This includes considering the status and actions of all parties involved, including *"whether an innocent party may be harmed by granting the desired relief."* *Shadow Wood*, 366 P.3d at 1115 (internal citations omitted) (emphasis added). The Court explained further:

> Consideration of harm to potentially innocent third parties is especially pertinent here where [bank] did not use the legal remedies available to it to prevent the property from being sold to a third party, such as by seeking a temporary restraining order and preliminary injunction and filing a lis pendens on the property. *See* NRS 14.010; NRS 40.060. *Cf. Barkley's Appeal.* *Bentley's Estate*, 2 Monag. 274, 277 (Pa.1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

*Id*. at n7. Well-established Nevada case law supports this reasoning as it is applied to a bona fide purchaser. *See Moore v. De Bernardi*, 47 Nev. 33, 54, 220 P. 544, 547 (1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive.").

Again, mere awareness of a pre-existing lien or ownership claim, or the mere possibility that another party might challenge the sale in equity does not defeat a party's status as a bona fide purchaser:

> As to notice, [a bank] submits that 'the simple fact that the HOA trustee is attempting to sell the property, and divest the title owner of its interest, is enough to impart constructive notice onto the purchaser that there may be an adverse claim to title.' Essentially, then, Defendants would have this court hold that a purchaser at a foreclosure sale can never be bona fide because there is always the possibility that the former owner will challenge the sale post hoc. The law does not support this contention.

*Shadow Wood*, 366 P.3d at 1116-15.

Here, RH Kids is unquestionably a bona fide purchaser. Like the purchaser in *Shadow Wood*, it gave "valuable consideration" when it purchased the Property from its predecessor in interest, RJRN, for $70,000.00. See RH Kids, LLC's Resp. to BAC Interrog's, Aug. 16, 2016, at p. 6 (Resp. to Interrog. No. 9), attached hereto as Exhibit 11. Moreover, not only have Third-Party Defendants failed to produce evidence of any defects in the HOA foreclosure sale, but it also has not shown that RH Kids had any knowledge of any purported defect in the sale, specifically, whether Third-Party Defendants had tendered the superpriority portion such that satisfaction of

the HOA's lien at the foreclosure sale would not extinguish the deed of trust.  It follows, then, that RH Kids is certainly a bona fide purchaser, and in light of Third Party Defendants' actions (or inactions, as the case may be), it is a bona fide purchaser who is entitled to summary judgment in this matter.

Thus, even if Third-Party Defendants could somehow prevail at law (and there is no basis for them to prevail at law, having failed to show a defect in the HOA sale), equitable considerations would still not allow them to prevail to the detriment of RH Kids unless Third-Party Defendants could also show that RH Kids had prior knowledge of the legal defect in the HOA foreclosure sale:

> Because the evidence does not show [Purchaser] had any notice of the pre-sale dispute between [Bank] and [HOA], the potential harm to [Purchaser] must be taken into account and further defeats [Bank's] entitlement to judgment as a matter of law."

*Shadow Wood*, 366 P.3d at 1116. As such, equity demands that RH Kids not be divested of its property interest.

### D.   The Foreclosure was Commercially Reasonable.

Defendants will claim that the subject foreclosure sale was somehow commercially unreasonable and should thus be invalidated.  Clear, controlling Nevada case law, however, provides a simple framework for evaluating commercial reasonableness, and does not support Defendants' challenge to this foreclosure sale.  Under said case law, discussed below, it is clear that the sale was commercially reasonable as a matter of law, and that the record demonstrates that no issue of material fact exists regarding this properly conducted sale.  Moreover, at best, claiming that a sale is commercially unreasonable is a defense which may be available to challengers to foreclosure sales generally, but the burden falls on the challenger to demonstrate that the sale is unreasonable. *See Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982) ("The Longs have made no such showing [of inadequate price plus fraud, unfairness, or oppression] in this case.").

The undisputed facts of the sale are as follows:

16

1. Third-Party Plaintiff's predecessor in interest, Rex Archambault, purchased this property at a public foreclosure auction on April 17, 2012, conducted by Foreclosure Trustee, Absolute Collection Services, LLC. (Exhibit 1)

2. A Trustee's Deed Upon Sale was granted in favor of Rex Archambault on April 18, 2012. (Ex. 1)

3. This deed was recorded on April 18, 2012. (Id.)

4. This deed contained the following recital:

   This conveyance is made pursuant to the powers granted to Hacienda North HOA and conferred upon appointed trustee by the provisions of the Nevada Revised Statutes, the Hacienda North HOA governing documents (CC&R's) recorded as instrument number 0002468 Book 20060526 on MAY 26, 2006 and that certain Notice of Delinquent Assessment Lien recorded on APRIL 12, 2011 instrument number 0001764 Book 20110412 Official Records of CLARK County; and pursuant to NRS 117.070 et Seq. or NRS 116.3115 et Seq and NRS 1163116 [sic] through 116.31168 et Seq. The name of the owner(s) of the property (trustor) was: RHONDA DAVIS

   Default occurred as set forth in a Notice of Default and Election to Sell, recorded on JULY 18, 2011 as instrument 0000857 Book 20110718 which was recorded in the office of the recorder of said county. Absolute Collection Services, LLC. Has [sic] complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of HACIENDA NORTH HOA at public auction on APRIL 17, 2012 at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid $5,000.00 in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

   (Id.)

