1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| RJRN HOLDINGS, LLC, | Case No. 2:15-CV-1257 JCM (NJK) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| RHONDA DAVIS, et al., | |
| Defendant(s). | |

Presently before the court is a motion for summary judgment filed by defendants BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP ("BAC"), Carrington Mortgage Services ("CMS"), and Mortgage Electronic Registration Systems, Inc. ("MERS" and collectively, with BAC and CMS, as "defendants"). (ECF Nos. 76, 77). Counterdefendant/third-party plaintiff RH Kids, LLC ("RHK") filed a response (ECF No. 80), to which defendants replied (ECF No. 82).

Also before the court is RHK's motion for summary judgment. (ECF No. 78). Defendants filed a response (ECF No. 81), to which RHK replied (ECF No. 83).

I.    **Facts**

This case involves a dispute over real property located at 5234 Fire Night Avenue, Las Vegas, Nevada 89122 (the "property").

Rhonda Davis obtained a loan to purchase the property, which was secured by a deed of trust in favor of Pulte Mortgage LLC and recorded on January 6, 2009. (ECF No. 4 at 6). Pulte Mortgage LLC transferred the beneficial interest in the deed of trust to BAC via a corporate assignment deed recorded on August 11, 2010. (ECF No. 4 at 6).

James C. Mahan
U.S. District Judge

Hacienda North Homeowners' Association (the "HOA") claimed a lien on the property for assessments accruing pursuant to the covenants, conditions, and restrictions ("CC&Rs"). (ECF No. 4). On April 12, 2011, Absolute Collection Services, LLC ("ACS"), on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,074.00. (ECF No. 77). On July 18, 2011, ACS recorded a notice of default and election to sell, stating an amount due of $2,009.41. (ECF No. 77). On November 10, 2011, ACS recorded a notice of trustee's sale, stating an amount due of $3,530.72. (ECF No. 77).

On January 30, 2012, BANA's prior counsel sent a letter to the HOA/ACS requesting and offering to pay the superpriority amount "upon presentation of adequate proof. (ECF No. 77 at 4). ACS alleged refused BANA's offer to pay the superpriority amount of the HOA's lien. (ECF No. 77 at 4).

On April 17, 2012, the HOA conducted a foreclosure sale pursuant to NRS Chapter 116. (ECF No. 4 at 6). Rex Archambault ("Archambault") purchased the property at the foreclosure sale for $5,000.00, and a trustee's deed upon sale was recorded on April 18, 1012. (ECF No. 4 at 6). RJRN obtained title to the property via quitclaim deed recorded on February 10, 2014. (ECF No. 4 at 6). RHK was subsequently transferred title to the property via a quit claim deed recorded on December 23, 2015. (ECF No. 28).

CMS recorded a request for notification of default on December 14, 2014. (ECF No. 4 at 7).

RJRN filed the original complaint in state court on June 6, 2015, alleging three causes of action: (1) declaratory relief/quiet title; (2) preliminary and permanent injunction; and (3) slander to title. (ECF No. 4). Defendants removed the action to federal court on July 2, 2015. (ECF No. 1). On February 15, 2017, the court dismissed RJRN's second and third claims. (ECF No. 87).

On April 28, 2016, RHK filed a third-party complaint against Davis, MERS, and BAC, alleging two causes of action: (1) quiet title; and (2) injunctive relief. (ECF No. 28).

James C. Mahan
U.S. District Judge

In the instant motions, defendants and RHK move for summary judgment.  The court will address each as it sees fit.[1]

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed

---

[1] As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 78, exh. 2); notice of delinquent assessment (ECF No. 78, exh. 5); notice of default and election to sell (ECF No. 78, exh. 6); notice of trustee's sale (ECF No. 78, exh. 7); trustee's deed upon sale (ECF No. 78, exh. 1); assignment of deed of trust (ECF No. 78, exh. 3); and quitclaim deed (ECF No. 78, exh. 10).  *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

**James C. Mahan**
**U.S. District Judge**

- 3 -

to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    Discussion

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property

James C. Mahan
U.S. District Judge

in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

In defendants' motion, they argue that quiet title in their favor is proper because the HOA lien statute is facially unconstitutional, BANA's tender extinguished the superpriority lien, RHK is not a bona fide purchaser, the foreclosure sale was commercially unreasonable, *SFR Investments* should not apply retroactively, and the HOA lien statute is preempted.  (ECF No. 77).