5. The amount paid by Rex Archambault at the foreclosure sale was $5,000.00. (Id.)

6. The total amount due on the lien was $3,530.72. (Exhibit 7)

The clear, controlling case law from this Court provides a simple framework for evaluating commercial reasonableness, and does not support Third-Party Defendants' challenge to this sale. Under the standards set by this Court, it is clear that the sale was commercially reasonable as a matter of law, and the record demonstrates that no issue of material fact exists regarding this properly held sale. At best, claiming that a sale is commercially unreasonable is a

defense which may be available to challengers to foreclosure sales generally, but the burden falls on the challenger to demonstrate that the sale is unreasonable. *See Long v. Towne*, 639 P.2d 528 (Nev. 1982).

### 1. *Shadow Wood* requires gross inadequacy of price AND an element of fraud, oppression, or unfairness.

Low price, regardless of whether it is below 20% of "fair market value," is not sufficient in of itself to demonstrate an HOA foreclosure sale was unreasonable. A low price, even one that is grossly inadequate (generally less than 20%) must be accompanied by a showing of fraud, oppression, or unfairness. Indeed, as set forth in in 1982 and re-affirmed in 2016:

> 'However, even assuming that the price was inadequate, that fact standing alone would not justify setting aside the trustee's sale. In California, it is a settled rule that inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price.' Several earlier California cases are cited. The allegation of value was $25,000 and the testimony as to value was conflicting. The sale price was $5,025. (In approving the rule thus stated, we necessarily reject the dictum in *Dazet v. Landry*, *supra*, implying that the rule requiring more than mere inadequacy of price will not be applied if 'the inadequacy be so great as to shock the conscience.)

*Golden v. Tomiyasu*, 79 Nev. 503, 514-15, 387 P.2d 989, 995 (1963) (quoting *Oller v. Sonoma County Land Title Co.*, 137 Cal.App.2d 633, 290 P.2d 880 (1955)), *accord Shadow Wood*, 366 P.3d at 1111 ("As discussed above, demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."), *Long v. Towne*, 98 Nev. at13, 639 P.2d at 530 ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression."), *Centeno v. JP Morgan Chase Bank, N.A.*, 2016 Nev. Unpub. LEXIS 342 (Nev. Mar. 18, 2016) ("[A] low sales price is not a basis for voiding a foreclosure sale absent 'fraud, unfairness, or oppression.'").

Third-Party Defendants may errantly rely on a single parenthetical regarding the third restatement in *Shadow Wood* which states that "A court is warranted in invalidating a sale where the price is less than 20 percent of **fair market value** and, absent other foreclosure defects, is

usually not warranted in invalidating a sale that yields in excess of that amount." *Shadow Wood*, 366 P.3d at 1112-13 (emphasis added). While the Defendants may argue that any sale price below 20% of the fair market value *must* be set aside, that is an erroneous interpretation of this Court's holding. *Shadow Wood's* reference to the third restatement makes clear that a court need not even consider arguments regarding the commercial reasonableness of a sale unless the sale amount is less than 20 percent of the fair market value. Therefore, any argument that a low purchase price alone is sufficient to demonstrate commercial unreasonableness is not well-taken, as it entirely ignores controlling law. Defendants must do show both. This they cannot do in the instant matter.

   a.   **Defendants cannot establish that the sale price was grossly inadequate, and therefore cannot prevail on the theory that the sale was commercially unreasonable.**

Defendants may attempt to equate the term "fair market value" with the amount secured by its deed of trust. However, Defendants' definition of "fair market value" has no basis in law and is contrary to the opinion in *Shadow Wood* and numerous preceding cases. "Fair market value" is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *United States v. Cartwright*, 411 U.S. 546, 551 (1973) (relying on a definition of fair market value "nearly as old as the federal income, estate, and gifts taxes themselves"). The Nevada Supreme Court has expounded on fair market value, explaining that:

> In determining fair market value, the trier of fact may consider any elements that fairly enter into the question of value which a reasonable businessman would consider when purchasing.

*McCarran Int'l Airport v. Sisolak,* 122 Nev. 645, 672, 137 P.3d 1110, 1128 (2006).