In RHK's motion, it contends that quiet title in its favor is proper because the foreclosure sale complied with NRS Chapter 116, RHK is a bona fide purchaser, the foreclosure sale was commercially reasonable, and RHK implicates no federal interest in its claim.  (ECF No. 78).

### A.  Deed Recitals[2]

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent."  Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation occurred.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc*., 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").  Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

---

[3]  The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Here, RHK has provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale.  (ECF No. 78).  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure.  *See id*. at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure.").  Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle RHK to success on its quiet title claim.  *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title).  Thus, the question remains whether defendants have demonstrated sufficient grounds to justify setting aside the foreclosure sale.  *See id.*  "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities.  This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."  *Id*.

### B.  Rejected Tender

Defendants argue that BANA's tender of the superpriority amount extinguished the HOA's superpriority lien prior to the foreclosure sale.  (ECF No. 77 at 10–12).  Defendants thus maintain that RHK took title to the property subject to BANA's deed of trust.  (ECF No. 77 at 12).

The court disagrees.  BANA did not tender any amount to the HOA/ACS.  Rather, according to defendants' motion, BANA merely "offered" to pay the superpriority portion of the HOA's lien.  (ECF No. 77 at 15).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.  *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

**James C. Mahan**
**U.S. District Judge**

lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments."  *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BANA merely presumed, without adequate support, that the amount set forth in the notice of foreclosure sale included more than the superpriority lien portion and that a mere "offer" to pay was sufficient to preserve its interest in the property.  *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of foreclosure sale recorded November 10, 2011, set forth an amount due of $3,530.72.  (ECF No. 77).  Rather than tendering the $3,530.72 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected not to pay any amount and to merely offer to pay a lesser amount based on its unwarranted assumption that the amount stated in the notice included more than what was due.  *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund).  Had BANA paid the amount set forth in the notice of foreclosure sale ($3,530.72), the HOA's interest would have been subordinate to the first deed of trust.  *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to defendants to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—

James C. Mahan
U.S. District Judge

- 8 -

1    defendants now seek to profit from their own failure to follow the rules set forth in the statutes.

2    *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case

3    before us, we can see no way of giving the petitioner the equitable relief she asks without doing

4    great injustice to other innocent parties who would not have been in a position to be injured by

5    such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior*

6    *Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has

7    access to all the facts surrounding the questioned transaction and merely makes a mistake as to the

8    legal consequences of his act, equity should normally not interfere, especially where the rights of

9    third parties might be prejudiced thereby.").

10   　　　In presuming that an "offer" to pay constitutes a "tender" of payment, defendants cite to

11   *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016), for the proposition

12   that an offer to pay the superpriority amount prior to the foreclosure sale preserves the lender's

13   deed of trust.  (ECF No. 77 at 10).

14   　　　The *Stone Hollow* court, however, made no such holding.  To the contrary, the *Stone*

15   *Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to

16   discharge the lien." 382 P.3d at 911.  Defendants merely "offered" to pay the superpriority amount

17   and have not set forth any evidence as to a tender in a sufficient amount.

18   　　　Based on the foregoing, defendants have failed to sufficient establish that BANA tendered

19   any amount prior to the foreclosure sale so as to render RHK's title subject to BANA's deed of

20   trust.

21   **　　C.  Commercial Reasonability**

22   　　　Defendants contend that judgment in their favor is appropriate because the sale of the

23   property for 8% of its fair market value is grossly inadequate as a matter of law.  (ECF No. 77 at

24   15–18).  Defendants further argue that the *Shadow Wood* court adopted the restatement approach,

25   quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms

26   of a specific percentage of fair market value, generally a court is warranted in invalidating a sale

27   where the price is less than 20 percent of fair market value."  (ECF No. 77 at 20) (emphasis

28   omitted).