Under *McCarran*, a trier of fact should consider that HOA lien foreclosure sale purchasers were essentially buying a title dispute which would result in extensive litigation. Prior to the issuance of the *SFR* decision, purchasers had no certainty as to whether they were purchasing a property which would be subject to a first deed of trust. While the Nevada Supreme Court ultimately made the correct ruling regarding the priority of NRS Chapter 116 liens, decisions which were made at the District Court, including that which resulted in the *SFR* opinion, made it impossible to determine with any certainty the value of the interest being purchased. If the

Nevada Supreme Court had held for US Bank in *SFR*, purchasers would have been buying the equivalent of an interest obtained through the foreclosure of a second deed of trust, which, in this case, is significantly less than the value of the interest obtained when purchasing a property unencumbered by the Bank's first deed of trust.   Moreover, prospective purchasers have no opportunity to conduct inspections of a property in advance of sale, and are buying with the knowledge that significant repairs may be required before a house is habitable, let alone marketable.   These are surely "elements that fairly enter into the question of value which a reasonable businessman would consider when purchasing," and reasonably bring about a fair market value which has no relation to the outstanding debt associated with a deed of trust which was granted near the height of the Nevada real estate bubble.

The analysis in *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 80 F.Supp. 3d 1131 (D.Nev. 2015) is also instructive:

> The commercial reasonableness here must be assessed as of the time the sale occurred. Bank's argument that the HOA foreclosure sale was commercially unreasonable due to the discrepancy between the sale price and the assessed value of the property ignores the practical reality that confronted the purchaser at the time of the sale. Before the Nevada Supreme Court issued SFR Investments, purchasing property at an HOA foreclosure sale was a risky investment, akin to purchasing a lawsuit.
> …
>
> Wells Fargo does not point to evidence of fraud or any other procedural defects or other irregularities in the conduct of the sale that would require the Court to void the sale, or any evidence indicating the HOA acted in bad faith by selling the property for an amount that would satisfy the unpaid assessments. Nor does Wells Fargo point to evidence or legal authority indicating that beyond selling the property to the highest bidder the HOA was responsible for protecting Wells Fargo and Johnson's interests in addition to the homeowner's interests.

*Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 80 F.Supp. 3d 1131, 1136 (D.Nev. 2015) (vacated on different grounds by *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.,* No. 15-15233, slip op. (9th Cir. Aug. 12, 2016)).

Ultimately, under *McCarran*, the price paid by RH Kids' predecessor in interest, Rex Archambault, at the foreclosure sale **was** the fair market value.   Having won the bid at a public auction, it is evident that Mr. Archambault paid the highest amount that any party was willing to

pay at the sale.  There is also no reason the HOA would want to sell for a low price. There is no evidence the HOA was not a "willing seller."  Thus, "the price at which the property would change hands between a willing buyer and a willing seller" was exactly what Mr. Archambault paid.

In short, $5,000.00 was not a grossly inadequate sales price.

**E.  No federal interest is implicated by RH Kids' claims.**

Counterdefendants BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP (hereafter, "BAC") and Carrington Mortgage Services (hereafter, "CMS") have previously argued in their Renewed Motion to Dismiss that NRS Chapter 116 is preempted by the Supremacy Clause of the United States Constitution. (ECF No. 47 at pp. 6-15). However, for the reasons discussed in length in RH Kids' Response to BAC and CMS's Renewed Motion to Dismiss, this argument lacks merit and should be rejected. (ECF No. 56 at pp. 8-10). Accordingly, RH Kids hereby incorporates its arguments contained therein as if fully set forth in this motion. As demonstrated in said Response (ECF No. 56), and because no genuine issue of material fact exists pertaining to BAC and CMS' previously asserted Supremacy Clause challenge, summary judgment in favor of RH Kids is appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VI.    **CONCLUSION**

For the foregoing reasons, RH Kids respectfully requests that the Court grant its Motion for Summary Judgment as to all relief sought in RH Kids' Third-Party Complaint. Third-Party Defendants have raised no issue, and no issue exists, which would preclude summary judgment, and RH Kids is entitled to judgment as a matter of law.

Dated this 23rd day of September 2016.

THE LAW OFFICE OF MIKE BEEDE, PLLC

By:    _/s/ Cheryl A. Grames_
MICHAEL N. BEEDE, ESQ.
Nevada Bar No. 13068
CHERYL A. GRAMES, ESQ.
Nevada Bar No. 12752
2300 W. Sahara Ave. #420
Las Vegas, NV 89102
T: 702-473-8406
F: 702-832-0248
eservice@legallv.com
_Attorneys for Third-Party Plaintiff/Counter-defendant RH KIDS, LLC_

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, not interested in, this action. On the 23rd day of September 2016, I caused to be served a true and correct copy of the foregoing **RH KIDS, LLC'S MOTION FOR SUMMARY JUDGMENT** by the method indicated:

_____ U.S. Mail

_____ U.S. Certified Mail

_____ Facsimile Transmission

_____ Federal Express

___X____ Electronic Service via CM/ECF

_____ E-Mail

And addressed to the following:

By:     _/s/ Cheryl A. Grames_
An Employee of The Law Office of
Mike Beede, PLLC