**James C. Mahan**
**U.S. District Judge**

1    NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in

2    Nevada.  *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-

3    Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410.  Numerous courts have

4    interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on

5    foreclosure of association liens.[4]

6    In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be

7    set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed

8    where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d

9    at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58

10   (D. Nev. 2016).  In other words, "demonstrating that an association sold a property at its

11   foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a

12   showing of fraud, unfairness, or oppression."  *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528,

13   530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure

14   sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d

15   989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere

16   inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of

17   some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy

18   of price" (internal quotation omitted)))).

19   Despite defendants' assertion to the contrary, the *Shadow Wood* court did not adopt the

20   restatement.  In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted,

21   or had the intention to adopt, the restatement.  *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing

---

[4]  *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

James C. Mahan
U.S. District Judge

1    the restatement as secondary authority to warrant use of the 20% threshold test for grossly

2    inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009)

3    (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco*

4    *Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement

5    (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche,*

6    *LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts

7    section 592A).  Because Nevada courts have not adopted the relevant section(s) of the restatement

8    at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition

9    to a grossly inadequate sale price to set aside a foreclosure sale, controls.  *See* 639 P.2d at 530.

10       Nevada has not clearly defined what constitutes "unfairness" in determining commercial

11    reasonableness.  The few Nevada cases that have discussed commercial reasonableness state,

12    "every aspect of the disposition, including the method, manner, time, place, and terms, must be

13    commercially reasonable."  *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977).

14    This includes "quality of the publicity, the price obtained at the auction, [and] the number of

15    bidders in attendance."  *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994)

16    (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

17       Nevertheless, defendants fail to set forth sufficient evidence to show fraud, unfairness, or

18    oppression so as to justify the setting aside of the foreclosure sale.  Defendants rely on their

19    repeated assertion that BANA tendered the superpriority amount to show fraud, unfairness, or

20    oppression.  However, as the discussed in the previous section, the amount due on the date of

21    BANA's letter was set forth in the notice of foreclosure sale, specifically, $3,530.72.  Rather than

22    tendering the noticed amount under protest so as to preserve its interest and then later seeking a

23    refund of the difference in dispute, BANA chose not to tender any amount and merely offer to pay

24    the superpriority portion.

25       **D.  Bona Fide Purchaser Status**

26       Defendants contend that RHK cannot qualify as a bona fide purchaser because it had

27    knowledge of the deed of trust and inquiry notice of BANA's superpriority tender.  (ECF No. 77

28    at 19).

James C. Mahan
U.S. District Judge

The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood. See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his/her interest first. *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

As previously discussed, BANA made no such tender. Moreover, defendants offer no evidence to support their assertion that knowledge of BANA's deed of trust is sufficient to divest RHK of bona fide purchaser status. Further, defendants offer no evidence to show that Archambault, RJRN, or RHK had any notice that the deed of trust would not be extinguished by the foreclosure sale—for example, evidence showing Archambault, RJRN, or RHK had notice of BANA's full tender, had BANA actually tendered the amount due.

### E. Due Process

Defendants argue that the HOA lien statute is facially unconstitutional because it does not mandate notice to deed of trust beneficiaries. (ECF No. 77 at 10–14.) Defendants further contend that any factual issues concerning actual notice is irrelevant pursuant to *Bourne Valley Court Trust*

1  *v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*").  (ECF No. 77 at 13–

2  14).

3         The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a

4  HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively

5  requested notice, facially violated mortgage lenders' constitutional due process rights.  *Bourne*

6  *Valley*, 832 F.3d at 1157–58.  The facially unconstitutional provision, as identified in *Bourne*

7  *Valley*, exists in NRS 116.31163(2).  *See id.* at 1158.  At issue is the "opt-in" provision that

8  unconstitutionally shifts the notice burden to holders of the property interest at risk.  *See id.*

9         To state a procedural due process claim, defendants must allege "(1) a deprivation of a

10  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

11  protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

12  1998).  Defendants have satisfied the first element as a deed of trust is a property interest under

13  Nevada law.  *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*,

14  462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that

15  is significantly affected by a tax sale").  However, defendants fail on the second prong.

16         Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

17  Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested

18  parties of the pendency of the action and afford them an opportunity to present their objections."

19  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*,

20  832 F.3d at 1158.

21         Here, adequate notice was given to the interested parties prior to extinguishing a property

22  right.  In fact, in a letter dated January 30, 2012, BANA's prior counsel acknowledged receipt of

23  the notice of sale.  (*See* ECF No. 77-1 at 60 ("This letter is in response to your Notice of Sale with

24  regard to the HOA assessments purportedly owned on the above described real property.").

25         As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect

26  inherent in NRS 116.31163(2) as it put BANA on notice that its interest was subject to pendency

27  of action and offered all of the required information.  Thus, defendants' motion for summary

28  judgment will be denied as to this issue.

**James C. Mahan**
**U.S. District Judge**

1

### F.  Preemption

2      Defendants argue that the HOA lien statute cannot interfere with the federal mortgage

3 insurance program or extinguish mortgage interests insured by the FHA.  (ECF No. 77 at 24).

4      The single-family mortgage insurance program allows FHA to insure private loans,

5 expanding the availability of mortgages to low-income individuals wishing to purchase homes.

6 *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal.

7 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No.

8 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same).  If a

9 borrower under this program defaults, the lender may foreclose on the property, convey title to

10 HUD, and submit an insurance claim.  24 C.F.R. § 203.355.  HUD's property disposition program

11 generates funds to finance the program.  *See* 24 C.F.R. § 291.1.

12      Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured

13 property thus interferes with the purposes of the FHA insurance program.  Specifically, it hinders

14 HUD's ability to recoup funds from insured properties.   As this court previously stated in

15 *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the

16 foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS

17 116.3116 may not extinguish a federally-insured loan.  No. 2:13–CV–1199 JCM (VCF), 2015 WL

18 1990076, at *4 (D. Nev. Apr. 30, 2015).

19      However, the instant case is distinguishable from these cases in that, here, FHA is not a

20 named party.  Neither the complaint nor the counterclaim seeks to quiet title against FHA.  Further,

21 RHK's quiet title claim does not seek declaratory relief against FHA, but only as to defendants.

22 Thus, this argument provides no support for defendants as the outcome of the instant case has no

23 bearing on FHA's ability to quiet title.

24

### G.  Retroactivity

25      Defendants contend that *SFR Investments* should not be applied retroactively to extinguish

26 the first deed of trust.  (ECF No. 77 at 22–24).

27      The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous

28 cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec.*

**James C. Mahan**
**U.S. District Judge**

*Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").  Thus, *SFR Investments* applies to this case.

**IV.    Conclusion**

In light of the aforementioned, the court finds that defendants have failed to raise a genuine dispute so as to preclude summary judgment in favor of RHK on its quiet title claim.  Nor have defendants established that they are entitled to summary judgment in their favor.  Defendants did not tender the amount provided in the notice of sale, as statute and the notice itself instructed, and did not meet their burden to show that no genuine issues of material fact existed regarding the proper amount of the HOA's lien, RHK's bona fide status, or constitutionally sufficient notice.

Accordingly, the court will grant RHK's motion for summary judgment (ECF No. 76) on its quiet title claim against defendants, and deny defendants' motion for summary judgment (ECF No. 77).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF Nos. 76, 77) be, and the same hereby is, DENIED consistent with the foregoing.

IT IS FURTHER ORDERED that RHK's motion for summary judgment (ECF No. 78) be, and the same hereby is, GRANTED consistent with the foregoing.

. . .

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

- 15 -

1    IT IS FURTHER ORDERED that the parties' stipulation (ECF No. 79) be, and the same

2 hereby is, DENIED as moot.

3    DATED March 1, 2017.

4

5    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 16 -